Matthew M. Lavin, Esq. (*pro hac vice*)
Jennifer R. Liakos, Esq. (CA SBN 207487)
Aaron R. Modiano, Esq. (*pro hac vice*)
NAPOLI SHKOLNIK PLLC
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603

Katie Spielman, Esq.
David Lilienstein, Esq.
DL LAW GROUP
345 Franklin Street
San Francisco, CA 94102
(415) 678-5050 / Fax (415) 358-8484

*Attorneys for Plaintiffs*
MERIDIAN TREATMENT SERVICES,
IRECOVER TREATMENT INS. d/b/a
SERENITY PALMS TREATMENT CENTER
and HARMONY HOLLYWOOD TREATMENT
CENTER, on behalf of themselves and all
others similarly situated.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND  DIVISION

|  |  |
|---|---|
| MERIDIAN TREATMENT SERVICES, et al., | **Case No.: 4:19-cv-05721-JSW** |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| vs. | |
| UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SERVICES), | Date:   December 20, 2019<br>Time:   9:00 a.m.<br>Judge:  Hon. Jeffrey S. White<br>Place:  Courtroom 5 |
| Defendant. | |

- i -

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

I.  INTRODUCTION. ................................................................................................................ 1

II.  BACKGROUND ................................................................................................................... 2

III.   LEGAL ARGUMENT ......................................................................................................... 2

III.A.   *Wit's* Findings of Fact Are Not "ERISA Rulings" .................................................. 2

III.B.   Plaintiffs' State Law Claims Are Not ERISA Preempted ...................................... 4

III. C.   Plaintiffs' State Law Claims Are Properly Pled ................................................. 10

1.   *The Breach of Contract Claims (Counts II, III & IV) Are Properly Stated* ............... 10

2.   *Plaintiffs' Fraud Based Claims Are Properly Pled (Counts V, VI, & VII)* ................ 13

3.   *Plaintiffs' Claim for Unfair Business Practices Is Valid* ......................................... 15

IV.   CONCLUSION .................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Aetna Health Inc. v. Davila*,
542 U.S. 200, 210 (2004).................................................................................. 8

*Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.*,
187 F.3d 1045 (9th Cir.1999) ........................................................................ 11

*Bly-Magee v. California*,
236 F.3d 1014 (9th Cir. 2001) ........................................................................ 17

*California Spine & Neurosurgery Inst. v. United Healthcare Servs., Inc.*,
2018 WL 6074567 (C.D. Cal. June 28, 2018) .............................................. 15

*Casa Bella Recovery Int'l, Inc. v. Humana Inc.*, 2018 WL 4846919
C.D. Cal. Feb. 26, 2018) ................................................................................ 15

*Catholic Healthcare W.-Bay Area v. Seafarers Health & Benefits Plan*,
321 F. App'x 563 (9th Cir. 2008)..................................................................... 6

*Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974 (9th Cir. 2001) .......................... 12

*Galileo Surgery Ctr., L.P. v. Aetna Health & Life Ins. Co.*,
2015 WL 898466 (C.D. Cal. Mar. 3, 2015). ................................................. 10

*Goodwest Rubber Corp. v. Munoz*
(1985) 170 Cal. App. 3d 919 .......................................................................... 14

*Graves v. Blue Cross of California*,
688 F. Supp. 1405 (N.D. Cal. 1988) ................................................................ 9

*Hansen v. Grp. Health Coop.*,
902 F.3d 1051 (9th Cir. 2018) ................................................................... 8, 10

*Kentucky Ass'n of Health Plans, Inc. v. Miller*,
538 U.S. 329 (2003)......................................................................................... 9

*Lawrence Paper Co. v. Gomez*,
257 Kan. 932 (1995) ........................................................................................ 8

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ....................................................................... 21

*Marin Gen. Hosp. v. Modesto & Empire Traction Co.*,
581 F.3d 941 (9th Cir. 2009) .................................................................... 10, 11

*McKell v. Washington Mut. Inc.*
  (2006) 142 Cal. App. 4th 1457 ............................................................................ 19, 20

*Misic v. Bldg. Serv. Employees Health & Welfare Tr.*,
  789 F.2d 1374 (9th Cir. 1986) ................................................................................. 5

*Morgan v. AT&T Wireless Servs., Inc.*,
  177 Cal. App. 4th 1235 (2009) ............................................................................... 20

*Murphy v. California Physicians Serv.*,
  213 F. Supp. 3d 1238 (N.D. Cal. 2016) .................................................................... 6

*Paulson v. CNF, Inc.*,
  559 F.3d 1061, 1082 (9th Cir. 2009) ....................................................................... 7

*Pilot Life Ins. Co.*, 481 U.S. 41 (1987) .................................................................... 8

*Port Med. Wellness, Inc. v. Connecticut Gen. Life Ins. Co.*,
  233 Cal. Rptr. 3d 830 (Ct. App. 2018) ..................................................................... 6

*Russell v. Massachusetts Mutual Life Insurance Co.*,
  722 F.2d 482 (9th Cir.1983) .................................................................................... 6

*Salinas Valley Mem'l Healthcare Sys. v. Envirotech Molded Prod., Inc.*,
  2017 WL 5172389 (N.D. Cal. Nov. 8, 2017) ............................................................ 9

*Schwartz v. Associated Employers Grp. Benefit Plan & Tr.*,
  2018 WL 453436 (D. Mont. Jan. 17, 2018) .............................................................. 5

*Scott v. Gulf Oil Corp.*,
  754 F.2d 1499 (9th Cir.1985) .................................................................................. 5

