United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERIDIAN TREATMENT SERVICES, *et al.*,<br><br>   Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>   Defendant. | Case No. 19-cv-05721-JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO DISMISS, WITH LEAVE TO AMEND, AND SETTING INITIAL CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 17 |

Now before the Court for consideration is the motion to dismiss filed by Defendant United Behavioral Health ("UBH"). The Court has considered the parties' papers, relevant legal authority, the record in this case, and it has had the benefit of oral argument. The Court HEREBY GRANTS, IN PART, UBH's motion, GRANTS Plaintiffs leave to amend, and sets an initial case management conference.

**BACKGROUND**

Plaintiffs, Meridian Treatment Services ("Meridian"), IRecover Treatment Services, Inc. d/b/a Serenity Palms Treatment Center ("Serenity"), and Harmony Hollywood Treatment Center ("Harmony") (collectively "Plaintiffs"), are behavioral healthcare providers who provide sub-acute mental health and substance use disorder services to commercially insured patients under plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA") and under plans not governed by ERISA, including patients insured by UBH. (Dkt. No. 5, Corrected Class Action Complaint ("Compl.") ¶¶ 2, 9, 64-66.) UBH makes coverage and level of care determinations for UnitedHealth Group or its subsidiaries using proprietary Level of Care Guidelines ("LOGCs") and Coverage Determination Guidelines ("CDGs") (collectively "UBH Guidelines"). (*Id.* ¶¶ 10-11, 67.)

1    Plaintiffs allege, in general, that the UBH Guidelines "were based on profit and cost saving
2 rather than the actual clinical needs of its" insureds and "violated state and federal laws as well as
3 generally accepted principles of behavioral healthcare." (*Id.* ¶ 1.) Plaintiffs premise those
4 allegations on Findings of Fact and Conclusions of Law issued by Chief Magistrate Judge Spero in
5 *Wit v. United Behavioral Health*, No. 14-cv-02346-JSC, 2019 WL 1033730 (N.D. Cal. Mar. 5,
6 2019) (Redacted Version), No. 14-cv-02346-JCS, Dkt. No. 413 (Sealed Version) (hereinafter "*Wit*
7 Decision").) Plaintiffs incorporate by reference the *Wit* Decision, in its entirety, into their
8 Complaint. (Compl. ¶ 5.)

Plaintiffs allege it is generally accepted that "ASAM" criteria "have become the most widely used and comprehensive set of guidelines for placement, continued stay and transfer/discharge of patients with addiction and co-occurring conditions" and are the standard of care that should be provided to patients who seek treatment for mental health or substance use disorders.[1] (*Id.* ¶ 20.) Plaintiffs also allege they employed medical and clinical professionals who employed the ASAM criteria for patients. According to Plaintiffs, they applied the ASAM Criteria to make decisions about clinically appropriate care for patients. (*Id.* ¶¶ 19-20, 23; *see also id.* ¶¶ 21-23, 84-88 (discussing criteria).) Plaintiffs allege that, despite the general acceptance of the ASAM criteria, "UBH created opaque, proprietary criteria that bear little resemblance to the ASAM [c]riteria or any evidence-based standards of clinical evaluation[.]" (*Id.* ¶ 25.) Plaintiffs refer to the findings in the *Wit* Decision to support those allegations. (*See, e.g., id.* ¶¶ 28-38, 53-57.)

Plaintiffs allege that, in order to maximize its profits, UBH used the UBH Guidelines instead of generally accepted medical standards to deny coverage for services deemed medically necessary. Plaintiffs' focus is on Sub-acute Detoxification ("DTX") services, Residential Treatment Center ("RTC") services, Partial Hospitalization Program ("PHP") services, Intensive Outpatient ("IOP") services, and Outpatient ("OP") services. Plaintiffs allege these services correspond to particular ASAM levels of care, and they allege they provided those services to their

---

[1] "ASAM" is an acronym for the American Society of Addiction Medicine. *See Wit*, 2019 WL 1033730, at *15.

2

1  patients. (*See, e.g., id.* ¶¶ 24-25, 33-36, 80-83, 90, 93-100, 119-155.)

2  Plaintiffs allege that whether the services at issue required pre-authorization or no
3  authorization, UBH routinely denied coverage for services based on the UBH Guidelines, which
4  Plaintiffs allege deviate from generally accepted standards of care based on the *Wit* Decision. (*Id.*
5  ¶¶ 27, 46; *see also id.* ¶¶ 109-115, 119-115.) Relying on *Wit*, Plaintiffs allege they "have
6  compelling reasons to believe that most, if not nearly all" claims denied between May 22, 2011
7  and January 31, 2019, which are at issue here, "should have been afforded coverage." (*Id.* ¶ 60,
8  78.)

