GEOFFREY SIGLER (*pro hac vice*)
    gsigler@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

HEATHER L. RICHARDSON, SBN 246517
    hrichardson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MERIDIAN TREATMENT SOLUTIONS, INC, DESERT COVE RECOVERY, LLC, and HARMONY HOLLYWOOD, LLC, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>Defendant. | CASE NO. 4:19-cv-05721-JSW<br><br>**DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>**Hearing:**<br>Date:        February 5, 2021<br>Time:       9:00 a.m.<br>Place:      Oakland Courthouse, Courtroom 5<br>Judge:      Hon. Jeffrey S. White<br><br>Complaint Filed: September 19, 2019 |

Gibson, Dunn &
Crutcher LLP

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:19-CV-05721-JSW

## NOTICE OF MOTION AND MOTION

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Friday, February 5, 2021 at 9:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 5 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendant United Behavioral Health ("UBH") moves the Court for an order pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) dismissing Plaintiffs' Second Amended Complaint in its entirety with prejudice, including claims for violation of RICO (18 U.S.C. § 1962(c), 18 U.S.C. § 1962(d)); violation of California's Unfair Competition Law, Business and Professions Code sections 17200, *et seq*.; breach of implied contract; breach of oral contract; intentional interference with prospective economic relations; promissory estoppel; intentional misrepresentation; negligent misrepresentation; and concealment.

UBH's Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, and the accompanying Declaration of Ngoc Han S. Nguyen and exhibits thereto, all of which are filed and served herewith, as well as the records, pleadings, and papers on file in this action; and upon such matters as may be presented before or at the time of the hearing on this Motion.

Dated: December 7, 2020

Respectfully submitted,

By: /s/ *Geoffrey Sigler*
　　　　　　　　　Geoffrey Sigler

Attorney for Defendant
UNITED BEHAVIORAL HEALTH

Gibson, Dunn &
Crutcher LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................... 1

II.    STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4) ...................................... 2

III.   BACKGROUND ..................................................................................................... 2

IV.  STANDARD OF REVIEW ..................................................................................... 3

V.    ARGUMENT ........................................................................................................... 3

      A.     Most Of Plaintiffs' State-Law Claims Still Are Preempted By ERISA....................... 3

      B.     Plaintiffs Fail To State A Claim Under State Law........................................ 5

             1.     Plaintiffs' Claims Still Lack Particularity Under Rule 9(b)............................ 5

             2.     Plaintiffs' UCL Claim Still Fails For Various Reasons .................................. 8

             3.     Plaintiffs' Contract Claims Still Fail For Lack Of Specificity, And Their Estoppel Claims Fail For Similar Reasons .............................................. 9

             4.     Plaintiffs Still Fail To State A Tortious Interference Claim ........................... 10

      C.     Plaintiffs Fail To State A Claim Under RICO .......................................................... 11

VI.  CONCLUSION...................................................................................................... 15

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

## Cases

*A.Z. v. Regence Blueshield,*
  333 F. Supp. 3d 1069 (W.D. Wash. 2018) .......................................................................9

*ABC Servs. Grp., Inc. v. United Healthcare Servs.,*
  2019 WL 4137624 (C.D. Cal. June 14, 2019) ............................................................9, 10

*Advanced Choices, Inc. v. State Dept. of Health Servs.,*
  182 Cal. App. 4th 1661 (2010).............................................................................................10

*Aevoe Corp. v. Pace,*
  2012 WL 13069926 (N.D. Cal. Apr. 6, 2012) ...............................................................13

*Armijo v. ILWU-PMA Welfare Plan,*
  2015 WL 13629562 (C.D. Cal. Aug. 21, 2015)...............................................................4

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...........................................................................................................3

*Ayala v. World Sav. Bank, FSB,*
  616 F. Supp. 2d 1007 (C.D. Cal. 2009).........................................................................13

*Bridge v. Phoenix Bond & Indem. Co.,*
  553 U.S. 639 (2008) .........................................................................................................14

*Cal. Spine & Neurosurgery Inst. v. JP Morgan Chase & Co.,*
  2019 WL 7050113 (N.D. Cal. Dec. 23, 2019) ..................................................................4

*Cal. Spine & Neurosurgery Inst. v. United Healthcare Ins. Co.,*
  2020 WL 887833 (N.D. Cal. Feb. 24, 2020).....................................................................2

*Cal. Spine & Neurosurgery Institute v. Oxford Health Insurance, Inc.,*
  2019 WL 6171040 (N.D. Cal. Nov. 20, 2019)................................................................10

*Casa Bella Recovery Int'l, Inc. v. Humana Inc.,*
  2017 WL 6030260 (C.D. Cal. Nov. 27, 2017)................................................................10

*Cedric Kushner Promotions, Ltd. v. King,*
  533 U.S. 158 (2001) .........................................................................................................11

*Cooper v. Pickett,*
  137 F.3d 616 (9th Cir. 1997)...............................................................................................3

*Ellis v. J.P. Morgan Chase & Co.,*
  950 F. Supp. 2d 1062 (N.D. Cal. 2013) ...........................................................................12

Gibson, Dunn &
Crutcher LLP

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:19-CV-05721-JSW

*Gaines v. Home Loan Ctr., Inc.*,
  2010 WL 11506442 (C.D. Cal. May 24, 2010) ...................................................................13

*Gardner v. Starkist Co.*,
  418 F. Supp. 3d 443 (N.D. Cal. 2019) ...............................................................................14

*Gilbert v. MoneyMutual, LLC*,
  2018 WL 8186605 (N.D. Cal. Oct. 30, 2018)......................................................................14

*Gobeille v. Liberty Mut. Ins. Co.*,
  136 S. Ct. 936 (2016) ............................................................................................................5

*Greenstein v. Peters*,
  2009 WL 722067 (C.D. Cal. Mar. 16, 2009) ......................................................................12

*H.H. v. Aetna Ins. Co.*,
  342 F. Supp. 3d 1311 (S.D. Fla. 2018) ................................................................................9

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010) ................................................................................................................14

*Howard v. Am. Online, Inc.*,
  208 F.3d 741 (9th Cir. 2000)...............................................................................................11

*Josef K. v. Cal. Physicians' Serv.*,
  2019 WL 2342245 (N.D. Cal. June 3, 2019) ........................................................................4

*Landi v. Arkules*,
  172 Ariz. 126 (Ariz. Ct. App. 1992) .....................................................................................2

*Linear Tech. Corp. v. Applied Materials, Inc.*,
  152 Cal. App. 4th 115 (2007)...............................................................................................9

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
  431 F.3d 353 (9th Cir. 2005)...............................................................................................13

*Lockheed Martin Corp. v. Boeing Co.*,
  314 F. Supp. 2d 1198 (M.D. Fla. 2004) .............................................................................13

*McKenna v. WhisperText*,
  2015 WL 5264750 (N.D. Cal. Sept. 9, 2015) .......................................................................6

*Moran v. Bromma*,
  675 F. App'x 641 (9th Cir. 2017) .......................................................................................13

*Oregon Laborers-Employers Health & Welfare Tr. Fund v. Philip Morris Inc.*,
  185 F.3d 957 (9th Cir. 1999)...............................................................................................15