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) ................................................................................. 17

*Shaw v. Delta Airlines*,
  463 U.S. 85 (1983) ................................................................................................. 8

*Tenet Healthsystem Desert, Inc. v. Blue Cross of California*
  (2016) 245 CA4th 821 ......................................................................................... 17

*The Meadows vs. Employers Health Ins.*,
  47 F.3d 1006 (9th Cir. 1995) ................................................................................ 10

*U.S. v. McConney*,
  728 F.2d 1195 (9th Cir. 1984) ................................................................................ 3

*United States v. One Twin Engine Beech Airplane, FAA Reg. No. N-9826Z Serial No. AF-305*,
  533 F.2d 1106 (9th Cir. 1976) ................................................................................ 3

- iii -

*Vess v. Ciba-Geigy Corp. USA*,
    317 F. 3d 1097 (9th Cir. 2003) ................................................................. 17

**Statutes**

29 U.S.C. § 1132(a)(1)(B)) ........................................................................ 7, 10

29 U.S.C. § 1144(a) ......................................................................................... 7

Business and Professions Code §§ 17200, *et seq.* ....................................... 19

California Insurance Code section 10144.5 .................................................. 20

ERISA § 502(a)(1)(B) .................................................................................... 11

**Rules**

Federal Rule of Civil Procedure 9(b) ........................................................... 17

Rule 15(a) ...................................................................................................... 21

# I.  INTRODUCTION.

This action seeks to hold Defendant, the country's largest commercial health insurer, account-able to mental health and substance use disorder treatment providers that submitted claims which were denied by Defendant using purposely deceptive and fraudulent internal guidelines that violated both state and federal laws, as well as generally accepted medical principles. On March 5, 2019, Magistrate Judge Spero of this Court entered Findings of Fact and Conclusions of Law in *Wit, et al. v. United Behavioral Health*, No. 14-CV-02346-JCS (hereinafter "*Wit*"). In that decision, Judge Spero specifi-cally found that, for many years, UBH denied claims using guidelines that were based solely on profit and cost saving rather than the actual clinical needs of members who suffered from mental health and/or substance use disorders.

It is worthwhile to note that this case was originally assigned to Magistrate Judge Spero as a related case to *Wit*.  Defendants, obviously fearful that Judge Spero knows too much about their fraud-ulent schemes, responded to that assignment by quickly declining a magistrate, resulting in this case being transferred to this Honorable Court.

Plaintiffs, and the putative class, are behavioral healthcare providers who treated patients with UBH insurance during the class period as defined in *Wit, et al*. and through January 31, 2019[1]. These providers have not been paid for many years' worth of claims that UBH denied based on the now-discredited guidelines. In every case, Plaintiffs, in their professional judgment as licensed clinicians, determined that the services provided to their patients met generally accepted medical criteria and were necessary before UBH denied the claims. In every case, Plaintiffs, and the putative class, ex-pended considerable resources treating patients with UBH insurance and they have not been reim-bursed.  In all cases, UBH was aware that the providers were rendering treatment and either directly or impliedly authorized all such treatments to occur.

It's telling that in the midst of a national addiction crisis, Defendant decided to stop paying behavioral health and substance abuse treatment claims and, in an unfortunate case of the tail wagging

---

[1] On February 1, 2019, UBH switched from using its own guidelines to utilizing the guidelines of the American Society of Addiction Medicine (ASAM), presumably in expectation of this Court's find-ings in *Wit*.

the dog, developed medical and clinical guidelines with the goal of maximizing profits over patients. Just two weeks ago, when the Pennsylvania Insurance Department released the results of a "market conduct examination," analyzing the period from January 2015 through March 2016, it found Defendant in "extensive noncompliance" with the Parity Act, finding "violations within this area were very disappointing as they negatively affected some of our most vulnerable populations" with Defendant agreeing to pay a $1MM civil penalty and start an $800,000 outreach program[2]. During that same time period, in California alone, more than 20,000 people died from addiction related causes, including overdose[3].

## II.  BACKGROUND

Although the class certified in *Wit* included individual patients with ERISA plans, UBH utilized the exact same guidelines to process claims from non-ERISA plans as well. The *Wit* Court's findings and holdings concerning UBH's guidelines do not depend on the plans being ERISA plans. Plaintiffs, and those similarly situated, treated both ERISA and non-ERISA plan members alike. Additionally, UBH applied their flawed guidelines to coverage decisions based on medical necessity to both in-network and out-of-network providers equally. The same defective guidelines cut across the entire spectrum of UBH plans and provider categories.

### III.    LEGAL ARGUMENT

### III.A.  *Wit's* Findings of Fact Are Not "ERISA Rulings"

Defendant seeks to minimize and contain the findings of fact in *Wit* in much the same way they minimized and marginalized their behavioral health clients. Defendant fails to distinguish between a finding of fact and a conclusion of law. Defendant may wish to disregard this difference, as findings of fact are subject to a "clearly erroneous" standard of review while conclusions of law are reviewed

---

[2] Santoni, Matthew, <u>UnitedHealthcare To Pay $1M Civil Penalty Over Pa. Violations</u>, (November 4, 2009) https://www.law360.com/insurance/articles/1216549/unitedhealthcare-to-pay-1m-civil-penalty-over-pa-violations

[3] Centers for Disease Control and Prevention, National Center for Health Statistics, Stats of the State of California, https://www.cdc.gov/nchs/pressroom/states/california/california.htm (last updated April 13, 2018).