9  Plaintiffs allege they and the "putative class have assignment of benefits and financial
10 responsibility agreements with all patients that entitle them to direct payment of claims by UBH."
11 (*Id.* ¶ 2; *see also id.* ¶¶ 17, 122, 134, 147.) Plaintiffs allege they were harmed by UBH's actions
12 because they bore the expense of providing coverage for which they were not compensated. (*See,*
13 *e.g., id.* ¶¶ 188, 203, 212, 226.) Plaintiffs ask the Court to "enter a judgment requiring a neutral
14 third-party overseen and appointed by the Court to re-process all denied claims from behavioral
15 health providers that UBH denied based on UBH's former, discredited guidelines." (*Id.* ¶ 2; *see*
16 *also id.*, Prayer for Relief ¶ C.)

17 Based on these and other allegations that the Court shall address as necessary, Plaintiffs
18 bring state law claims on behalf of themselves and a putative class of similarly situated behavioral
19 healthcare providers for a violation of California's Unfair Competition Law, Business and
20 Professions Code sections 17200, *et seq.*. Plaintiffs also assert claims for breach of the implied
21 covenant of good faith and fair dealing, breach of implied contract, breach of oral contract,
22 intentional interference with contractual relations; and intentional interference with prospective
23 economic relations (collectively, "the contract based claims"). Finally, Plaintiffs assert claims for
24 intentional misrepresentation, negligent misrepresentation, and concealment (collectively, the
25 "fraud based claims").

26 //
27 //
28 //

3

# ANALYSIS

**A.    Legal Standards on Motions to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Where, as here, a plaintiff alleges claims for fraud, those claims are subject to heightened pleading standards. A plaintiff must "state with particularity the circumstances regarding fraud or mistake." Fed. R. Civ. P. 9(b). Intent, knowledge, "and other conditions of a person's state of mind may be alleged generally." *Id.* In addition, a claim "grounded in fraud" may be subject to Rule 9(b)'s heightened pleading requirements. A claim is "grounded in fraud" if the plaintiff alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of his or her claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003). Rule 9(b)'s particularity requirements must be read in harmony with Rule 8, which requires a "short and plain" statement of the claim. The particularity requirement is satisfied if the complaint "identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Accordingly, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1107 (quoting *Cooper v. Pickett*, 137

4

1  F.3d 616, 627 (9th Cir. 1997)).

2  If the allegations are insufficient to state a claim, a court should grant leave to amend,
3  unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th
4  Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th
5  Cir. 1990).

**B.   The Sufficiency of Plaintiffs' Claims for Relief.**

UBH's primary argument in favor of dismissal is that each of Plaintiffs' claims is preempted by ERISA. Plaintiffs allege they have treated patients who are insured by UBH under non-ERISA plans, and they include allegations about the percentage of individuals who would be covered by non-ERISA plans. (Compl. ¶¶ 5-6, 105-106.) Accepting those allegations as true, to the extent Plaintiffs' state law claims relate to non-ERISA plans, the claims would not be preempted. Therefore, the Court begins by examining whether Plaintiffs' allegations are sufficient to state claims for relief.

**1.   The Court Dismisses the Contract Based Claims, With Leave to Amend.**

**a.   Counts III and IV.**

Plaintiffs bring two claims for relief (Counts III and IV), in which they allege UBH breached oral and implied-in-fact contracts. The essential elements of a claim for breach of contract, whether oral or implied, are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff. *Reichert v. Gen. Ins. Co.*, 68 Cal. 2d 822, 830 (1969). In contrast to an oral or written contract, the existence and terms of an implied contract are manifested by parties' conduct. *Pacific Bay Recovery, Inc. v. California Physicians' Services*, 12 Cal. App. 5th 200, 215 (2017).

Plaintiffs allege the parties agreed that UBH would reimburse Plaintiffs at "usual and customary rates" ("UCR") for the substance abuse treatment Plaintiffs provided to UBH's insureds. (*See* Compl. ¶¶ 190, 194.) UBH argues these allegations are not sufficient to establish a meeting of the minds on price and are insufficient to establish that the parties formed a contract, whether oral or implied in fact.

UBH relies, in part, on *Pacific Bay*, in which the plaintiff provided treatment to one of the

5

1    defendant's insureds as an out-of-network provider. The plaintiff alleged it contacted the
2    defendant "to obtain prior authorization, precertification and consent to render treatment and
3    perform procedures" and was advised that the insured was covered and was eligible for services.
4    *Id.* at 216. The plaintiff also alleged the defendant led it to believe defendant would pay a "portion
5    or percentage of [the plaintiff's] total billed charges, which" correlated with usual and customary
6    rates. *Id.* Among other claims, the plaintiff argued those allegations were sufficient to state a
7    claim for breach of implied contract. *Id.* at 203-04. The court rejected the plaintiff's argument
8    and reasoned the plaintiff did not describe the type or extent of the treatment at issue.