*Orthopedic Specialists of S. Cal. v. Pub. Employees' Ret. Sys.*,
  228 Cal. App. 4th 644 (2014)..............................................................................................10

iv

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:19-CV-05721-JSW

*Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*,
    12 Cal. App. 5th 200 (2017)................................................................................10

*Pac. Recovery Sols. v. United Behavioral Health*,
    2020 WL 5074315 (N.D. Cal. Aug. 25, 2020)..................................................4, 8, 15

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998)..................................................................................3

*Reed v. Dynamic Pet Prods.*,
    2015 WL 4742202 (S.D. Cal. July 30, 2015) .........................................................9

*RideApp, Inc. v. Lyft, Inc.*,
    2019 WL 7834759 (N.D. Cal. Aug. 15, 2019)........................................................6

*Sencion v. Saxon Mortg. Servs., Inc.*,
    2011 WL 311383 (N.D. Cal. Jan. 28, 2011) ..........................................................8

*Shorter v. Metro Life Ins. Co.*,
    216 Fed. App'x 689 (9th Cir. 2007).......................................................................13

*Smith v. United Healthcare Ins. Co.*,
    2019 WL 3238918 (N.D. Cal. July 18, 2019) ........................................................9

*Stitt v. Citibank, N.A.*,
    2015 WL 75237 (N.D. Cal. Jan. 6, 2015) .......................................................11, 14

*TML Recovery, LLC v. Humana Inc.*,
    2019 WL 3208807 (C.D. Cal. Mar. 4, 2019) .........................................................10

*In re Toyota Motor Corp.*,
    785 F. Supp. 2d 883 (C.D. Cal. 2011)...................................................................13

*U.S. Concord, Inc. v. Harris Graphics Corp.*,
    757 F. Supp. 1053 (N.D. Cal. 1991) .....................................................................11

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)................................................................................3

*Wagh v. Metris Direct, Inc.*,
    348 F.3d 1102 (9th Cir. 2003)...............................................................................11

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
    903 F. Supp. 2d 880 (C.D. Cal. 2012)...................................................................14

*Welp v. Cigna Health & Life Ins. Co.*,
    2017 WL 3263138 (S.D. Fla. July 20, 2017) .........................................................8

*Wise v. Verizon Commc'ns Inc.*,
    600 F.3d 1180 (9th Cir. 2010)...............................................................................4

Gibson, Dunn &
Crutcher LLP

v

*Wit v. United Behavioral Health*,
    No. 3:14-cv-05337-JCS (2019) ........................................................................................12

## Rules

Fed. R. Civ. P. 9(b) ........................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6) ........................................................................................3

## Statutes

18 U.S.C. § 1962(c) ........................................................................................11

18 U.S.C. § 1962(d) ........................................................................................11

29 U.S.C. § 1144(a) ........................................................................................3

42 U.S.C. § 300gg-5 ........................................................................................9

Gibson, Dunn &
Crutcher LLP

vi
DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:19-CV-05721-JSW

# SUMMARY OF ARGUMENT

This Court dismissed Plaintiffs' original complaint, ruling that Plaintiffs' claims were preempted by ERISA and suffered from various pleading deficiencies.  (Dkt. 34 ("Order").)  Plaintiffs filed a first amended complaint, but upon reviewing UBH's motion to dismiss Plaintiffs sought leave to amend again, implicitly conceding their claims were still deficient.  (*See* Dkt. 38 ("Motion to Dismiss FAC"); Dkt. 39-1 ("Motion to Amend").)  Plaintiffs are now on their third complaint—the Second Amended Complaint ("SAC")—but they are *still* not able to cure the fatal defects in their claims.  This case should therefore be dismissed in its entirety, with prejudice.

*First*, Plaintiffs' state-law claims are still preempted by Section 514(a) of ERISA.  Plaintiffs continue to challenge the handling of benefits claims and medical necessity determinations—the same theory that this Court previously held was preempted.  Plaintiffs' SAC identifies only one claim involving one non-ERISA member (MD) (all others involving ERISA members), and that claim should be dismissed for other reasons.

*Second*, Plaintiffs' misrepresentation-based claims still lack the particularity required under Rule 9(b), under this Court's previous ruling.  Plaintiffs have added a few scattered details about six patients whom Plaintiffs treated (out of "thousands").  But Plaintiffs still are missing critical details needed to satisfy Rule 9(b), and these new allegations fail to support Plaintiffs' fraud theory because they concern phone calls that happened **after** the treatment at issue and thus could not have induced Plaintiffs to treat these patients.  And Plaintiffs still fail to identify any specific fraudulent statements on any phone calls.

*Third*, Plaintiffs cannot state a claim under any "prong" of California's Unfair Competition Law, and the UCL does not apply to two of the three Plaintiffs—Meridian (which is in Florida) or Desert Cove (which is in Arizona).

*Fourth*, Plaintiffs still fail to allege any meeting of the minds for their contract claims or any disruption to their business for tortious interference, as this Court previously held.  Indeed, Plaintiffs have made these claims even weaker by removing several of the supporting allegations from their original complaint concerning their phone calls with UBH.  Plaintiffs likewise fail to allege any clear and unambiguous promise to support their estoppel claim.

Gibson, Dunn &
Crutcher LLP

*Finally*, Plaintiffs' RICO claim fails for multiple reasons.  The alleged RICO enterprise consists entirely of UBH and its employees—and thus fails to satisfy RICO's requirement that the defendant (UBH) be distinct from the alleged enterprise (also UBH).  Additionally, Plaintiffs do not allege any enterprise with a fraudulent common purpose; they do not allege mail or wire fraud with particularity under Rule 9(b); and they fail to allege facts showing any fraudulent acts caused Plaintiffs injuries to business or property.

Gibson, Dunn &
Crutcher LLP

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION**

3

This Court dismissed Plaintiffs' original complaint because most of Plaintiffs' claims were

4

preempted by ERISA, and otherwise suffered from pleading deficiencies.  (Order 15–18.)  The Court

5

was "skeptical" Plaintiffs could amend their claims to overcome these defects, but Plaintiffs were given

6

leave to amend "if they could do so in good faith and in compliance with Rule 11."  (*Id.* 18.)

7

The Court's skepticism was well-founded.   Plaintiffs  filed  a  First  Amended  Complaint

8

("FAC"), but after reviewing UBH's motion to dismiss, Plaintiffs sought leave to amend yet again.

9

(*See generally* FAC; Motion to Dismiss FAC; Motion to Amend.)  Despite having this Court's previous

10

dismissal ruling *and* a preview of UBH's arguments, Plaintiffs still have failed to cure the many

11

deficiencies in their claims and allegations.  This is because they cannot do so, and Plaintiffs' SAC

12

should be dismissed with prejudice.

13

Most of Plaintiffs' claims are preempted by ERISA because they challenge UBH's claims

14

processing and plan administration, and they depend on plan terms (*i.e.*, medical necessity).  The

15

handful of details about six plan members whom Plaintiffs treated also compel this conclusion:  five of

16

the six members were enrolled in ERISA plans.  Only one of the six plan members (MD) was enrolled

17

in a non-ERISA plan—and this claim fails for other reasons discussed below.