*de novo* by an appellate court. *See, for example, U.S. v. McConney*, 728 F.2d 1195, 1200–01 (9th Cir. 1984).

First, the Court is explicit and detailed in its "**Credibility Findings**." (*Wit* at \*5 (N.D. Cal. Mar. 5, 2019)). Findings on credibility of witnesses are black letter law findings of fact. *See, for example*, *United States v. One Twin Engine Beech Airplane, FAA Reg. No. N-9826Z Serial No. AF-305*, 533 F.2d 1106, 1108 (9th Cir. 1976) ("if the inferences depend on the credibility of the witnesses or the persuasiveness of the evidence, the trier of fact is said to have made findings of fact").

The Court is clear as to Defendant's experts that, "[compared to Plaintiffs' experts], UBH's experts, on the other hand, had serious credibility problems. The Court found that with respect to a significant portion of their testimony each of them was evasive – and even deceptive – in their answers when confronted with contrary evidence. Therefore, the Court discounts the testimony of UBH's expert witnesses" *Id.* at \*7.

The clinical guidelines both at issue in *Wit* and the present case are Level of Care Guidelines ("LOCGs") and Coverage Determination Guidelines ("CDGs"). *Wit* at \*10. The Court found, "UBH's own internal auditing system, which measures "Inter-Rater Reliability" ("IRR"), reflects that the Guidelines are applied consistently" *Id.* Continuing, "[t]he LOCGs are used to make coverage determinations for plans that contain a medical necessity requirement while the CDGs are used to make coverage determinations in cases involving plans that do not contain a medical necessity requirement." *Id.* These guidelines are therefore applied consistently across ERISA and non-ERISA plans.

While the class that was certified in *Wit* was limited to participants and beneficiaries who were denied benefits under ERISA plans, the Court's findings regarding the plans' "medical necessity" language extends to ERISA plans and non-ERISA policies alike.

All of the plans at issue in *Wit* included, as a condition of coverage, the requirement that the requested treatment be consistent with generally accepted standards of care, with minor variations in phrasing making no substantive difference. *Id.* at \*13. The same is true in the present litigation and applies to ERISA and non-ERISA plans. Further, "[t]he Court's conclusion that the Guidelines ***are not Plan terms***" (*Id.* at \*14) (emphasis added) makes clear that it is irrelevant whether the plan is an ERISA plan as the Guidelines at issue in *Wit* and at issue here are not plan terms. Although the Court

then applied this finding to ERISA, the application of the finding of fact to law does not alter the finding of fact as to the Guidelines.

Further, the Court made numerous findings as to the "Generally Accepted Standards of Care Relevant to the Guidelines Challenged in this Action" *Id.* at *17. The Court did not analyze ERISA for the generally accepted standard of care; instead, it analyzed ASAM and other criteria specific to mental health and substance use disorder treatment. The Court then compared Defendant's Guidelines to these criteria. *Id.* at *22 *et seq.* The Court did not undertake this analysis under ERISA, it compared Defendant's flawed Guidelines to accepted industry criteria, such as ASAM. It was under this framework that the Court found UBH's Guidelines deviated from the generally accepted standards of care. The Court found that the Guidelines were not consistent with ASAM. *Id.* at *40.

As to specific States, the Court also made the finding that, "during the class period UBH violated the laws of Illinois, Connecticut, Rhode Island, and Texas by failing to apply criteria that were in compliance with the laws of those states for making coverage determinations relating to substance use disorders treatment." *Wit* at *42.

All of these findings of fact are just that, findings of fact. The Court then applied them to law and came to conclusions of law under ERISA. The conclusions of law are the only things that may be considered "ERISA Rulings."

### III.B.  Plaintiffs' State Law Claims Are Not ERISA Preempted

As third parties to the contract between the insurer and insured, Plaintiffs' independent causes of action are not ERISA preempted. For, "[a]s the Ninth Circuit and several others have explained, a third-party provider's claim for damages does not implicate a relationship Congress sought to regulate under ERISA." *Schwartz v. Associated Employers Grp. Benefit Plan & Tr.*, 2018 WL 453436 at *12 (D. Mont. Jan. 17, 2018) (citations omitted). Further, even when an assignment exists that permits a provider to bring derivative claims under ERISA, that does not convert the provider's third-party claims to ERISA claims. *See Blue Cross of California v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1052 (9th Cir. 1999) ("we find no basis to conclude that the mere fact of assignment converts the Providers' claims into claims to recover benefits under the terms of an ERISA plan."). Defendant's citation to *Misic v. Bldg. Serv. Employees Health & Welfare Tr.*, 789 F.2d 1374, 1378–79

(9th Cir. 1986) is somewhat misleading to the Court as although the proposition that ERISA claims may be assigned pursuant to a valid assignment of benefits is still good law, the ERISA preemption section of that decision relies on *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1504–06 (9th Cir.1985), and *Russell v. Massachusetts Mutual Life Insurance Co.*, 722 F.2d 482, 487–88 (9th Cir.1983). *Scott* is impliedly overruled in *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 546 F.3d 639, 651 (9th Cir. 2008) that found there was no ERISA preemption and *Russel* was reversed on other grounds.