9    The court concluded that, at most, the plaintiff alleged the defendant would pay something
10   for the services and noted the allegations showed the defendant had paid a portion of the plaintiff's
11   total billed charges. However, it determined the plaintiff simply alleged that payment was not
12   sufficient, and there were no allegations about an agreed upon rate. *Id.* The court concluded the
13   plaintiff's complaint "lack[ed] the specific facts required … to determine there was any meeting of
14   the minds between the parties" and held the allegations were not sufficient to show the parties
15   formed an implied contract. As a result, the plaintiff also failed to demonstrate defendant had
16   breached any such contract. *Id.*[2]

17   The Court finds guidance in the reasoning set forth *California Spine and Neurosurgery*
18   *Institute v. United Healthcare Services, Inc.*, No. 18-cv-2867 PSG (AFM), 2018 WL 6074567
19   (C.D. Cal. June 2018) ("*United Healthcare*") and *California Spine and Neurosurgery Institute v.*
20   *Oxford Health Insurance, Inc.*, No. 19-cv-03553-DMR, 2019 WL 6171040 (N.D. Cal. Nov. 20,
21   2019) ("*Oxford Health*"). In *United Healthcare*, the plaintiff brought a claim for breach of oral
22   contract and alleged the defendant agreed to pay 75% of the UCR for spinal surgery until the
23   patient's "Max Out of Pocket" expense was met, at which time it would pay 100% of the UCR.

---

[2] UBH also relies on *Cedars Sinai Medical Center v. Mid-West National Life Insurance Co.*, in which the court determined the evidence was not sufficient to establish the defendant intended to form a contract during a pre-certification telephone call regarding the plaintiff's patient. 118 F. Supp. 2d 1002, 1008-09 (C.D. Cal. 2000). That case addressed the issue on a motion for summary judgment, and the plaintiff's expert witness opined that "within the medical insurance industry, an insurer's verification is not the same as promise to pay." *Id.* This case is still at the pleadings phase, where the Court must accept Plaintiffs' allegations as true. The Court finds the *Cedars Sinai* case distinguishable on that basis.

1  After the plaintiff provided the services, the defendant failed to pay the agreed upon amount. The
2  court rejected the defendant's argument that the plaintiff's failure to include details about the
3  amount of the UCR was too vague to establish a meeting of the minds on the price to be paid for
4  plaintiff's services. It also considered and distinguished *Pacific Bay*, stating that the court in
5  *Pacific Bay* "did *not* find that using the UCR rate was insufficient 'to determine there was any
6  meeting of the minds.' … Rather, … the complaint failed to allege that *any* amount was promised
7  to be paid." *Id.*, 2018 WL 6074567, at *3 (quoting *Pacific Bay*, 12 Cal. App. 5th at 216)
8  (emphasis in *United Healthcare*).

9        The court in the *Oxford Health* case considered the argument raised by UBH here, in the
10  context of a claim for promissory estoppel. It stated that because "one element of a promissory
11  estoppel claim is whether a promise was made[,] … breach of contract cases may shed some light
12  on how courts have analyzed an analogous principle on similar sets of facts." 2019 WL 6171040,
13  at *3 n.3. The defendants in *Oxford Health* argued that because the plaintiff did not allege the
14  defendants agreed to pay a specific percentage of the UCR, the allegations were not sufficient to
15  satisfy that element of the claim. The court rejected that argument. It reasoned the defendants had
16  failed to explain "how a promise to pay the [p]laintiff at an unspecified UCR is less than definite
17  than the promise at issue in [*United Healthcare*], which was to pay 75% of an unspecified UCR."
18  *Id.*, 2019 WL 6171040, at *4. The court concluded the plaintiff's allegations that "Defendants'
19  staff allegedly informed Plaintiff that UHC's payment for covered care rendered to [the patient] by
20  out-of-network providers would be based on usual and customary rates" was an "explicit
21  statement that UHC will pay for covered out-of-network care at a UCR" and was sufficient to state
22  a claim for promissory estoppel. *Id.*, 2019 WL 6171040, at *5.