18

Plaintiffs' fraud claims fail because the newly-added allegations about these six plan members

19

show that Plaintiffs' phone calls with UBH occurred ***after*** the treatment at issue—and thus could not

20

have induced Plaintiffs to treat these plan members.  Nor do these new allegations satisfy Rule 9(b)

21

because Plaintiffs still fail to specify the content of any fraudulent statements by UBH on any of these

22

phone calls.  Plaintiffs' other state-law claims fail for various reasons, many of which this Court already

23

identified in its previous order and Plaintiffs have failed to address in any way in their SAC.

24

Finally, Plaintiffs cannot state a claim under RICO for multiple reasons.  Plaintiffs cannot

25

satisfy RICO's "distinctiveness" requirement, because UBH is both the "person" (defendant) and the

26

"enterprise."  Plaintiffs also fail to plead a common fraudulent purpose of any RICO enterprise, fail to

27

plead any wire fraud claims lack particularity under Rule 9(b), and lack RICO standing because the

28

Gibson, Dunn &
Crutcher LLP

1

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:19-CV-05721-JSW

alleged acts of mail or wire fraud (the vaguely described phone calls with UBH) lack the requisite causal connection to any injuries to business or property.

Because Plaintiffs have had multiple opportunities to amend already, and further leave to amend would be futile, the SAC should be dismissed in its entirety with prejudice.

## II.   STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4)

1.   Whether Plaintiffs cured the deficiencies this Court previously identified—ERISA preemption, Rule 9(b), and failure to state a claim under various state-law theories—through the SAC.

2.   Whether Plaintiffs can state a claim under their estoppel theory and their newly-added and amended RICO theory.

3.   Whether dismissal should be with prejudice, given that Plaintiffs were twice given leave to amend and any further leave to amend would be futile.

## III.   BACKGROUND

Plaintiffs' SAC advances essentially the same theory as their original complaint, which this Court accurately summarized in its previous dismissal order (Order 1–3): Plaintiffs challenge UBH's coverage determinations, based on medical necessity guidelines that Plaintiffs claim were overly restrictive.  There are three main differences in the SAC as compared to Plaintiffs' original Complaint, but none of them changes Plaintiffs' core theory or rescues this case from dismissal.  First, Plaintiffs add a new plaintiff (Desert Cove Recovery, LLC, an Arizona detox center) and drop iRecover Treatment Inc.  (*See* Dkt. 44 ("SAC") ¶ 150.)  Second, Plaintiffs add two new causes of action (RICO and promissory estoppel), while re-asserting the seven causes of action this Court previously dismissed.[1]  Third, Plaintiffs added few details about six plan members whom they treated (RT, EQ, EL, LP, MD, and GG).  The attached plan documents for these six plan members establish that five of them (all but MD) are ERISA plan members, so Plaintiffs' claims for those five are preempted.  (*See* Declaration of Han Nguyen ("Nguyen Decl.") Ex. A, "SPD" at 40 and "Handbook" at 40; Ex. B at 9,

---

[1]  Plaintiffs' SAC abandons the quantum meruit claim they sought in the FAC because Plaintiffs cannot allege that any of their services were rendered "at defendant's request," and quantum meruit is not a cause of action under Arizona law.  *See Cal. Spine & Neurosurgery Inst. v. United Healthcare Ins. Co.*, 2020 WL 887833, at *3–4 (N.D. Cal. Feb. 24, 2020); *Landi v. Arkules*, 172 Ariz. 126, 135 (Ariz. Ct. App. 1992).

*(Cont'd on next page)*

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:19-CV-05721-JSW

111; Ex. C at 1; Ex. D, "Group Policy" at 9 and "Certificate of Coverage" at 1; Ex. E at 1, 149 (provisions showing that the plans for RT, EQ, EL, LP, and GG are employer-sponsored plans governed by ERISA.))[2]

## IV.   STANDARD OF REVIEW

This Court's previous dismissal order summarized the applicable standards of review, and those same standards apply here.  (Order 4–5.)  Under Rule 12(b)(6), the plaintiff needs to plead facts sufficient to make each claim plausible; the plaintiff cannot rely on mere assertions and needs to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Under Rule 9(b), which applies to all of Plaintiffs' misrepresentation-based theories, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

## V.   ARGUMENT

### A.   Most Of Plaintiffs' State-Law Claims Still Are Preempted By ERISA.

This Court previously held that "to the extent Plaintiffs' patients were covered by ERISA plans, the state law claims are preempted" under ERISA Section 514(a), 29 U.S.C. § 1144(a), because Plaintiffs' claims had a "connection with" the underlying ERISA plans that provided coverage to Plaintiffs' patients.  (Order 15–18.)  As this Court recognized, all of Plaintiffs' claims depend on (1) allegations that "claims for benefits were processed improperly, which would impact the objective of providing a uniform regulatory regime on employee benefit plans," and (2) a contention that the treatment Plaintiffs provided "was medically necessary," and "the term medical necessity would be a term set forth in their patients' plans." (*Id.* 18.)

All of this remains true in the SAC.  Plaintiffs continue to allege that UBH improperly processed claims by applying coverage guidelines and criteria with which Plaintiffs disagree—*e.g.*, "UBH's flawed coverage adjudication mechanism . . . left [them] wrongly uncompensated for care they

---

[2]  This Court is permitted to consider these plan documents because they are referred to and relied on in the Complaint.  *See Parrino v. FHP, Inc*., 146 F.3d 699, 705–06 (9th Cir. 1998) *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chemical*, 443 F.3d 676, 681 (9th Cir. 2006).

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:19-CV-05721-JSW

provided." (SAC ¶ 146.)  As support, Plaintiffs repeatedly rely on findings from an ERISA case, *Wit v. United Behavioral Health*.  (SAC ¶¶ 22–25.)  Plaintiffs also allege they would "verif[y] benefits before providing care" or verify that "UBH patients . . . had active coverage" (*id.* ¶¶ 166, 238, 261, 284) through "Verification of Benefit ('VOB') and authorization calls" (*id.* ¶ 64)—further demonstrating that all of Plaintiffs' interactions with UBH were about "benefits" and "coverage."