More recent caselaw in this Circuit holds that when obligations are created directly between the provider and the insurer, even when the insured is covered under an ERISA plan, the provider still has rights and causes of action that are not preempted by ERISA. *See Catholic Healthcare W.-Bay Area v. Seafarers Health & Benefits Plan*, 321 F. App'x 563, 564 (9th Cir. 2008) ("where a third party medical provider sues an ERISA plan based on contractual obligations arising directly between the provider and the ERISA plan (or for misrepresentations of coverage made by the ERISA plan to the provider), no ERISA-governed relationship is implicated and the claim is not preempted"); *Port Med. Wellness, Inc. v. Connecticut Gen. Life Ins. Co.*, 233 Cal. Rptr. 3d 830, 848–49 (Ct. App. 2018) ("where a plan assures a provider that a proposed treatment is covered under the plan but later determines it is not covered, the provider may sue based upon the plan's independent promise to the provider to pay for the services rendered.")

Defendant's motion seems to miss this nuance and conflates the different duties that the various parties owe to each other. Defendant does not dispute that Plaintiff is not a party to the insurance contract. An ERISA plan is a contract. *Murphy v. California Physicians Serv.*, 213 F. Supp. 3d 1238, 1246 (N.D. Cal. 2016).

Two types of ERISA preemption can potentially operate on state claims: complete preemption under ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)) and conflict or "express" preemption under § 514(a) (29 U.S.C. § 1144(a)). Defendant has argued only that the latter, express preemption under § 514(a), precludes Plaintiffs' claims. Nevertheless, as Plaintiffs address below, neither form of preemption applies to Plaintiffs' state law claims.

Express preemption operates as an affirmative defense and exists when a state law cause of action relates to an ERISA employee benefit plan. 29 U.S.C. § 1144(a). A state cause of action

"relates" to an ERISA plan whenever it has "a '<u>connection with</u>' or '<u>reference to</u>'" such a plan. *Paulson v. CNF, Inc.*, 559 F.3d 1061, 1082 (9th Cir. 2009)(emphasis added). The relationship test is used to determine whether a cause of action has a "connection with" an ERISA plan. The relationship test looks to whether the claim bears on an ERISA-regulated relationship, such as plan-participant, plan-employer, or plan sponsor-plan participant. *Id.* A state claim has a "reference to" an ERISA plan only if (1) the law acts *immediately* and *exclusively* upon ERISA plans, or (2) the existence of ERISA plans is *essential* to the law's operation. *Id.*

Here, Plaintiffs' state law causes of action do not relate to ERISA. Plaintiffs' unfair business practices, breach of contract, misrepresentation, and intentional interference claims do not act immediately or exclusively on ERISA plans, and the existence of an ERISA plan is not essential to their operation. The causes of action likewise do not bear on an ERISA-regulated relationship. Indeed, Plaintiffs provided treatment to patients insured under ERISA plans and non-ERISA policies alike. Compl. ¶ 5. Plaintiffs are not traditional ERISA entities – they are not insurance companies or third-party administrators managing ERISA claims, employers providing ERISA benefits, or patients entitled to ERISA benefits. Rather, Plaintiffs are third-party providers contracted with Defendant to provide services for an agreed-upon amount. *See IV Solutions Inc. v. United Healthcare Services, Inc.*, 2012 WL 12887401 at *8-9 (C.D. Cal. Nov. 19, 2012) (finding §514 did not preempt state law claims arising out of independent contracts between a third-party healthcare provider and an ERISA administrator)

The Supreme Court has established a clear, two-part test for determining whether a state-law claim is completely preempted by ERISA's civil enforcement provision: (1) the plaintiff, "at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B)," and (2) "there is no other independent legal duty that is implicated by [the] defendant's actions." *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1059 (9th Cir. 2018) *citing Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). *Davila* provides the proper framework for ERISA preemption analysis. Defendant's cites to *Shaw v. Delta Airlines*, 463 U.S. 85, 96–97 (1983) and *Pilot Life Ins. Co.*, 481 U.S. 41, 45–46 (1987) are outdated and ignore the next thirty-plus years of applicable jurisprudence. *Shaw* has been impliedly overruled by the Kansas Supreme Court found that ERISA did not preempt Kansas' statutes at issue

and that the connection between the statutes at issue and the ERISA plans was only "tenuous, remote, or peripheral." *Lawrence Paper Co. v. Gomez*, 257 Kan. 932, 944 (1995) (analyzing "relate to" within the meaning of ERISA § 514(a)). Similarly, *Pilot Life,* though oft-cited does not stand for the all-encompassing preemption Defendant's use it for. *See Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003) (limiting *Pilot Life* holding that for a state law to be deemed to regulate insurance it must specifically be directed towards entities engaged in insurance and the state law must substantially affect the risk pooling arrangement between the insurer and the insured); *Salinas Valley Mem'l Healthcare Sys. v. Envirotech Molded Prod., Inc.*, 2017 WL 5172389, at *7 (N.D. Cal. Nov. 8, 2017) ("Plaintiff's claims for intentional and negligent misrepresentation are not preempted under 29 U.S.C. § 1144(a)"); *Graves v. Blue Cross of California*, 688 F. Supp. 1405, 1413 (N.D. Cal. 1988) ("this Court declines to read *Pilot Life* to stand for the proposition that a state insurance regulation otherwise protected from preemption is nevertheless displaced simply because it provides a cause of action or remedy not otherwise available under ERISA."). Further, the "improper processing of a claim" in *Pilot Life* related the plaintiff's disability benefits that were terminated by the plan administrator based on independent medical reports. Here, as the *Wit* court found, "the Guidelines are not Plan terms" (*Wit* at *14). In fact, the corrupted Guidelines were applied consistently in claims processing. *Wit* at *10. The processing itself is not at issue, the illegal Guidelines under which the claims were processed are the issue.