23        Here, Plaintiffs allege the specific nature of the services and the levels of care at issue that
24  they each provided to UBH's insureds, as well the number of patients for whom services were
25  provided. (Compl. ¶¶ 119-120, 131-132, 144-145.) Unlike the plaintiff in *Pacific Bay*, Plaintiffs
26  do not merely allege that UBH agreed to reimburse some unspecified amount for the services
27  rendered. They allege that UBH agreed to reimburse at the UCR. (*Id.* ¶¶ 190, 194.) However,
28  unlike the plaintiffs in *United Health* and *Oxford Health*, the plaintiffs do not include factual

7

allegations that define the term "UCR", although they argue it is a term of art. *See, e.g., Oxford Health*, 2019 WL 6171040, at *1 n.2; *United Health*, 2018 WL 6074567, at *1. The Court concludes that Plaintiffs would not be required to allege that UBH agreed to pay a specific percentage of the unspecified UCR to state a claim, but they do need to allege some facts to allege what the parties allegedly understood "UCR" to mean.

Accordingly, the Court GRANTS UBH's motion to dismiss Counts III and IV, with leave to amend.

### b.   Count II.

Plaintiffs also assert a claim for breach of the implied covenant of good faith and fair dealing. Because Plaintiffs have not yet alleged the formation of a contract, the Court GRANTS UBH's motion to dismiss Count II, with leave to amend. *See Woods v. Google, Inc.*, 889 F. Supp. 2d 1182, 1194 (N.D. Cal. 2012); *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992) (noting that "the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract").

### c.   Counts VIII and IX.

Plaintiffs also bring claims for intentional interference with contract and intentional interference with prospective economic relations. An essential element of each of these claims is the actual disruption of a relationship between the plaintiff and a third party. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (intentional interference with prospective economic relations); *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) (intentional interference with contractual relations).[3] UBH argues that Plaintiffs fail to allege facts that would satisfy that element of the claims.

---

[3] The other essential elements of a claim for intentional interference with contract are "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship;" and damage. *Pac. Gas & Elec.*, 50 Cal. 3d at 1126. The other essential elements of a claim for intentional interference with prospective economic relations are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship;" and (4) "economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply*, 29 Cal. 4th at 1153 (internal quotations and citations omitted).

8

Plaintiffs' theory is that UBH led Plaintiffs to believe the services Plaintiffs provided to their patients - UBH's insureds - would be covered and, thus, induced them to enter into contracts with the patients that "guaranteed payment in full for medically necessary care." (Compl. ¶ 224.) Similarly, Plaintiffs allege they had relationships with their patients, which "would have resulted in an economic benefit to Plaintiffs" because Plaintiffs would have been reimbursed for the services provided. (*Id.* ¶ 229.) Plaintiffs allege that UBH "disrupted" Plaintiffs contracts their patients – UBH's insureds - and "cause[d] the relationship between Plaintiffs and UBH's insureds to be disrupted[.]" (*Id.* ¶¶ 224, 233.) According to Plaintiffs, these contracts and economic relationships were disrupted because UBH relied on the UBH Guidelines, instead of generally accepted standards of medical care, to deny coverage. Thus, Plaintiffs were not reimbursed for the services they rendered.

The court in *Doctors Medical Center of Modesto, Inc. v. The Guardian Life Insurance Company of America* considered a similar claim. No. 08-CV-00903 OWW GSA, 2009 WL 179681 (E.D. Cal. Jan. 26, 2009). In that case, the plaintiff provided services to one of the defendant's insureds and verified with the defendant that it had authorized the medical care and that the insured was eligible for benefits. *Id.*, 2009 WL 179681, at *1. The defendant then forwarded and assigned the plaintiff's final bills to a third-party, Viant, for processing. Viant determined the charges were neither reasonable nor customary and, as a result, the defendant did not fully reimburse the plaintiff. *Id.* The plaintiff alleged that Viant interfered with its contract with the defendant by convincing the defendant to use the pretext that the services were not reasonable or customary and "to withhold full payment in the belief that [plaintiff] would compromise the full amount of its claim simply due to a desire to avoid the expense and effort needed to collect the proper amount due (and not because of any substantive merit to Viant's advice)[.]" *Id.*, 2009 WL 179681, at *7. The court concluded those allegations were sufficient to state a claim. *Id.*

The Court concludes the facts in this case are distinguishable from the facts in *Doctors Medical*. Plaintiffs assert that UBH interfered with Plaintiffs' contracts with their patients, UBH's insureds. Unlike Viant, the third party in *Doctors Medical*, UBH is not a true stranger to the

9

1  contracts or to the prospective economics relationships. Plaintiffs are alleging a right to recover
2  directly from UBH based on the assignments they received from their patients. In essence,
3  Plaintiffs allege that they became a third-party beneficiary of the contract between UBH and its
4  insureds. "[T]he tort cause of action for interference with contract does not lie against a party to
5  the contract." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994).
6  Moreover, Plaintiffs do not allege that any of their patients chose other providers or otherwise
7  discontinued their relationships with Plaintiffs because of UBH's actions.