Underlying all of Plaintiffs' claims is their contention that their services were "medically necessary" and therefore should have been covered.  (*See, e.g.*, *id.* ¶¶ 22, 33, 39.)  But as Plaintiffs concede, the medical necessity requirement is governed by the members' relevant health plans.  (*See id.* ¶ 93; *see also* Nguyen Decl. Ex. A "SPD" at 28; Ex. C at 79; Ex. D at "Certificate of Coverage," 72–73; and Ex. E at 118–19.)  And while Plaintiffs refer to other sources of information about medical necessity—*e.g.*, state laws, regulations, and industry understandings (SAC ¶¶ 89–92)—they never explain how or why these sources have any relevance to the claims or services at issue.  Even if Plaintiffs could muster an argument about these alternative sources, the health plans' medical necessity provisions—which UBH is bound to follow—are at the very least "a critical factor in establishing liability."  *Wise v. Verizon Commc'ns Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010).  As Plaintiffs allege, it is UBH's job as a claims administrator to apply these plan terms as written, and it is only because of this role by UBH that Plaintiffs had any interactions with UBH in the first place.  (*See, e.g.*, SAC ¶¶ 217, 598).  *See also Josef K. v. Cal. Physicians' Serv.*, 2019 WL 2342245, at *3 (N.D. Cal. June 3, 2019) ("[B]ut for the existence of [plaintiffs'] ERISA plan, plaintiffs would not have suffered the harm alleged.").[3]

---

[3] Courts regularly hold that claims arising from verification-of-benefits and preauthorization phone calls are preempted by ERISA because they arise from the administrator's role with respect to a health plan.  *See Cal. Spine & Neurosurgery Inst. v. JP Morgan Chase & Co.*, 2019 WL 7050113, at *4 (N.D. Cal. Dec. 23, 2019) (provider's state-law claims preempted where it alleged it called the insurance company to verify insurance coverage and benefits because "absent [patient's] ERISA plan, plaintiff would have no reason to . . .verify [] coverage" and insurance company "would not have made any oral representation" regarding patient's coverage) (quotation marks omitted); *Pac. Recovery Sols. v. United Behavioral Health*, 2020 WL 5074315, at *9–11 (N.D. Cal. Aug. 25, 2020) (holding that providers' state-law claims based on verification-of-benefits calls were preempted, because they have a connection with the underlying ERISA plans); *Armijo v. ILWU-PMA Welfare Plan*, 2015 WL 13629562, at *23 (C.D. Cal. Aug. 21, 2015) (state-law claims based on coverage pre-authorizations followed by refusals to pay were preempted because the "promise to pay" was "tethered closely to eligibility for services under the Plan" and thus, "directly related to the entitlement of benefits under the Plan").

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:19-CV-05721-JSW

As this Court previously recognized, Plaintiffs' claims fall squarely within the scope of ERISA Section 514(a), because they have a "connection with" the underlying ERISA plans.  (Order 15–18.) Congress's stated goal in enacting ERISA and its preemption provision, was to ensure a uniform federal framework governing these plans, rather than a patchwork of state rules and potentially conflicting determinations.  *See Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016).  Permitting Plaintiffs' claims to proceed under state law—for "tens of thousands" of providers under hundreds of ERISA plans throughout the United States (SAC ¶ 31)—would undermine this purpose.

Accordingly, Plaintiffs' state-law claims still are preempted "to the extent Plaintiffs' patients were covered by ERISA plans."  (Order 18.)  Two of the three Plaintiffs (Meridian and Harmony) identify only ERISA plan members whose claims are at issue (RT, EQ, EL, LP, and GG) so all of their claims should be dismissed.  (*See supra* pp. 2–3.)  Only Desert Cove identifies a single non-ERISA patient (MD) whom it treated, but its claims fail for the reasons discussed below.

### B.    Plaintiffs Fail To State A Claim Under State Law.

#### 1.    Plaintiffs' Claims Still Lack Particularity Under Rule 9(b).

The Court previously dismissed Plaintiffs' fraud and misrepresentation-based claims for failure to satisfy Rule 9(b).  (Order 13.)  A key shortcoming identified in this Court's decision involved Plaintiffs' failure to allege the "dates and times" of the phone calls that supposedly induced Plaintiffs to treat members of plans administered by UBH.  (*Id.*)  The timing of these calls is critical given the nature of Plaintiffs' fraud theory:  Plaintiffs allege that (1) "[p]rior to providing care, Plaintiffs verified that patients had benefits for all services provided by conducting a [VOB] phone inquiry," (2) Plaintiffs decided to treat these patients (as opposed to sending them to other facilities) "in reliance upon UBH's statements," and (3) despite UBH's assurances, it ultimately denied coverage to Plaintiffs' detriment based on the disputed medical necessity guidelines.  (SAC ¶¶ 228–31.)[4]

---

[4] *See also* SAC ¶ 64 (alleging "promises [that] occurred before treatment was first provided"); Order 11–12 (concluding that Plaintiffs' allegations of reliance could be sufficient, at the pleading stage, if Plaintiffs were to adequately "allege that before they provided coverage for their patients, they relied on representations that UBH would provide coverage").  Plaintiffs' SAC also purports to expand their fraud theory as "fall[ing] broadly into three categories" including pre-service denials, post-service denials, and fraudulent administrative denials.  (*Id.* ¶ 57.)  But Plaintiffs fail to explain how any "post-service" or "administrative" denials (in "Provider Remittance Advice letters" (*Id.* ¶ 438)) were fraudulent, or how they could have defrauded Plaintiffs given that they had already provided the services by the

*(Cont'd on next page)*

Gibson, Dunn & Crutcher LLP

Plaintiffs have now added a few allegations about some phone calls related to six specific plan members (RT, EQ, EL, LP, GG, and MD) to try to address the deficiencies the Court previously identified.  But these new allegations fail to satisfy Rule 9(b) and generally undermine—rather than support—Plaintiffs' fraud theory.

**MD**.  With respect to MD (the only non-ERISA plan member of the six) Plaintiffs allege that "Desert Cove representative Megan called UBH to confirm and re-confirm benefits" on several occasions.  (*Id.* ¶ 298.)  But Plaintiffs' allegations make clear that ***none*** of those calls occurred prior to the treatment at issue, and so could never have induced Desert Cove to treat MD "in reliance on" UBH's supposed statements.  Desert Cove alleges that its earliest call with UBH occurred on May 2, 2016 (*id.* ¶ 299)—two weeks after it began to treat MD on April 18, 2106 (*id.* ¶ 292).  And the other calls all occurred after treatment was completed.  (*Id.* ¶ 299.)[5]  Beyond that fatal defect, Desert Cove fails to describe what exactly was said on ***any*** of these calls that supposedly was fraudulent.

**EL**.  Harmony alleges it treated patient EL between August 26, 2018 and September 6, 2018, and that EL received authorization for "some days" of this treatment.  (*Id.* ¶ 264.)  Critically, however, Harmony does not allege any authorizations, verifications, or promises by UBH to cover the services provided on September 6, 2018—the only services that were denied and thus the only services at issue in this case.  (*Id.*)  To the contrary, Plaintiffs allege that UBH repeatedly refused to authorize coverage

---

time they received these letters.  That Plaintiffs may *disagree* with the denial reasons in these letters does not make them fraudulent.  Plaintiffs also fail to provide any facts regarding the dates these post-service communications were sent, by and to whom, or the specific content.