Most importantly as to ERISA preemption in this case, neither *Davila* prong is met with regard to the state-law causes of action brought in Plaintiff's complaint. With regard to the first prong, as a third-party non-plan member, the Plaintiffs have no inherent ability to bring a claim directly against the Defendant absent independent cause. ERISA's civil enforcement provision provides that a civil action may be brought "***by a participant or beneficiary***" to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). As a third party, Plaintiffs are neither a participant nor a beneficiary, as Congress intended those terms to mean.

Plaintiffs' state law causes of action all arise under oral and/or implied contracts between Plaintiffs and Defendant. Amounts due under oral and implied contracts do not satisfy the first prong of the

1    Davila test. *See Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 948 (9th Cir.

2    2009).. As the patients are not parties to these oral and implied contracts between the providers and

3    the insurers, the patients cannot bring Plaintiffs' claims against Defendant. *See Galileo Surgery Ctr.,*

4    *L.P. v. Aetna Health & Life Ins. Co.*, 2015 WL 898466, at *3 (C.D. Cal. Mar. 3, 2015).

5         As to the second prong, the controlling question is whether the claim relies on the violation of

6    a legal duty that arises *independently* of the plaintiff's or assignor's ERISA plan. *See Hansen v. Grp.*

7    *Health Coop.*, 902 F.3d 1051, 1059 (9th Cir. 2018). When there is a legal duty beyond that imposed

8    by an ERISA plan, a claim based on that duty is not completely preempted by ERISA. *Id.* The key to

9    this inquiry is the *origin* of the duty, not its relationship with health plans. *Id.* at 1060. When the duty

10   is independent of the specific rights established by the plan, the claim is not preempted. *Id.*

11        In cases such as here, where a provider relies upon a promise of payment either in the form of

12   a written contract or otherwise, the Ninth Circuit has routinely held that the second prong of *Davila* is

13   not met when the providers are suing under those legal obligations. *See Marin Gen. Hosp. v. Modesto*

14   *& Empire Traction Co.*, 581 F.3d 941 (9th Cir. 2009) (a telephone conversation gave rise to legal

15   duties independent of the terms of the employee benefits plan, so the hospital's claims were ineligible

16   for preemption); *Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.*, 187

17   F.3d 1045 (9th Cir.1999) (holding that providers did not contend that Blue Cross had violated the

18   terms of an ERISA plan, but rather that it had breached a separate contract). As in *Marin* and *Anes-*

19   *thesia Care*, the state law claims asserted here are brought on behalf of provider-based duties created

20   extrinsic to the ERISA plans, duties that arose in VOB's, authorization telephone calls, and implied-

21   in-fact contracts arising from Defendant's prior course of dealing.

22        *Marin General* was cited extensively in another action involving a United Behavioral Health—

23   related entity, United Healthcare. That action, *IV Solutions, Inc. v. United Healthcare Services, Inc.*,

24   was also brought by a provider, in that case seeking reimbursement for "specialty blood products" it

25   provided to the defendant United, under state law. *IV Solutions, Inc. v. United Healthcare Services,*

26   *Inc.*, 2012 WL 12887401 at *1 (C.D. Cal. Nov. 19, 2012). United brought a motion to dismiss the

27   action on the basis of ERISA preemption. Relying on 9th Circuit precedent, including but not limited

28   to *Marin General*, the court found that the provider's claims were independent of ERISA, and denied

1    United's motion.

2          Defendant also completely fails to address that the Court in *Wit* made a specific finding of fact

3    that the Guidelines are not plan terms. *Wit* at *14. ERISA § 502(a)(1)(B) allows a participant or ben-

4    eficiary "to recover benefits due to him under the **terms of his plan**, to enforce his rights under the

5    **terms of the plan**, or to clarify his rights to future benefits under the **terms of the plan**." (emphasis

6    added). The Guidelines are not plan terms. Thus, not only are the Plaintiffs not participants or benefi-

7    ciaries, they are not bringing an action relating to the terms of the plan. Plaintiffs are not seeking

8    benefits under plan terms, the actual processing was done fairly, with each claim being equally denied

9    pursuant to illegal Guidelines, the Plaintiffs seek the fair and equal reprocessing of claims under legal

10   and appropriate guidelines.

11         Defendant cites to *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974 (9th Cir. 2001) and

12   *Josef K. v. California Physicians' Serv.*, 2019 WL 2342245 (N.D. Cal. June 3, 2019)[4] to argue that

13   Plaintiffs' claims are ERISA claims in state-law drag. In *Dishman*, the Ninth Circuit declined to dis-

14   miss Dishman's claim for invasion of privacy as "his damages for invasion of privacy remain whether

15   or not UNUM ultimately pays his claim" *Id.* at 983. That is analogous to the present situation in that

16   the Guidelines Defendant used are illegal regardless of whether appropriate guidelines would find a

17   covered claim for benefits. Plaintiffs do not assert that all claims were improperly denied, they assert

18   that improper Guidelines were used and the result was a denial. Plaintiffs seek a fair reprocessing of

19   claims, not the payment itself in the present action.