The Court concludes Plaintiffs fail to allege facts to show actual disruption of a contract or a prospective economic relationship, and it GRANTS UBH's motion to dismiss Counts VIII and IX, with leave to amend.

**2.    The Court Dismisses the Fraud Based Claims, With Leave to Amend.**

Plaintiffs also assert three fraud based claims: intentional misrepresentation (Count V), negligent misrepresentation (Count VI), and concealment (Count VII). The essential elements of a fraud claim under California law are "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004). A negligent misrepresentation claim requires the same elements as a fraud claim, except the statement need only be made "without reasonable grounds for believing it to be true," rather than knowledge of its falsity. *See Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007).

To state a claim for fraudulent concealment, Plaintiffs must allege the "(1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact." *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162 (2015).

Plaintiffs argue each of these claims are based on allegations that UBH "represented it

10

1    would pay UCR knowing it would apply illegal, proprietary, internal Guidelines that it had
2    designed to maximize its profits and deceive providers such as Plaintiffs into believing that the
3    medically necessary treatment they provided would be evaluated under a legal, industry
4    appropriate framework and then paid at the UCR." (Opp. Br. at 13:13-16.) Plaintiffs contend they
5    relied on those representations when they provided services to UBH's insureds.

6    With respect to the concealment claim, UBH argues that it did not conceal its Guidelines.
7    However, Plaintiffs' theory is not that UBH concealed the Guidelines themselves. Rather, they
8    allege that UBH concealed the fact that its definition of clinical necessity was more restrictive than
9    generally accepted medical standards. According to Plaintiffs, that made UBH's statements that it
10   would provide coverage for medically necessary services deceptive. (Compl. ¶¶ 199-201, 209-
11   210, 217.) UBH also argues that Plaintiffs fail to allege a duty to disclose. Under California law,
12   a duty to disclose may arise, *inter alia*, "when the defendant had exclusive knowledge of material
13   facts not known to the plaintiff … [or] when the defendant makes partial representations but also
14   suppresses some material facts." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)
15   (quotations and internal citation omitted). The Court concludes the facts alleged, when combined
16   with the allegations incorporated by reference from the *Wit* Decision, are sufficient to allege a duty
17   based on either of those theories. Accordingly, the Court DENIES, IN PART, UBH's motion to
18   dismiss the concealment claim.

19   UBH also argues that Plaintiffs allege UBH told them it would not provide coverage for
20   some services and, as such, Plaintiffs cannot show UBH made a misrepresentation to them.
21   Plaintiffs contend that UBH made no such statement, but even if it had the Court concludes it
22   would not be fatal. Plaintiffs also allege that UBH denied coverage after it led Plaintiffs to believe
23   that UBH would pay for the services at issue. For that reason, the Court also DENIES, IN PART,
24   UBH's motion to dismiss the fraud-based claims.

25   UBH also argues that Plaintiffs' fail to allege facts to show their reliance on any
26   representations was reasonable, especially in light of their allegations that UBH denied claims
27   worth millions of dollars over many years. Plaintiffs allege that before they provided coverage for
28   their patients, they relied on representations that UBH would provide coverage. The Court

11

concludes those allegations are sufficient to allege reliance and concludes that UBH's argument about whether Plaintiffs' reliance was reasonable is better addressed in the context of a motion for summary judgment. Accordingly, the Court also DENIES, IN PART, UBH's motion to dismiss the fraud-based claims on that basis.

Finally, UBH argues that Plaintiffs fail to allege the fraud-based claims with particularity. Plaintiffs contend that by incorporating the *Wit* Decision into their Complaint, they include facts that show the "who, what, where, when, and how" of the alleged fraud. (*See, e.g., id.* at 14:25-15:2.) The findings in *Wit* provide background on who at UBH was involved with the development of the UBH Guidelines. They also set forth reasons why Judge Spero determined the UBH Guidelines were not consistent with generally accepted standards of care, which resulted in narrower coverage. *See, e.g., Wit*, 2019 WL 1033730, at *22-42. Those rulings provide more detail on how and why UBH's alleged representations regarding coverage were misleading. However, they neither elucidate who made representations to the Plaintiffs in *this* case nor do they elucidate when and where those representations were made.