[5]  Plaintiffs disingenuously try to avoid inconvenient facts by removing exhibits from the SAC that they included with previous complaints, after UBH showed why these exhibits required dismissal.  (Motion to Dismiss FAC 6–7).  The Court may properly consider Plaintiffs' prior allegations and exhibits (which concern the same calls and letters on which they rely in the SAC) in "assess[ing] whether an amended complaint plausibly suggests an entitlement to relief."  *RideApp, Inc. v. Lyft, Inc.*, 2019 WL 7834759, at *3 n.2 (N.D. Cal. Aug. 15, 2019) (quoting *McKenna v. WhisperText*, 2015 WL 5264750, at *3 (N.D. Cal. Sept. 9, 2015)).  For example, the denial letter to Desert Cove, previously attached to Plaintiffs' FAC as Exhibit C, post-dated all of the treatment at issue, so it cannot support a fraud claim.  The denial letter also refutes Plaintiffs' assertion that UBH's guidelines were "kept hidden from the patients, providers, and even, when applicable, plan sponsors." (Dkt. 35-3 ("FAC Ex. C"); FAC ¶ 47.)  As Exhibit C shows, UBH published the guidelines on its web site and specifically referred to them in letters to plan members and providers like Desert Cove.  (FAC Ex. C.)  If, as Desert Cove contends, the published guidelines conflicted with generally accepted standards, then Desert Cove could have raised this issue with UBH at any point during the many interactions between them over the course of multiple years; instead, Desert Cove joined this lawsuit only after UBH stopped using the guidelines and now claims to have been defrauded throughout the period that they were in use.

---

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:19-CV-05721-JSW

1   for the September 6 services because of Harmony's "failure to obtain a license"—a requirement having

2   nothing to do with the disputed guidelines or Plaintiffs' fraud theory.  (*Id.*)

3       **LP**.  Harmony alleges it treated LP between June 25 and July 2, 2018, and that UBH granted

4   coverage for three of these days.  (*Id.* ¶ 265.)  But these allegations do not support a claim of fraud

5   because these three covered days are not at issue, and Harmony does not allege any authorizations,

6   verifications, or promises by UBH to cover the part of treatment for which coverage was denied.

7   Rather, Plaintiffs allege the opposite: "[a]s LP was transitioned to a lower level of care, UBH's Case

8   Manager Adam . . . denied coverage."  (*Id.*)  Plaintiffs allege that a few days passed between their

9   request for coverage of this "lower level of care" while UBH conducted "various Peer to Peer reviews"

10  before denying coverage—*i.e.*, "UBH dragged out the precertification process."  (*Id.*)  Plaintiffs

11  identify no basis to challenge the reviews' timeliness, nor do they allege that UBH made any promises

12  or misrepresentations during the review process.  Thus, their allegations fail to support a fraud claim.

13      **GG**.  Harmony alleges that it received "prior authorization" for patient GG "for every single

14  day of service prior to treating GG" from February 14 to March 3, 2018.  (*Id.* ¶ 269.)  The only phone

15  calls Harmony alleges, however, occurred after treatment already began, and Harmony fails to describe

16  the content of these calls with any specificity.  (*Id.*)

17      **RT**.  Meridian alleges that it called UBH on February 12, 2016, "prior to admitting" RT for

18  treatment, "to confirm that RT's treatment would be covered."  (*Id.* ¶ 245.)  But the "full and correct

19  transcript" of this VOB call (which Meridian tellingly dropped from its SAC) flatly contradicts

20  Meridian's fraud theory because it shows that UBH told Meridian on February 12 that "Auth" was

21  "required for PHP" and that UBH *did not provide the required authorization* (or, for that matter, make

22  any other representations about medical necessity).  (*See* FAC ¶ 236 and Ex. B.)  The Court can, of

23  course, properly consider this previously submitted exhibit (*see supra* n.5), but Meridian's claim is

24  doomed even without the exhibit because, absent any facts about this call, Meridian cannot satisfy Rule

25  9(b).  None of the other alleged calls about RT support Meridian's fraud theory, because they took

26  place after Meridian already began treating RT.  (SAC ¶¶ 247–51.)

27      **EQ**.  Meridian alleges that "Lori" provided "authorization" for its treatment of EQ (*id.* ¶ 182),

28  but Meridian fails to allege any details about the date or time of this call as required to satisfy Rule 9(b)

Gibson, Dunn &
Crutcher LLP

7

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:19-CV-05721-JSW

under this Court's previous ruling.  Plaintiffs' failure to allege the "dates and times" of the phone calls about EQ requires dismissal.  (Order 13.)  Beyond that defect, Plaintiffs allege that the only claim at issue for EQ—the "May 31, [2016] claim"—was denied because of "[m]issing documentation," not based on medical necessity or the disputed guidelines at issue in this case.  (*Id.* ¶ 184.)  Meridian's failure to submit supporting documentation has nothing to do with Plaintiffs' fraud theory because Plaintiffs still needed to show that they actually provided the services regardless of any alleged disputes about medical necessity.  In any event, the SAC fails to allege any facts to support their fraud claims— let alone the level of specificity required by Rule 9(b).

Finally, Plaintiffs' claims fail to satisfy Rule 9(b) for an additional reason:  ***none*** of Plaintiffs' allegations (about the six plan members or otherwise) describes the "specific content" of any fraudulent statements by UBH on any of these calls.  This failure dooms all of Plaintiffs' misrepresentation-based claims.  *See, e.g.*, *Pac. Recovery Sols.*, 2020 WL 5074315, at *8 (dismissing fraud claims by providers for failure to allege time, place, and specific content of verification-of-benefits calls with particularity).  As many courts have recognized, one purpose of Rule 9(b) is to flush out meritless claims of fraud at the pleading phase.  This is one of those cases: the few details Plaintiffs could muster in response to this Court's prior dismissal ruling undermine their fraud theory, and many of the required facts are still non-existent.

## 2.      Plaintiffs' UCL Claim Still Fails For Various Reasons.

Plaintiffs fail to state a claim under any "prong" of California's Unfair Competition Law ("UCL").  First, as set out above, Plaintiffs' claims under the "fraudulent" prong do not satisfy Rule 9(b).  Second, Plaintiffs cannot state a claim under the "unlawful" prong, because they do not "state with reasonable particularity the facts supporting the statutory elements of the violation."  *See Sencion v. Saxon Mortg. Servs., Inc.*, 2011 WL 311383, at *4 (N.D. Cal. Jan. 28, 2011).  Plaintiffs make passing reference to federal and state parity laws (SAC ¶¶ 588–90), but they fail to plead the elements of a parity claim, such as a specific medical analogue to the mental health coverage at issue, or any allegations about how coverage of the medical analogue differs from coverage of the services at issue here.  Plaintiffs' drive-by parity claims are also far less detailed than parity claims other courts have dismissed for lack of specificity.  *See Welp v. Cigna Health & Life Ins. Co.*, 2017 WL 3263138, at *5–

6 (S.D. Fla. July 20, 2017); *H.H. v. Aetna Ins. Co.*, 342 F. Supp. 3d 1311, 1320–21 (S.D. Fla. 2018).[6] Third, Plaintiffs cannot plead a violation of the "unfair" prong because they have not—and cannot— allege that they were consumers, competitors, or otherwise treated unfairly as prohibited by the UCL. *See Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007) (rejecting UCL claim where "the alleged victims are neither competitors nor powerless, unwary consumers"); *ABC Servs. Grp., Inc. v. United Healthcare Servs.*, 2019 WL 4137624, at *8 (C.D. Cal. June 14, 2019) (dismissing similar UCL claim by substance abuse center). Finally, Meridian and Desert Cove are located in Florida and Arizona (SAC ¶¶ 148, 150, 234, 276), and Plaintiffs allege no facts warranting extraterritorial application of the UCL. *Reed v. Dynamic Pet Prods.*, 2015 WL 4742202, at *9 (S.D. Cal. July 30, 2015).