20         *Josef K.* is akin to *Pilot Life* and distinguishable from the present situation. In *Josef K.* the

21

22   ───────────────────

23   [4] *Josef K.* involved a single claim brought under an ERISA Plan against an ERISA fiduciary. The
     court was left to choose between a state claim against the alleged ERISA fiduciary, or finding that
24   the third party was in fact an ERISA fiduciary with liability under the statute. The court found that
     the third party was akin to an ERISA fiduciary and allowed the (a)(3) claim to proceed, making the
25   state law claim unnecessary and moot, not preempted. *Josef K.* is also distinguishable from herein
     in that the complaining defendant was a third party independent reviewer, selected by the Department
26   of Managed Health Care, to review a claim denial.  That entity's decision was final, and determined
     whether or not the plaintiffs' claims would be paid.  It was in that posture--a third party reviewer
27   who decided whether or not a claim was paid—and not a provider as herein, that the court in-
     voked ERISA fiduciary status.
28

plaintiff alleged "improper, inaccurate, and incomplete review of [the] claim denial" (*Id.* at *3) that interfered with the contract at issue. As in *Pilot Life*, that is an issue with the *manner* in which the benefits were processed, not the framework or Guidelines that were *supposed* to control the processing. Here, it is the framework itself, the Guidelines, that are improper. Plaintiffs do not claim that the claims were wrongfully denied, that determination cannot be made until appropriate Guidelines are used to actually process the claims.

Defendant's motion fundamentally ignores all of Plaintiffs' allegations as to Defendant's actions that occurred *outside* of Defendant's plans and that the Guidelines themselves are not plan terms. Plaintiffs suffered harm by providing services in reliance upon Defendant's representations and good faith prior performance of its legal duties, all separate and apart from the terms of its patients' employers' health plans. As such, Plaintiffs' state law claims are not preempted, and Defendant's motion should be denied.

**III. C. Plaintiffs' State Law Claims Are Properly Pled**

      ***1.   The Breach of Contract Claims (Counts II, III & IV) Are Properly Stated***

The second cause of action for breach of covenant of good faith and fair dealing, third cause of action for breach of implied contract, and fourth cause of action for breach of oral contract both allege breach of contract claims based on the preadmission verification of benefits process (not the insurance policies/plans) where Defendant orally stated and agreed that it would pay Plaintiffs based on the usual, customary and reasonable rate (UCR) for all services rendered. This term meant, and was understood by the parties, to mean 100% of the fully billed amounts charged by the Plaintiffs, and the class they seek to represent, for the services.

Once admitted to Plaintiffs' facilities, while under the care of Plaintiffs and the class they seek to represent, an employee of the Plaintiffs' utilization review teams routinely called Defendants at specific intervals for each patient and at frequencies requested by Defendant for that patient, to receive authorization to continue providing services to that patient. The Plaintiffs' employee would call Defendant's utilization or care management agents, at the numbers specified for such calls by Defendant, and exchange pertinent medical records or information.

Plaintiffs and the class they seek to represent would then offer to continue treating the patients at the appropriate level of care and request pre-authorization and/or pre-certification to continue the offered services. Defendant's agents would then either accept or deny this request. If accepted by Defendant, the Defendant would issue an authorization reference number which Plaintiffs would later include on all invoices for services sent to Defendants, along with proper billing codes reflecting the authorized services.

Under California law, the verification and authorization communications that occur in factual circumstances like those that occurred between Plaintiffs and Defendant constitute an appropriate predicate for an agreement and/or promissory estoppel. *See, for example*, *Regents of the Univ. of Cal. v. Principal Fin. Grp.*, 412 F. Supp. 2d 1037, 1042 (N.D. Cal. 2006) (concluding that insurer demonstrated intent to be bound to pay health care provider because insurer verified coverage and authorized treatment on multiple occasions); *Enloe Med. Ctr. v. Principal Life Ins. Co.*, No. CIV S-10-2227 KJM-DAD, 2011 WL 6396517 at *6 (E.D. Cal. Dec. 20, 2011) (noting that courts diverge on whether treatment authorization evinces a promise to pay and stating that "in some instances, a contract may be created on an authorization call").

By representing that it would pay the UCR, a term of art in the industry, Defendant provided a recognized method by which the amount it would pay would be objectively determined. For example, in California, Healthcare.gov defines UCR as "The amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical service. The UCR amount sometimes is used to determine the allowed amount."

UCR is a certain and well-known term which can be "readily ascertained" and is an appropriate method to determine the amount of a contract's consideration. Please see *Moncada v. West Coast Quartz Corp.* (2013) 221 Cal. App. 4th 768, at page 778.

The contract claims pled by Plaintiffs are distinguishable from *Pacific Bay Recovery, Inc. v. Cal. Physicians' Srvs., Inc.*, 12 Cal. App. 5th 200 (2017), *Casa Bella Recovery Int'l, Inc. v. Humana Inc.*, 2017 WL 6030260 (C.D. Cal. Nov. 27, 2017), and *Cedars Sinai Med. Ctr. v. Mid-West Nat'l Life Ins. Co.*, 118 F. Supp. 2d 1002 (C.D. Cal. 2000), cited by Defendant. In *Pacific Bay*, the allegations, at best, alleged that the insurer would pay something for some, unspecified treatment. Also, in *Pacific*

*Bay*, the plaintiff's primary cause action relied upon a specific California insurance regulation which the court found applied only to emergency service providers, this case is not brought under that regulation. Further, *California Spine & Neurosurgery Inst. v. United Healthcare Servs., Inc.*, 2018 WL 6074567 (C.D. Cal. June 28, 2018) addressed *Pacific Bay* and found that an action for breach of contract could lie where "Plaintiff alleges that Defendant promised to pay a specific, agreed-upon percentage of the UCR rate" *Id.* at *3. Here, Plaintiffs allege that they would provide treatment to the Defendant's insureds at the UCR rate (Compl. ¶¶190, 194) and more closely resembles *California Spine.*