In addition to *Wit,* Plaintiffs rely on *Tenet Healthsystem Desert, Inc. v. Blue Cross of California*, 245 Cal. App. 4th 821 (2016). In *Tenet*, the plaintiffs brought a fraud claim based on alleged misrepresentations about insurance coverage for a single patient. The plaintiffs included allegations about "dates, times, the manner of communication, including correspondence, faxes and telephone calls, together with the fax numbers utilized, the names of individuals and their titles, if known, the companies these individuals represented, and the factual basis for the [plaintiff's] belief that an agency relationship existed" with the defendants. 245 Cal. App. 4th at 832. The court concluded those allegations were sufficient to satisfy the requirement under California law that fraud be plead with specificity and provided the defendant "the party with superior knowledge of who was responsible for preparing the documents in question," the information necessary "to identify the specific individual or individuals[.]" *Id.* at 840.

Here, Plaintiffs allege they conducted "verification of benefits" ("VOB") phone inquiries with agents of UBH, during which "Plaintiffs[,] or their agents, asked and UBH's agents confirmed, coverage for clinically necessary MH/SUD services." (Compl. ¶¶ 112-113). Plaintiffs

also allege their "billing team[s] called UBH to confirm that each Patient had active coverage for the care to be provided. The billing team requested information about how services were covered, if pre-certification was required, and what conditions of pre-certification and coverage were. In general, UBH representatives stated that where there was coverage, medically necessity was a condition of treatment." (*Id.*, ¶¶ 124, 136, 149.) Plaintiffs also allege members of their "utilization review" teams would call "UBH or one of its designated subsidiaries" to obtain pre-certification for services. (*Id.* ¶¶ 126, 138, 151.)

Plaintiffs allege that they "had 157 patients with over 2000 collective claims denied by UBH." (*Id.* ¶ 3.) Plaintiffs have argued the "thousands upon thousands of authorization, verification, and utilization review calls between Plaintiffs" and UBH are documented. (Sur-Reply at 2:23-24.) Unlike the plaintiff in *Tenet,* Plaintiffs do not allege the names of any UBH representatives with whom they or their agents spoke during the VOB phone calls or during the utilization process. They also do not allege any information about the dates and times those phone calls occurred. Instead, Plaintiffs generally allege that every representation UBH made to them about coverage "during the class period as defined in *Wit* through January 31, 2019," is misleading because Judge Spero determined UBH did not provide a level of coverage that would have been provided under generally accepted medical standards. The Court concludes Plaintiffs have failed to comply with the pleading requirements of Rule 9(b). *Cf. U.S. ex rel. Serrano v. Oaks Diagnostic, Inc.*, 568 F. Supp. 2d 1136, 1143 (C.D. Cal. 2008) (stating "general allegations that all claims submitted during an almost four year period were fraudulently submitted is insufficient particularity to satisfy the 9(b) pleading standard" and noting that although court did not suggest "that Rule 9(b) requires precise details pertaining to each of the allegedly 1393 claims submitted," some additional detail was required).

For this reason, the Court GRANTS, IN PART, UBH's motion to dismiss Counts V, VII, and VII, and it will grant Plaintiffs leave to amend.

**3.     The Court Dismisses the UCL Claim, in Part, With Leave to Amend.**

Plaintiffs first claim for relief alleges UBH violated the UCL. Plaintiffs' allegations and their opposition to UBH's motion suggest they are proceeding under all three prongs of the UCL.

1  (*See* Compl. ¶¶ 176-179 (citing allegations relating to why conduct is unlawful), 180 (referencing

2  unfair prong); Opp. Br. at 15:24-12 (arguing why allegations satisfy fraud prong).)  Because at

3  least some of Plaintiffs' claims are grounded in fraud, Plaintiffs would be required to satisfy Rule

4  9(b) to state a claim under the fraudulent prong.  As set forth above, the Court concludes they have

5  not met their burden under Rule 9(b).  Accordingly, the Court concludes the allegations are

6  insufficient to state a claim under the fraud prong, and it dismisses the claim, in part, with leave to

7  amend.  However, because UBH did not argue the allegations are insufficient to state a claim

8  under the unlawful or unfair prong, the Court expresses no opinion on the sufficiency of the

9  allegations under those prongs of the UCL.

### C.   ERISA Preemption.

As noted, Plaintiffs allege that they "treated both ERISA and non-ERISA plan members alike."  (Compl. ¶ 5.)  UBH moves to dismiss each of Plaintiffs' claims for relief on the basis that they are expressly preempted under ERISA.  Congress enacted ERISA as a comprehensive legislative scheme "to promote the interests of employees and their beneficiaries in employee benefit plans."  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983).[4]  By enacting such a broad scheme, Congress also sought to protect employers by "eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans."  *Id.* at 99.