### 3. Plaintiffs' Contract Claims Still Fail For Lack Of Specificity, And Their Estoppel Claims Fail For Similar Reasons.

This Court previously dismissed Plaintiffs' contract claims because they failed to allege a meeting of the minds regarding the terms of payment for covered services. (Order 5–8.) In particular, this Court ruled that it was not enough for Plaintiffs merely to allege an agreement arose from statements by UBH on phone calls that it would pay usual, customary, and reasonable (or "UCR") amounts for Plaintiffs' services; rather, Plaintiffs needed "to allege some facts to allege what the parties allegedly understood 'UCR' to mean." (Order 7–8.)

Nothing in the SAC cures this deficiency. Plaintiffs' amended allegations are even weaker than they were originally, because Plaintiffs have dropped their allegations that UBH agreed on phone calls to pay "UCR." (SAC ¶ 218.) Instead, Plaintiffs now allege only that "UBH promised the providers to provide reimbursement for medically necessary treatment," without any payment terms whatsoever. (*Id.* ¶ 61; *see also id.* ¶¶ 578, 610, 619, 621, 627.) Plaintiffs' revised allegations also show the parties lacked a meeting of the minds on the meaning of another term: medical necessity. (*Id.* ¶ 95 ["UBH preyed on Plaintiffs and the putative class having this understanding of medical necessity."].) Plaintiffs

[6] Plaintiffs also fail to allege a violation of the Affordable Care Act, 42 U.S.C. § 300gg-5, because they do not allege any discrimination against particular provider types or any other violations of this statute. Also, "Section 300gg-5 does not create a private right of action," so courts generally have refused to allow private plaintiffs to enforce it. *Smith v. United Healthcare Ins. Co.*, 2019 WL 3238918, at *7 (N.D. Cal. July 18, 2019) (citing *A.Z. v. Regence Blueshield*, 333 F. Supp. 3d 1069, 1083 (W.D. Wash. 2018)).

*(Cont'd on next page)*

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:19-CV-05721-JSW

Gibson, Dunn & Crutcher LLP

simply have not pled a meeting of the minds as required by this Court's prior ruling and the binding precedent upon which this Court (and the parties) previously relied.  (Order 5–8 (analyzing *Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*, 12 Cal. App. 5th 200 (2017) and *Cal. Spine & Neurosurgery Inst. v. Oxford Health Ins., Inc.*, 2019 WL 6171040 (N.D. Cal. Nov. 20, 2019)).)[7]

Plaintiffs' renewed promissory estoppel claim fails for similar reasons.  Promissory estoppel requires a "clear and unambiguous promise" by the defendant, as well as reasonable and foreseeable reliance by the plaintiff to its detriment.  *See Pac. Bay*, 12 Cal. App. 5th at 215 n.6; *Advanced Choices, Inc. v. State Dept. of Health Servs.*, 182 Cal. App. 4th 1661, 1672 (2010).  Not only have Plaintiffs failed to allege any "clear and unambiguous promise" by UBH, but—as explained *supra* pp. 5–8—Plaintiffs' allegations show that they could not have reasonably relied on any statements on the alleged phone calls.

### 4.    Plaintiffs Still Fail To State A Tortious Interference Claim.

This Court previously dismissed Plaintiffs' tortious interference claim, because they failed "to allege facts to show actual disruption of a contract or prospective economic relationship," such as by alleging that "any of their patients chose other providers or otherwise discontinued their relationships with Plaintiffs because of UBH's actions."  (Order 10.)  Plaintiffs' SAC re-asserts this flawed claim without *any new allegations* to address this deficiency.  Plaintiffs continue to rely entirely on a vague and conclusory assertion that "UBH did cause the relationship between Plaintiffs and UBH's insureds to be disrupted," without identifying any relationships, disruptions, or facts to support this assertion.  (SAC ¶ 670.)  It also remains the case that "UBH is not a true stranger to the contracts or to the prospective economics" involving members of plans enrolled in plans administered by UBH—a separate, additional ground for dismissal in this Court's previous ruling.  (Order 9–10.)

---

[7]   *See also TML Recovery, LLC v. Humana Inc.*, 2019 WL 3208807, at *4 (C.D. Cal. Mar. 4, 2019) (dismissing claims for breach of implied/oral contract because "an insurer's verification is not the same as a promise to pay") (citation omitted); *Orthopedic Specialists of S. Cal. v. Pub. Employees' Ret. Sys.*, 228 Cal. App. 4th 644, 646, 649 (2014) (finding that no oral promise was created where insurer authorized treatment and stated that provider "would be paid" for that treatment); *ABC Servs. Grp.*, 2019 WL 4137624, at *6 (allegations of pre-authorized services insufficient, because plaintiff needs to allege "facts about the specific terms of its agreement or agreements with a defendant in order to make an implied contract claim"); *Casa Bella Recovery Int'l, Inc. v. Humana Inc.*, 2017 WL 6030260, at *4 (C.D. Cal. Nov. 27, 2017) (dismissing contract theories where provider's complaint did not describe "when Plaintiff obtained authorization, for what types of service or how many patients, or how much Defendants agreed to pay when authorizing treatments").

Gibson, Dunn & Crutcher LLP

10

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:19-CV-05721-JSW

1

### C.   Plaintiffs Fail To State A Claim Under RICO.

2

After this Court dismissed their original complaint, Plaintiffs added a RICO claim to their FAC.

3

But after seeing UBH's motion to dismiss the FAC, Plaintiffs sought leave to amend their RICO claims,

4

purportedly because they "ha[d] discovered additional information . . . material to their RICO claims."

5

(Motion to Amend 1.)  In reality, the information Plaintiffs "discovered" comes from a separate ERISA

6

case, *Wit*, that they have relied on since the beginning of this case, and the information Plaintiffs import

7

from *Wit* does nothing to strengthen their RICO claims.   These claims should be dismissed with

8

prejudice, consistent with the Ninth Circuit's directive to "flush out frivolous RICO allegations at an

9

early stage of the litigation."   *Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1108 (9th Cir. 2003),

10

*overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) (en banc).[8]

11

***Lack Of "Distinctiveness" Between Defendant And "Enterprise."***  Plaintiffs primarily attempt

12

to plead a violation of RICO § 1962(c), under which a defendant can be liable for conducting the affairs

13

of a RICO enterprise "through a pattern of racketeering activity."   To survive dismissal, Plaintiffs needed

14

to plead "the existence of two distinct entities:  (1) a 'person'; and (2) an 'enterprise' that is not simply

15

the same 'person' referred to by a different name."   *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S.

16

158, 161 (2001).   Plaintiffs must also allege facts showing the "person" (UBH here) "conducted or

17

participated in the conduct of the *enterprise's* affairs, not just [its] *own* affairs."   *Stitt v. Citibank, N.A.*,

18

2015 WL 75237, at *3 (N.D. Cal. Jan. 6, 2015) (quotation marks omitted).   Plaintiffs failed to do so.

19

In their FAC, Plaintiffs explicitly said that the "person" and the "enterprise" were both UBH.