Similarly, in *Casa Bella,* Defendant ignores the decision following the amended complaint where the Court held, "Plaintiffs have also adequately pled the elements of breach of the underlying contract. They've alleged that they performed treatment on the patients that were covered. They've alleged how much Defendants owed them under the contract—60% of their fully billed charges. They've alleged that Defendants breached by instead paying them 0% of their billed charges. And they've alleged damage caused by the 60% payment they never received." *Casa Bella Recovery Int'l, Inc. v. Humana Inc.*, 2018 WL 4846919, at *2 (C.D. Cal. Feb. 26, 2018). Plaintiffs have alleged that they are owed UCR, that the Defendant breached the contract by applying illegal Guidelines as the decision-making framework, and that Plaintiffs have received no payment as the result of the illegal guidelines. Plaintiffs assert that they are entitled to have the claims reprocessed under appropriate guidelines and have been damaged by having illegal guidelines applied to all mental health and substance use disorder claims nationwide by Defendant. Thus, Plaintiffs' complaint is closer in its pleadings to the amended *Casa Bella* complaint that the Court found sufficient.

In *Cedars Sinai*, there was only a verification of benefits that occurred. *Id.* at 1008. In the present situation, Plaintiffs have alleged more than just a verification, the have alleged a promise to pay by Defendant, an element missing in *Cedars Sinai*. The present bears more similarity to *Forest Ambulatory Surgical Assocs., L.P. v. United Healthcare Ins. Co.*, WL 11323600 (C.D. Cal. Mar. 12, 2013) where the Court found the complaint's allegations "that the Health Plans will pay for out-of-network services in an amount that is the lower of either the provider's actual billed charge or the UCR amount" (*Id.* at *11) sufficient to allege a breach of contract.

Likewise, as to the implied covenant of good faith and fair dealing, Plaintiffs' Complaint alleges that Defendant's insureds were insured under plans/policies that obligated Defendant use a legal, appropriate framework to assess Plaintiffs' claims that were submitted. Defendant breached its duties of good faith and fear dealing in using an illegal framework, the Guidelines that existed outside of the plan terms.

As such, all of Plaintiffs' contract-based claims are properly pled and should not be dismissed. In the event the Court finds any of Plaintiffs' claims deficient, Plaintiffs' respectfully request leave to amend their complaint to cure any perceived pleading deficiencies or, in the alternative, to plead a cause of action for promissory estoppel.

### 2. Plaintiffs' Fraud Based Claims Are Properly Pled (Counts V, VI, & VII)

Plaintiffs' Fifth (Intentional Misrepresentation), Sixth (Negligent Misrepresentation), and Seventh (Concealment), causes are all based on the factual allegations as set forth in the Complaint that Defendant agreed/represented that it would pay UCR when it knew that would apply illegal, proprietary, internal Guidelines that it had designed to maximize its profits and deceive providers such as Plaintiffs into believing that the medically necessary treatment they provided would be evaluated under a legal, industry appropriate framework and then paid at the UCR.

Claims sounding in fraud are subject to the pleading requirements of Federal Rule of Civil Procedure 9(b). *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Under the federal rules, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

The 'the who, what, when, where, and how' of the misconduct charged" Defendant cites to in *Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1106 (9th Cir. 2003) are set out clearly in the *Wit* decision and its findings of fact on the Guidelines. Plaintiffs have incorporated *Wit's* findings of fact in their Complaint. (¶1).

Reference to California law is helpful and consistent with Federal law. In *Tenet Healthsystem*

*Desert, Inc. v. Blue Cross of California* (2016) 245 CA4th 821, at pages 837-838 the court discussed the exception to the general rule of specific fraud pleading when a Defendant has the operative infor-mation concerning the alleged fraud, stating as follows:

> "There exist, however, "certain exceptions which mitigate the rigor of the rule re-quiring specific pleading of fraud." (*Committee on Children's Television*, *supra*, 35 Cal.3d at p. 217.) For example, less specificity is required of a complaint when " 'it appears from the nature of the allegations that the defendant must necessarily pos-sess full information concerning the facts of the controversy, ' [citation]; '[e]ven un-der the strict rules of common law pleading, one of the canons was that less partic-ularity is required when the facts lie more in the knowledge of the opposite party....' " (*Ibid*.)"

*Tenet* is similar to this case in that it involved a health care provider asserting various fraud causes of action. In that case, the trial court had sustained Anthem's demurrer to causes of action for intentional fraud and causes of action for negligent misrepresentation without leave to amend. The Court of Appeal reversed, observing at page 839:

> "In addition, the trial court failed to consider that a cause of action based in fraud may arise from *conduct* that is designed to mislead, and not only from verbal or written statements. (*See Thrifty-Tel, Inc. v. Bezenek* (1996) 46 Cal.App.4th 1559, 1567 [54 Cal.Rptr.2d 468] ["A misrepresentation need not be oral; it may be implied by conduct."]; *Universal By-Products, Inc. v. City of Modesto* (1974) 43 Cal.App.3d145, 151 [117 Cal.Rptr. 525] ["A misrepresentation need not be express but may be implied by or inferred from the circumstances."].) …"

In *Tenet* the court also stated at page 840:

> "Anthem suggests that Hospital's TAC is insufficient because it does not identify each individual and defendant entity who is alleged to have engaged in communi-cations with Hospital regarding Patient X's care. To the extent that Hospital may he relying on the communications it received from *unnamed* case managers at Anthem, Hospital provided sufficient information to permit Anthem, the party with superior knowledge of who was responsible for preparing the documents in question, to iden-tify the specific individual or individuals; Hospital is relieved from having to plead that particular information with specificity under such circumstances…"