> There are two strands to ERISA's powerful preemptive force.  First, ERISA section 514(a) expressly preempts all state laws "insofar as they may now or hereafter relate to any employee benefit plan[,]" 29 U.S.C. § 1144(a), but state "law[s] ... which regulat[e] insurance, banking, or securities" are saved from this preemption.  29 U.S.C. § 1144(b)(2)(A).
>
> Second, ERISA section 502(a) contains a comprehensive scheme of civil remedies to enforce ERISA's provisions.  *See* 29 U.S.C. § 1132(a).  A state cause of action that would fall within the scope of this scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme, even if those

---

[4]  "[B]efore a court wades into" Section 514(a)'s "'veritable Sargasso Sea of obfuscation,' it must first resolve the simpler question of whether a party may assert a claim under ERISA." *Miller v. Rite Aid Corp.*, 504 F.3d 1102, 1105 (9th Cir. 2007) (citing *Toumajian v. Frailey*, 135 F.3d 648, 653 n.3 (9th Cir.1998) (citation and internal quotation marks omitted)).  Although Plaintiffs argued that they do not rely on the assignments to bring their claims for relief, they did not suggest that those assignments would *not* permit them to assert claims under ERISA.  (*See* Tr. at 26:6-30:20.)

14

causes of action would not necessarily be preempted by section 514(a).

*Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005). UBH relies on Section 514(a) to support its motion to dismiss.

Section 514(a) is "conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990). The clause is considered "one of the broadest preemption clauses ever enacted by Congress." *PM Grp. Life Ins. Co. v. Western Growers Assurance Trust*, 953 F.2d 543, 545 (9th Cir. 1992). A state law relates to an ERISA employee benefit plan "if it has a connection with or reference to such a plan," *Shaw*, 463 U.S. at 97.

    **1.**    **Plaintiffs' State Law Claims Do Not Have Reference to An ERISA Plan.**

"To determine whether a law has a forbidden 'reference to' ERISA plans," a court asks "whether (1) the law acts immediately and exclusively upon ERISA plans, or (2) the existence of ERISA plans is essential to the law's operation." *Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1082 (9th Cir. 2009) (internal quotations and citations omitted). The Court must examine the text of the law at issue to determine whether its own terms bring ERISA plans under its operation. *See Dillingham*, 519 U.S. at 325. Here, Plaintiffs assert state law claims that are based on contract and fraud theories, as well as the UCL claim. None of those state laws at issue act immediately or exclusively on an ERISA plan, nor is the existence of an ERISA plan essential to their operation. Accordingly, the Court concludes those claims do not have "reference to" an ERISA plan. *Cf. Paulsen*, 559 F.3d at 1082 (finding the plaintiffs' claims for professional negligence were not preempted based on "reference to" ERISA plan).

    **2.**    **As Drafted, Plaintiffs' State Law Claims Have A Connection With An ERISA Plan.**

The Court concludes the question of whether Plaintiffs' state law claims have a "connection with" an ERISA plan presents a close question. For the reasons set forth herein, the Court concludes that as the Complaint is currently drafted, the claims are preempted. The task of

1  discerning when a state law "relates to" an ERISA plan has not been easy.

> If "relate to" were taken to extend to the furthest stretch of its indeterminancy, then for all practical purposes pre-emption would never run its course. … But that, of course, would be to read Congress's words of limitation as mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality.

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) ("*Travelers*").

In order "to determine whether a state law has the forbidden connection" to ERISA, a court must "look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." *Dillingham*, 519 U.S. at 325; *see also Paulsen*, 559 F.3d at 1082 (noting "Supreme Court has not provided a succinct definition of, or analytical framework for, evaluating the phrase 'connection with'"). The Ninth Circuit uses a "relationship test" to analyze "'connection with' preemption, under which a state law claim is preempted when the claim bears on an ERISA-regulated relationship, *e.g.*, the relationship between plan and plan member, between plan and employer, between employer and employee." *Id.* at 1082-83.

UBH argues the crux of each of Plaintiffs' claims for relief is that it improperly denied benefits, which will require a fact finder to interpret the terms of an ERISA plan. Plaintiffs argue each claim is premised only upon Plaintiffs' contractual relationships with UBH. They assert that relationship is not an ERISA-regulated relationship. (*See* Dkt. No. 31, Transcript of Hearing ("Tr.") at 12:6-9, 12:24-13:11, 22:10-23:1, 25:9-14, 26:6-27:4.) That may be true, but it does not necessarily end the Court's inquiry because the Court must look to the objectives of ERISA, including the objective to "provide a uniform regulatory regime over employee benefit plans," *Davila*, 542 U.S. at 208, and "the nature and effect of the" claim on an ERISA plan, *Dillingham*, 519 U.S. at 325.