20

(FAC ¶¶ 433–34; Motion to Dismiss FAC 11–12.)  Plaintiffs now try to walk back from that admission

21

by deleting from the SAC their explicit allegations that UBH is the enterprise; nevertheless, their

22

remaining allegations show that this remains the case.   What Plaintiffs now say to describe the

23

enterprise is that "UBH has been and continue[s] to be, part of an association-in-fact enterprise . . .

24

comprised of at least UBH."  (SAC ¶¶ 537–38, 563).  Plaintiffs' deliberate obfuscation regarding the

25

scope and structure of the alleged RICO enterprise is sufficient reason, by itself, to dismiss this claim.

26

27

28

---

[8]  Plaintiffs' SAC asserts claims under sections 1962(c) and (d).  (*See* SAC ¶¶ 534–69.) Because Plaintiffs cannot plead a substantive claim under 1962(c), their RICO conspiracy claim fails.  *Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).  "A corporation and its officers cannot conspire with each other for purposes of a RICO violation."  *U.S. Concord, Inc. v. Harris Graphics Corp.*, 757 F. Supp. 1053, 1061 (N.D. Cal. 1991).

Gibson, Dunn & Crutcher LLP

11

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:19-CV-05721-JSW

1  *See, e.g.*, *Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1089 (N.D. Cal. 2013) (dismissing

2  RICO claim that alleged an enterprise of affiliated companies and intercompany divisions because

3  plaintiffs failed to "detail their involvement or make their involvement in the enterprise plausible" and

4  where the court could not "ascertain the structure of the alleged enterprise").

5        Moreover, although Plaintiffs now avoid saying it directly, many other allegations in the SAC

6  show that the RICO enterprise Plaintiffs are attempting to allege (if any) is still UBH.  Plaintiffs

7  repeatedly refer to and rely on UBH and its personnel in asserting the existence of a RICO enterprise.

8  (*See, e.g.*, SAC ¶¶ 312–13.)  Plaintiffs also allege UBH engaged in all of the challenged conduct—*e.g.*,

9  "UBH" developed the challenged medical necessity guidelines, "UBH" used these guidelines to make

10  medical necessity determinations, and "UBH" made misleading statements about its medical necessity

11  determinations.  (*See, e.g.*, *id.* ¶¶ 8–9, 95, 113, 117.)

12        The "additional information" that Plaintiffs "discovered" from *Wit* only further shows that the

13  alleged enterprise (if any) is UBH.  Indeed, Plaintiffs' newly-added allegations include the names of

14  eleven UBH personnel, as well as allegations about UBH committees and departments—*i.e.*, the

15  Behavioral Health Policy Analytics Committee (or "BPAC"), the Utilization Management Committee

16  ("UMC"), and the "Finance" and "Affordability" departments.  (*See, e.g.*, *id.* ¶¶ 319, 384, 391

17  (describing "UBH's Finance Department" and alleging that the "Affordability Department" is an

18  "internal department at UBH")).[9]

19        These allegations fail to satisfy RICO's distinctiveness requirement.  As numerous courts have

20  recognized, merely alleging that a corporate defendant's employees participated in the enterprise—like

21  the allegations added to the SAC—fails to satisfy this requirement.  "An 'enterprise' consisting only

22  of a corporation and its employees acting on its behalf fails for lack of distinctiveness because the

23  person (the corporate entity) and the 'enterprise' are one and the same."  *Greenstein v. Peters*, 2009

---

[9]  While Plaintiffs suggest that the various individuals now referenced may have worked for other United entities, the *Wit* findings (which Plaintiffs incorporate by reference) show they all worked for UBH and that the BPAC (which was later replaced by UMC) is a UBH committee.  (*See* Findings of Fact and Conclusions of Law ("FFCL"), *Wit v. United Behavioral Health*, No. 3:14-cv-05337-JCS (2019) (Dkt. 329) at p.1 (finding "[UBH] also operates as OptumHealth Behavioral Solutions"); *id.* ¶¶ 29, 31, 33–35, 91, 180–81, 186 (describing the various named personnel as working for UBH and/or OptumHealth Behavioral Solutions); *see also* Tr. of Proceedings, Vol. 4 at 697:25–700:16, *Wit v. United Behavioral Health*, No. 3:14-cv-05337-JCS (2017) (Dkt. 311).)

Gibson, Dunn &
Crutcher LLP

WL 722067, at *2 (C.D. Cal. Mar. 16, 2009) ("Otherwise, RICO would encompass every fraud case against a corporation, a 'far-fetched' result."); *id.* ("An 'enterprise' consisting only of [defendant] and its employees . . . fail[s] for lack of distinctiveness.") (citing *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)); *Shorter v. Metro Life Ins. Co.*, 216 Fed. App'x 689, 692–93 (9th Cir. 2007) (affirming dismissal of RICO claim because MetLife was the defendant and MetLife's Disability Unit was alleged to be the enterprise); *Aevoe Corp. v. Pace*, 2012 WL 13069926, at *3–4 (N.D. Cal. Apr. 6, 2012) (dismissing RICO claim where allegations of the underlying conduct were "based upon actions from an employee and her employer") (White, J.); *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 922 (C.D. Cal. 2011) (dismissing RICO claim because allegations concerned "conduct committed by certain individual employees" within the defendant's corporate family, but "none of the employees [we]re named as defendants").[10]

Likewise, Plaintiffs accomplish nothing by adding a few vague references to "the United umbrella of companies," without explaining how any "companies" other than UBH contributed to any alleged RICO enterprise.  (SAC ¶ 311.)[11]  Even if Plaintiffs had fleshed out these allegations, courts regularly reject allegations about corporate affiliates (or employees who work for those affiliates) as insufficient to satisfy the distinctiveness requirement.  *See In re Toyota Motor Corp.*, 785 F. Supp. 2d at 922; *Ayala v. World Sav. Bank, FSB*, 616 F. Supp. 2d 1007, 1018–19 (C.D. Cal. 2009); *Gaines v. Home Loan Ctr., Inc.*, 2010 WL 11506442, at *12–14 (C.D. Cal. May 24, 2010) (distinctiveness requirement not met where there were no allegations as to how a non-party (as in the case of the new entities described here) had a role that was anything different than its conduct in the normal course of business); *Moran v. Bromma*, 675 F. App'x 641, 645 (9th Cir. 2017) (affirming dismissal because

---

[10]  *See also Lockheed Martin Corp. v. Boeing Co.*, 314 F. Supp. 2d 1198, 1215 (M.D. Fla. 2004) ("The distinctness rule may not be circumvented by Lockheed's artful grouping into an association-in-fact of the corporation itself (Boeing), employees of the corporation . . . [and] groups of employees of the corporation . . . all of whom were at all relevant times allegedly working on behalf of the corporation.")