Much of Defendant's attack on the fraud claims is predicated on fundamentally misunderstand-ing the fraud alleged in Plaintiffs' Complaint. Defendant has already extensively litigated, and lost, the issue of Guidelines in *Wit*. The Court's findings of fact outline in great detail the who, what, when, where, and how. *Wit* outlined who decided to implement illegal Guidelines, what the illegal Guidelines were, when the illegal Guidelines were implemented, where such actions were taken by Defendant to

- 14 -

create and implement the illegal Guidelines, and how Defendant implemented and used the illegal guidelines as the framework for mental health and substance use disorder claims. Any additional information that Defendant believes it may require is already in its possession as it created, analyzed, implemented, and concealed the illegal nature of its Guidelines until the deceit was exposed and ruled on in *Wit*.

Again, Plaintiffs are not seeking payment for claims, Plaintiffs are seeking a fair reprocessing of all claims without the illegal Guidelines. All of Defendant's arguments proceed as if Plaintiffs are seeking payment of the denied claims. Plaintiffs are seeking reprocessing that *may* then *result* in payment being made. What Plaintiffs seek compared to Defendant's representations to the Court as to what Plaintiffs seek are horses of entirely different hues.

It is respectfully submitted that Defendant knows exactly the factual basis for the fraud causes of action asserted against it as the factual basis is laid out in *Wit* as to the illegal guidelines. As such, Plaintiffs' causes of action are factually and legally supported by the allegations of the complaint. In the event the Court finds any of Plaintiffs' claims deficient, Plaintiffs' respectfully request leave to amend their complaint to cure any perceived pleading deficiencies or, in the alternative, to plead a cause of action for promissory estoppel.

### 3. Plaintiffs' Claim for Unfair Business Practices Is Valid

Defendant claims that the UCL cause of action for violation of California's unfair competition law, set forth in Business and Professions Code §§ 17200, *et seq*. fails to satisfy any of the three prongs of California's UCL.

The UCL prohibits unlawful, unfair, and fraudulent business practices. A "business practice need only meet one of the three criteria to be considered unfair competition." *McKell v. Washington Mut. Inc*. (2006) 142 Cal. App. 4th 1457, 1471.

The complaint clearly satisfies the fraud prong of a UCL claim in that it pleads multiple fraud causes of action showing that Defendant has engaged in a fraudulent business practice. "A fraudulent business practice is one in which members of the public are likely to be deceived." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009) (citation and internal quotation marks omitted). To be actionable under the UCL, a representation may be untrue, or it "may be accurate on

some level, but will nonetheless tend to mislead or deceive." *McKell*, 142 Cal. App. 4th at 1471. "A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under" the UCL. *Id.* (citation omitted).

Plaintiffs allege that Defendant deceptively induced them to provide treatment to their insureds knowing that it would use an illegal, profit based framework in the form of Guidelines for the claims. Through Defendant's course of conduct, including its confirmation of coverage and authorization of treatment, Plaintiffs were encouraged to provide treatment and misled by Defendant into believing that they would have their claims processed under an equitable, industry appropriate framework. Defendant did not disclose relevant information, namely, that it would use its own, internal, illegal Guidelines as the framework for processing claims. These allegations are sufficient to state a claim for deceptive business practices.

Regarding services which were expressly authorized as medically necessary by Defendants but later illegally denied based on Defendant's ex-post application of the UBH Guidelines (post-service denials), California law is specifically designed to protect healthcare providers, such as the Plaintiffs and the class they seek to represent, from such denials by large multi-billion-dollar managed health corporations, such as the Defendants, who grant authorizations for healthcare treatment and promise payment but later decide not to pay, leaving the provider damaged. Specifically, the California Legislature has enacted Health & Safety Code section 1371.8, which requires, in relevant part:

> **"A health care service plan that authorizes a specific type of treatment by a provider shall not rescind or modify this authorization after the provider renders the health care service in good faith and pursuant to the authorization for any reason**, including but not limited to, the plans' subsequent recession, cancellation, or modification of the enrollee's or subscriber's contract or the plan's subsequent determination that it did not make an accurate determination of the enrollee's or the subscriber's eligibility…" (emphasis added)

Plaintiffs and the class they seek to represent are not asking for automatic reimbursement from Defendant, they are asking for a fair and equitable reprocessing of all denied claims where payment was withheld under the illegal Guidelines. This is an appropriate, equitable remedy under the UCL. In the event the Court finds Plaintiffs' UCL claim deficient, Plaintiffs' respectfully request leave to

amend their complaint to cure any perceived pleading deficiencies.

## IV.    CONCLUSION

By reason of the foregoing, it is respectfully submitted that the motion to dismiss should be denied. If the court is inclined to sustain any part of the motion, Plaintiff respectfully requests leave to amend, including leave to amend to plead promissory estoppel, under Rule 15(a) of the Federal Rules of Civil Procedure, which "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted).

Respectfully submitted,

Dated: November 13, 2019

NAPOLI SHKOLNIK PLLC
/s/ *Matthew M. Lavin*
MATTHEW M. LAVIN
AARON R. MODIANO
JENNIFER R. LIAKOS

DL LAW GROUP
/s/ *Katie Spielman*
KATIE SPIELMAN
DAVID LILIENSTEIN

*Attorneys for Plaintiffs and the Putative Class*