Defendant argues that the facts of this case are analogous to the facts in *Josef K. v. California Physician's Services*, No. 18-cv-06385-YGR, 2019 WL 2342245 (N.D. Cal. June 3, 2019). In that case, the plaintiffs were the beneficiaries of an ERISA plan who had been denied

16

1  coverage. They alleged that a third party hired to conduct an independent medical review of the
2  denials intentionally interfered with the plaintiffs' contract with the insurer when it upheld the
3  denial of benefits. *Id.*, 2019 WL 2342245, at *1-2. The court concluded those claims were
4  preempted under ERISA because "the gravamen of plaintiffs' interference with contract claim"
5  was based on the third party's "denial of coverage[.]" *Id.*, 2019 WL 2342245. The court reasoned
6  that the plaintiffs alleged the third party's "improper, inaccurate, and incomplete review of [the]
7  claim denial, and its issuance of a written report upholding said denial, prevented and interfered
8  with Blue Shield's contractual obligation to provide medically necessary treatment and care" to
9  plaintiff. *Id.* The court also cited to allegations that the third party had to determine "whether
10 services were medically necessary and thus whether plaintiffs were entitled to coverage under the
11 Plan." *Id.* The court concluded those allegations "demonstrate that but for the existence of [the]
12 ERISA plan, plaintiffs would not have suffered the harm alleged with respect to the interference
13 with contract claim." *Id.*

14 Plaintiffs, in turn, contend this case is more akin to *Catholic Healthcare West-Bay Area v.*
15 *Seafarers Health and Benefits Plan*, in which the Ninth Circuit determined that the plaintiffs'
16 claims for breach of implied contract and negligent misrepresentation, among others, were not
17 preempted. 321 Fed. Appx. 563, 565 (9th Cir. 2008). In *Catholic Healthcare,* the court noted that
18 "where a third party medical provider sues an ERISA plan based on contractual obligations arising
19 directly between the provider and the ERISA plan (or for misrepresentations of coverage made by
20 the ERISA plan to the provider), no ERISA governed relationship is implicated and the claim is
21 not preempted." *Id.* at 564. The court concluded that the plaintiff had not predicated its right to
22 recovery on any assignment from an ERISA beneficiary and, instead, asserted claims based on "a
23 direct contractual relationship that arose between" the plaintiff and the plan and concluded the
24 allegations "alleged implied contract formation and misrepresentations that are *completely*
25 *independent* of the terms and meaning of an ERISA plan." *Id.* (emphasis in original).

26 Plaintiffs contend that their claims for relief would not interfere with that regulatory
27 regime because they are challenging UBH's Guidelines, not the terms of a specific ERISA plan,
28 and they argue that, in *Wit*, Judge Spero determined the UBH Guidelines are not ERISA plan

17

terms. (Compl. ¶¶ 51-52, 105.) Therefore, Plaintiffs contend there will be no need to interpret the terms of any ERISA plan. The Court is not persuaded, and it concludes that the allegations here are more analogous to the *Josef K.* case than they are to the *Catholic Healthcare* case. Even if the Court accepts Plaintiffs argument that they are not asserting all patient claims were improperly denied, they do allege that the claims for benefits were processed improperly, which would impact the objective of providing a uniform regulatory regime on employee benefit plans. They also argue the coverage they provided was medically necessary and the allegations the term medical necessity would be a term set forth in their patients' plans. For these reasons, the Court concludes that to the extent Plaintiffs' patients were covered by ERISA plans, the state law claims are preempted.

Accordingly, the Court GRANTS, IN PART, UBH's motion. Although the Court is skeptical that Plaintiffs could amend these claims to overcome the preemption issue, it will give Plaintiffs leave to amend, if they can do so in good faith and in compliance with Rule 11.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, UBH's motion to dismiss. The Court will grant Plaintiffs leave to amend. In their opposition, Plaintiffs asked for leave to amend to include a claim for promissory estoppel and, at the hearing, asked for leave to amend to include additional claims. The Court will not preclude Plaintiffs from including additional claims in an amended complaint, if they can do so in good faith and in compliance with their obligations under Federal Rule of Civil Procedure 11. Plaintiffs shall file an amended complaint by no later than August 17, 2020. UBH shall answer or otherwise respond by no later than September 8, 2020. The parties shall appear for an initial case management conference on October 9, 2020 at 11:00 a.m., and they shall file a joint case management conference statement by October 2, 2020.

**IT IS SO ORDERED.**

Dated: July 20, 2020

_____
JEFFREY S. WHITE
United States District Judge

18