[11]  Plaintiffs amended the caption of their SAC to omit "(operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS)" after naming UBH, and they also deleted an allegation from the FAC that UBH operates under the brand name OptumHealth Behavioral Solutions (*see* FAC ¶ 154)— apparently because they would like to suggest that UBH and OptumHealth Behavioral Solutions are distinct entities (*see* SAC ¶ 151).  But Plaintiffs have not—and cannot—allege any facts showing that they are separate and distinct entities for RICO purposes.  Plaintiffs implicitly concede this fact and refer to these entities interchangeably throughout the SAC.  (*Compare* SAC ¶ 313 (alleging Fred Motz is "with the finance team from Optum Health Behavioral Solutions") *with id.* ¶¶ 329, 378, 384 (alleging Fred Motz worked for "UBH's Finance Department.").)

Gibson, Dunn & Crutcher LLP

1   plaintiffs made "no cognizable arguments explaining how" the corporate affiliates were "separate and

2   distinct from the alleged enterprise, consisting only of members of the same corporate family").

3         ***No Fraudulent Purpose Of RICO Enterprise.***  Plaintiffs' enterprise allegations are also flawed

4   because they do not allege facts showing any fraudulent purpose.  *See Stitt*, 2015 WL 75237, at \*5 n.5;

5   *Gilbert v. MoneyMutual, LLC*, 2018 WL 8186605, at \*13 (N.D. Cal. Oct. 30, 2018) (White, J.).

6   Plaintiffs' allegations that UBH "develop[ed] and implement[ed] [] a scheme to fraudulently deny

7   claims"—merely attempts to recast legitimate functions of a claims administrator in sinister terms.  (*Id.*

8   ¶ 341.)  UBH's development of medical necessity guidelines—and its interest in controlling medical

9   costs of plans that it administers (many of which are self-funded by large employers)—are fully

10  consistent with UBH's role as a claims administrator.  Courts repeatedly dismiss RICO claims when,

11  as here, the allegations aim to recast "routine commercial dealing as a RICO enterprise."  *Gardner v.*

12  *Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019).

13        ***Failure To Plead Mail/Wire Fraud With Particularity Under Rule 9(b).***  Plaintiffs attempt to

14  satisfy RICO's "pattern of racketeering activity" requirement by alleging that their phone calls with

15  UBH and the subsequent claims denials pursuant to UBH's application of the guidelines amounted to

16  wire fraud.  But for reasons explained above, none of the alleged fraudulent statements on these calls

17  are described with particularity as required by Rule 9(b)—and the handful of details about these calls

18  undermine, rather than support, Plaintiffs' fraud theory.  *See supra* pp. 5–8.

19        ***RICO Standing/Causation.***  To establish RICO standing, Plaintiffs are required to plead facts

20  showing that the alleged "pattern of racketeering" caused them injury to business or property.  *See*

21  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (plaintiff must show that the predicate

22  offense was the "but for" and "proximate cause" of his injury).  As described above, Plaintiffs could

23  not have relied on phone calls or after-the-fact correspondence with UBH in deciding to treat these

24  patients, so their assertions of reliance—as required to establish but-for causation when a RICO claim

25  is premised on fraud—fail.  *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008)

26  (holding that reliance is required by someone to establish causation in a RICO claim based on fraud

27  even though reliance is not itself an element); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,

28

Gibson, Dunn &
Crutcher LLP

1   903 F. Supp. 2d 880, 914–16 (C.D. Cal. 2012) (dismissing RICO claims against health insurer because

2   providers and members failed to allege reliance on alleged mail or wire fraud by insurer).

3          Even if Plaintiffs could demonstrate that the phone calls were a but-for cause of their alleged

4   injuries, they cannot satisfy RICO's proximate causation requirement, because Plaintiffs' injuries are

5   derivative of their patients' injuries.  *See Pac. Recovery Sols.*, 2020 WL 5074315, at *6.  In *Pacific*

6   *Recovery*, several providers tried to advance RICO claims based on allegations that they were given

7   assurances of "UCR" reimbursement on verification-of-benefits calls, and then reimbursed at less than

8   "UCR," but the court concluded that the providers' claims were "derivative of their patients' injuries"

9   from the same alleged underpayments.  *See id.* at *1–2, 6.  So, too, here:  according to Plaintiffs, first

10  and foremost, UBH's application of the disputed guidelines meant "patients had no coverage for the

11  services they received," and only because "the vast majority of patients did not and could not self-pay

12  for the services they received from Plaintiffs, it was the Plaintiffs who bore the entire cost of the

13  services provided."  (SAC ¶¶ 74–75.)  As in *Pacific Recovery*, the proximate causation factors

14  established by the Ninth Circuit—*e.g.*, whether the more direct victims (*i.e.*, the members) can be

15  counted on to vindicate the harm, risk of duplicative recoveries, and complicated rules for allocating

16  damages—all weigh against Plaintiffs' RICO claims here.  *See Oregon Laborers-Employers Health &*

17  *Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957, 963 (9th Cir. 1999); *see also Pac. Recovery Sols.*,

18  2020 WL 5074315, at *6.[12]

19  **VI.    CONCLUSION**

20         For the reasons set forth more fully above, Plaintiffs' SAC should be dismissed in its entirety.

21  Because any further leave to amend would be futile, the SAC should be dismissed with prejudice.

22  Dated: December 7, 2020                    Respectfully submitted,

23                                              By:  */s/ Geoffrey Sigler*

24                                                   Geoffrey Sigler

25                                              Attorney for Defendant
                                                UNITED BEHAVIORAL HEALTH

26  _____

    [12]  Plaintiffs wrongly claim that the *Wit* litigation brought by plan members is limited to members who
27  paid out of pocket for their treatment (SAC ¶¶ 134–37).  In fact, the *Wit* class definition includes plan
    members whose claims were denied regardless whether they paid out of pocket, so there would be
28  overlap between the members' claims in *Wit* and the providers' claims in this case.  Figuring out who
    owns the claim as between the member and the provider, on a claim-by-claim basis, is precisely the
    type of complicated process that has led the Ninth Circuit to enforce this standing requirement.

Gibson, Dunn &
Crutcher LLP

15

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:19-CV-05721-JSW

**CERTIFICATE OF SERVICE**

I, Nicole R. Matthews, declare as follows:

I am employed in the County of Los Angeles, State of California, I am over the age of eighteen years and am not a party to this action; my business address is 333 South Grand Avenue, Los Angeles, CA 90071-3197, in said County and State.  On December 7, 2020, I served the following document(s):

> **DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**
>
> **DECLARATION OF NGOC HAN S. NGUYEN IN SUPPORT OF DEFENDANT UNITED BEHAVIORAL HEALTH'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

on the parties stated below, by the following means of service:

☑ **BY ELECTRONIC TRANSFER TO THE CM/ECF SYSTEM**:  On this date, I electronically uploaded a true and correct copy in Adobe "pdf" format the above-listed document(s) to the United States District Court's Case Management and Electronic Case Filing (CM/ECF) system.  After the electronic filing of a document, service is deemed complete upon receipt of the Notice of Electronic Filing ("NEF") by the registered CM/ECF users.

☑ **(STATE)**      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☑ **(FEDERAL)**   I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 7, 2020.

/s/ *Nicole R. Matthews*
Nicole R. Matthews

Gibson, Dunn & Crutcher LLP

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTION OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:19-CV-05721-JSW