UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERIDIAN TREATMENT SERVICES, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>Defendant. | Case No. 19-cv-05721-JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO DISMISS SECOND AMENDED COMPLAINT AND SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 45 |

Now before the Court for consideration is the motion to dismiss filed by Defendant United Behavioral Health ("UBH"). The Court has considered the parties' papers, relevant legal authority, the record in this case, and it has had the benefit of oral argument. The Court HEREBY GRANTS, IN PART, AND DENIES, IN PART, UBH's motion.

**BACKGROUND**

The Court set forth the facts underlying this dispute in its Order granting, in part, and denying, in part, UBH's motion to dismiss the original complaint, and it shall not repeat those facts in detail here.[1] *See Meridian Treatment Solutions, Inc. v. United Behavioral Health*, No. 19-cv-5721-JSW, 2020 WL 7000073, at *1-*2 (N.D. Cal. July 20, 2020) ("*Meridian*"). In brief, Plaintiffs, Meridian Treatment Services ("Meridian"), Desert Cove, and Harmony Hollywood Treatment Center ("Harmony") (collectively "Plaintiffs"), are behavioral healthcare providers who provide Sub-acute Detoxification services, Residential Treatment Center services, Partial

---

[1] Plaintiffs, which include newly added Plaintiff Desert Cove Recovery, LLC ("Desert Cove"), filed an amended complaint on August 17, 2020. In lieu of opposing UBH's motion to dismiss that complaint, they filed the Second Amended Consolidated Complaint ("SACC"). (Dkt. No. 44.)

Hospitalization Program services, Intensive Outpatient ("IOP") services, and Outpatient services for substance abuse and mental health disorders. Plaintiffs allege they provide these services to patients insured under plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA") and under plans not governed by ERISA, including patients insured by UBH. (SACC ¶¶ 220-225.)[2]

Plaintiffs allege that UBH makes coverage and level of care determinations using proprietary Level of Care Guidelines ("LOGCs") and Coverage Determination Guidelines ("CDGs") (collectively "UBH Guidelines"). According to Plaintiffs, the UBH Guidelines use actuarial predictability rather than generally accepted standards of medical care, including "ASAM" criteria, to determine medical necessity.[3] Plaintiffs' theory of the case is that UBH falsely presents the UBH Guidelines as consistent with generally accepted standards of medical care and uses them to deny coverage for services that are, in fact, medically necessary. Plaintiffs allege this conduct deprives them of reimbursements to which they would otherwise be entitled. (*See, e.g., id.* ¶¶ 27, 67, 77, 81, 88, 109, 113-147.)

Based on these and other allegations that the Court shall address as necessary, Plaintiffs reassert their claims for (1) violations of California's Unfair Competition Law, Business and Professions Code sections 17200, *et seq.*; (2) breach of implied contract; (3) breach of oral contract; (4) intentional misrepresentation; (5) negligent misrepresentation; (6) concealment; and (7) intentional interference with prospective economic relations. Plaintiffs also assert a claim for

---

[2] Plaintiffs incorporate by reference Findings of Fact and Conclusions of Law issued in *Wit v. United Behavioral Health* into their SACC. *See* No. 14-cv-02346-JSC, 2019 WL 1033730 (N.D. Cal. Mar. 5, 2019) (Redacted Version), No. 14-cv-02346-JCS, Dkt. No. 413 (Sealed Version) (hereinafter "*Wit* Decision").) (*See* SACC ¶ 25.) At the hearing on this motion, Plaintiffs stated they relied on the findings in *Wit* to meet the pleading requirements of Federal Rules of Civil Procedure 8(a) (plausibility) and 9(b). (Dkt. No. 58, Transcript of Hearing ("Tr.") at 20:21-22.)

The court in *Wit* found that UBH "adopted Guidelines that are unreasonable and do not reflect generally accepted standards of care." *Wit,* 2019 WL 1033730, at *53, Conclusion of Law 205. The Ninth Circuit recently reversed that decision and held the plans at issue in that litigation "do not require consistency with" generally accepted standards of medical care and that UBH's interpretation of the plans "was not unreasonable." *Wit v. United Behavioral Health*, 2022 WL 850647, at *2 (9th Cir. Mar. 22, 2022).

[3] "ASAM" is an acronym for the American Society of Addiction Medicine.

1  promissory estoppel and allege UBH violated the Racketeer Influenced and Corrupt Organizations

2  Act ("RICO), 18 U.S.C. sections 1961, *et seq.*

3  **ANALYSIS**

4  **A.     Legal Standards on Motions to Dismiss.**

5           A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the

6  pleadings fail to state a claim upon which relief can be granted.  The Court's "inquiry is limited to

7  the allegations in the complaint, which are accepted as true and construed in the light most

8  favorable to the plaintiff."  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Even

9  under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's

10 obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

11 conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

12 *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286

13 (1986)).  Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but

14 must instead allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

15 "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

16 draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

17 *Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

18          Where, as here, a plaintiff alleges claims for fraud, those claims are subject to heightened

19 pleading standards.  A plaintiff must "state with particularity the circumstances regarding fraud or

20 mistake."  Fed. R. Civ. P. 9(b).  Intent, knowledge, "and other conditions of a person's state of

21 mind may be alleged generally." *Id.*  In addition, a claim "grounded in fraud" may be subject to

22 Rule 9(b)'s heightened pleading requirements.  A claim is "grounded in fraud" if the plaintiff

23 alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the

24 basis of his or her claim."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003).

25 Rule 9(b)'s particularity requirements must be read in harmony with Rule 8, which requires a

26 "short and plain" statement of the claim.  The particularity requirement is satisfied if the complaint

27 "identifies the circumstances constituting fraud so that a defendant can prepare an adequate

28 answer from the allegations."  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir.

3

1989).  Accordingly, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1107 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990). However, a court's "discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

## B.  The Court Dismisses the RICO Claims, With Prejudice.

RICO prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce" from conducting or participating "directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or the collection of unlawful debt." 18 U.S.C. § 1962(c).  RICO provides a civil remedy for "[a]ny person injured in his business or property by reason of a violation of section 1962."  18 U.S.C. § 1964(c).  Plaintiffs also allege UBH engaged in a conspiracy to violate RICO. *See* 18 U.S.C. § 1962(d).  The conspiracy claim rises and falls with the substantive claim. *See Odom v. Microsoft*, 486 F.3d 541, 547 (9th Cir. 2007); *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

To allege a plausible RICO claim, Plaintiffs must allege that UBH participated in "(1) the conduct of, (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity…[that is] (5) the proximate cause of harm to the victim." *Eclectic Props. E., LLC v. Maercus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citing 18 U.S.C. § 1962(c) and *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496-97 (1985)). "RICO is to be read broadly…[and] is to be liberally construed to effectuate its remedial purposes." *Sedima*, 473 U.S. at 497-98.  When a RICO claim is based on a predicate offense of fraud, as it is here, the "circumstances constituting fraud…shall be stated with particularity" pursuant to Rule 9(b). *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004).

UBH argues that Plaintiffs fail to show they have statutory standing to pursue their RICO claims. The Court concludes this argument is dispositive and, therefore, does not reach UBH's alternative arguments. To establish RICO standing, a plaintiff must allege injury to their business or property and that the harm was "by reason of" the alleged RICO violation. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). UBH does not dispute that Plaintiffs allege an injury to their business or property. Instead, it argues the facts are not sufficient to show Plaintiffs suffered an injury "by reason of" the alleged violations. The Supreme Court has interpreted the phrase "by reason of" to mean that a plaintiff "must show that a predicate offense not only was a but for cause of [their] injury, but was the proximate cause as well." *Id.* (internal citations and quotations omitted).

Within the Ninth Circuit, courts apply the same three-factor test used to determine if a plaintiff has antitrust standing to determine standing under RICO. *See Or. Laborers-Emprs. Health & Welfare Tr. Fund v. Philip Morris Inc.,* 185 F.3d 957, 963 (9th Cir. 1999) ("*Or. Laborers*"); *Pac. Recovery Sols. v. United Behavioral Health*, 508 F. Supp. 3d 606, 617 (N.D. Cal. 2020) ("*Pacific Recovery II*"). That test examines: "(1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries." *Or. Laborers*, 185 F.3d at 963.

For example, in *Pacific Recovery II,* the plaintiffs also were health-care providers who provided OON services to patients covered by insurance policies administered by UBH. 508 F. Supp. 3d at 611. The RICO claim in that case arose out of the plaintiffs' allegations that UBH falsely represented it would reimburse IOP services at a percentage of "usual and customary rates" ("UCR") but "did not pay UCR amounts for any of the patient claims at issue[.]" *Id.* Drawing from its analysis on the plaintiffs' antitrust claim, the court concluded the plaintiffs failed to allege RICO standing:

> [T]he proximate cause of plaintiffs' injury is the non-payment by their patients of any amounts that [UBH] did not reimburse. Plaintiffs' injury is, therefore, derivative of their patients' injuries and too remote to confer them with RICO standing. Further the risk of duplicative recoveries and having to engage in fact-intensive damages calculations to prevent such duplication is high to the extent that plaintiffs and their patients sue defendants for the same conduct.

508 F. Supp. 3d at 618; *see also Pac. Recovery Sols. v. United Behavioral Health*, 481 F. Supp. 3d 1011, 1026 (N.D. Cal. 2020) (concluding "defendants' conduct appears to have caused injury, first and foremost, to plaintiffs' patients…").

Plaintiffs argue *Pacific Recovery* is distinguishable because it involved balance billing and the rate at which the plaintiffs would be reimbursed. In contrast, Plaintiffs contend the allegations here show that because UBH determined treatment was not medically necessary, there were no claims to submit and "since there was never a submission, there was no balance bill." (Tr. at 29:4-5.) Plaintiffs originally alleged that "[a]s is industry practice, Plaintiffs and the putative class have assignment of benefits and financial responsibility agreements with *all* patients that entitle them to direct payment of claims by UBH." (Dkt. No. 5, Compl. ¶ 2 (emphasis added); *see also id.* ¶¶ 17, 122, 134, 147.) Plaintiffs have removed the allegations about these assignments but argue the Court should not consider them because they amended the complaint after receiving additional factual information about the alleged RICO enterprise.

Although Plaintiffs may not have been given an opportunity to issue a balance bill to their patients, the allegations from the original complaint give rise to the inference that they had a right to do so. Further, even though Plaintiffs allege that UBH denied every claim at issue, Plaintiffs' original allegations suggest the proximate cause of their injury is their inability to collect payment for services from their patients after UBH denied the claims. Their current allegations also raise that inference. Accordingly, the Court considers the allegations about the assignments as part of its "'context-specific' endeavor" drawing on its "judicial experience and common sense" to determine if Plaintiffs state a plausible claim. *Eclectic Props. E*, 751 F.3d at 995-96 (quoting *Iqbal*, 556 U.S. at 679). Plaintiffs include two brief references to facts that suggest that, in addition trying to contain benefit expenses, UBH designed the alleged scheme to control provider

6

behavior. (SACC ¶¶ 317, 361.) Taking those facts as true, the allegations regarding UBH's conduct as a whole does not give rise to a plausible, rather than possible, inference that Plaintiffs were the direct targets of the alleged RICO violations.

Accordingly, the Court concludes Plaintiffs fail to allege sufficient facts to show they have standing to pursue their RICO claims. UBH raised this issue when it moved to dismiss Plaintiffs' first amended complaint, and Plaintiffs amended as a matter of right. Because this is the third iteration of Plaintiffs' complaint, the Court concludes that further amendment would be futile.

### C. The Court Dismisses, in Part, Plaintiffs' State Law Claims Based on ERISA Preemption.

UBH renews its arguments that Plaintiffs' state law claims are preempted by ERISA, noting that only one of the individuals identified in the SACC, M.D., is not covered by an ERISA Plan. (Dkt. No. 45-1, Declaration of Ngoc Han S. Nguyen ("Nguyen Decl."), ¶¶ 4-9, Exs. A-F.)[4] Plaintiffs continue to allege they have treated patients who are insured by UBH under non-ERISA plans. They also include allegations about the percentage of individuals in the United States who would be covered by non-ERISA plans. (SACC ¶¶ 220-223.) Accepting those allegations as true, to the extent Plaintiffs' state law claims relate to non-ERISA plans, the Court concludes the claims would not be preempted.[5]

The Court set forth the legal standards relating to ERISA preemption in its Order granting UBH's first motion to dismiss, and it shall not repeat those standards here. *See Meridian*, 2020

---

[4] Defendants have not relied on the documents attached to the Nguyen declaration for any purpose other than to show that five of the six individuals identified in the SACC were covered by ERISA plans. The Court "may take judicial notice of "documents crucial to [Plaintiffs'] claims, but not explicitly incorporated in" the SACC. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego v. Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006). Plaintiffs' state law claims succeed only to the extent that they would not be preempted by ERISA, and the fraud claims require Plaintiffs to comply with Rule 9(b). Accordingly, the Court OVERRULES Plaintiffs' objections. The Court has considered the exhibits solely for the fact that they exist for purposes of the preemption argument and to determine whether the Plaintiffs have complied with Rule 9(b).

[5] Defendants have not challenged the sufficiency of Plaintiffs' allegations with respect to claims that would fall outside ERISA's preemptive scope. Plaintiffs also include statistics relating to the number of insurance plans that would not be considered ERISA plans and identify at least one patient who was not covered by an ERISA plan. For those reasons, the Court finds the facts here distinguishable from the facts in *Pacific Recovery II*. *See* 508 F. Supp. 3d at 622.

WL 7000073, at *8-*10.  UBH argues the crux of each of Plaintiffs' claims for relief remains premised on the theory that UBH improperly denied benefits, which will require a fact finder to interpret the terms of an ERISA plan.  Plaintiffs again argue each claim is premised only upon Plaintiffs' contractual relationships with UBH, which they assert is not an ERISA-regulated relationship.  As this Court previously stated, that does not end the Court's inquiry because the Court must look to the objectives of ERISA, including the objective to "provide a uniform regulatory regime over employee benefit plans[.]" *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208 (2004).  It also must consider "the nature and effect of the" claim on an ERISA plan.  *Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325 (1997).

Plaintiffs are OON providers but allege the putative class also includes in-network ("INN") providers.  (SACC ¶ 215.)  According to Plaintiffs, INN providers have contracts with UBH that "generally set out the terms of reimbursement but do not address the specifics of medical necessity criteria.  *The criteria are determined by the insurance arrangement or plan*." (*Id.* ¶ 217 (emphasis added).)  Plaintiffs also continue to allege that the claims at issue must be reprocessed to determine whether the services are medically necessary.  (*See, e.g., id.* ¶¶ 39, 599, 611.)  The Court is not persuaded by Plaintiffs' arguments that such a determination could be made without reference to their patients' plans or that Plaintiffs' state law claims could be construed as anything but a claim for unpaid benefits under ERISA plans.

The Court also finds persuasive the reasoning set forth in *California Spine and Neurosurgery Institute v. JP Morgan Chase & Co.*, No. 19-cv-03552-PJH, 2019 WL 7050113 (N.D. Cal. Dec. 23, 2019).  There, the plaintiff alleged the defendant, through verification of benefit calls and letters, promised to pay plaintiff the UCR for spinal surgery on a patient covered by an ERISA plan.  *Id.*, 2019 WL 7050113, at *1-*3.  After the defendant paid what the plaintiff alleged was an amount well below the UCR, plaintiff brought claims for promissory estoppel and quantum meruit.  *Id.*  The court concluded plaintiff's state law claims had "reference to" an ERISA plan because "absent such plan, the promise allegedly made by [the] defendant … neither could have nor would have been made." *Id.*, 2019 WL 7050113, at *4 (citing *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 665 (9th Cir.), *cert denied* 140 S.Ct. 223 (2019)); *see*

8

1    *also id.* ("Absent [the patient's] ERISA plan, plaintiff would have no reason to call defendant ….
2    'to verify' … coverage and, incidentally, defendant … would not have made any oral
3    representation concerning [the plaintiff's] coverage rights").

4        The court also found it significant that the plaintiff alleged that it had been underpaid by a sum certain less "any applicable deductibles, coinsurance or copayments[.]"  The court stated that although the plaintiff did not allege how those amounts would be defined, it could "reasonably infer that such definitions derive from [the patient's] 'insurance coverage and benefits' …, which arise from his ERISA plan…." *Id.*, 2019 WL 7050113, at *5.  The court also reasoned that the plaintiff had failed to explain how the alleged oral representation regarding the payment of UCR was a "separate agreement" that might give rise to a claim that would not be preempted. *Id.*, 2019 WL 7050113, at *6.

    Here, Plaintiffs argue they formed separate and independent agreements with UBH. However, as in *California Spine and Neurosurgery*, but for the existence of the patients' ERISA plans, Plaintiffs would have had no reason to call UBH to verify coverage or benefits and, absent those plans, the alleged promises "neither could nor would have been made." *Id.*, 2019 WL 7050113, at *4-*5; *cf. Josef K. v. Cal. Physician's Servs.*, No. 18-cv-06385-YGR, 2019 WL 2342245, at *3 (N.D. Cal. June 3, 2019) (finding claims preempted because allegations "demonstrate that but for the existence of [the] ERISA plan, plaintiffs would not have suffered the harm alleged with respect to the interference with contract claim").

    The Court GRANTS, IN PART, UBH's motion on this basis.  Because this is the third iteration of Plaintiffs' complaint, the Court concludes that any further amendment would be futile.  Accordingly, the Court dismisses, with prejudice, Plaintiffs' state law claims to the extent they arise out of denials of coverage of claims covered by ERISA plans. *See Johnson v. Dist. 2 Marine Engineers Beneficial Ass'n Associated Mr. Officers, Med. Plan*, 857 F.2d 514, 517 (9th Cir. 1988) (affirming dismissal with prejudice of claims preempted by ERISA).

//
//
//

**D.    The Court Denies, in Part, the Motion to Dismiss the Contract Based Claims.**

In Counts IV and V, Plaintiffs allege UBH breached implied-in-fact and oral contracts, and in Count VI, they assert a claim for promissory estoppel.[6]  In order to allege the parties formed a contract, Plaintiffs must allege facts to show "mutual assent (usually accomplished through the medium of an offer and acceptance) and consideration." *Pac. Bay Recovery*, 12 Cal. App. 5th at 215.  One of the essential elements of the promissory estoppel claim is a clear and unambiguous promise.  *See, e.g., Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal. App 4th 915, 929 (2013).

UBH argues each of these claims fail because Plaintiffs fail to allege facts to show the parties' formed a contract or that UBH made a clear and unambiguous promise.  In particular, UBH again argues Plaintiffs fail to allege the parties agreed on material terms, such as the amount of payment and the meaning of medical necessity.  With respect to the alleged implied-in-fact contracts, Plaintiffs allege that the parties agreed that "Plaintiffs would provide medically necessary substance abuse treatment to UBH's insureds in exchange for and would receive reimbursement for the treatment services based on the treatment provided being medically necessary." (SACC ¶ 594.)  With respect to the oral contracts, Plaintiffs allege the parties agreed, over the telephone, that "Plaintiffs would provide medically necessary substance abuse treatment to UBH's insureds and UBH would reimburse Plaintiffs for the medically necessary treatment." (*Id.* ¶ 604.)

Plaintiffs continue to allege the specific nature of the services and the levels of care at issue that they each provided to UBH's insureds.  Plaintiffs also include information about the total number of patients they treated whose plans were administered by UBH.  (SACC ¶¶ 234-309.) Plaintiffs allege UBH breached the alleged contracts by using the UBH Guidelines to deny claims for services that Plaintiffs allege were medically necessary.  (*Id.*)  Although Plaintiffs have

---

[6]    The essential elements of a claim for breach of contract, whether oral or implied, are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff.  Reichert v. Gen. Ins. Co., 68 Cal. 2d 822, 830 (1969).  In contrast to an oral or written contract, the existence and terms of an implied contract are manifested by parties' conduct.  *Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 215 (2017).

removed allegations relating to UCR, that is not dispositive. *See* Cal. Civ. Code § 1610. Finally, the dispute UBH raises over the meaning of medical necessity does not impact whether the parties formed a contract; rather, it goes to the question of whether UBH's conduct amounted to a breach; an issue that is not ripe for resolution.

The parties' contractual dispute arises in the context of the health-care industry and many of the cases relied on by the parties suggest that Plaintiffs may face an uphill battle in establishing the pre-authorization calls and letters are sufficient to establish mutual assent. *See, e.g., Pac. Bay Recovery*, 12 Cal. App. 5th at 215-17; *see also Cal. Spine and Neurosurgery Inst. v. Oxford Health Ins., Inc.*, No. 19-cv-03553-DMR, 2019 WL 6171040, at *3-4 (N.D. Cal. Nov. 20, 2019) ("*Oxford Health*"); *Cedars Sinai Med. Ctr. v. Midwest Nat'l Life Ins. Co.*, 118 F. Supp. 2d 1002, 1008-09 (C.D. Cal. 2000). For purposes of this motion, the Court concludes Plaintiffs' allegations are sufficient to state these claims for relief, and it DENIES UBH's motion to dismiss Counts IV, V, and VI. *Cf. Univ. of So. Cal. v. Blue Cross Blue Shield of N. Carolina*, No. 20-cv-11133-RGK-MRW, 2021 WL6882157, at *2-*4 (C.D. Cal. Mar. 11, 2021).

Plaintiffs also re-allege their claim intentional interference with prospective economic relations.[7] Plaintiffs still fail to include facts to show how the relationships with their patients (UBH's insureds) were disrupted, and UBH is not a true stranger to Plaintiffs' relationships with their patients. *See Meridian*, 2020 WL 7000073, at *5-*6. Therefore, the Court concludes Plaintiffs still fail to allege facts to state a claim. This is the third iteration of Plaintiffs' complaint, and the Court concludes further amendments would be futile. Accordingly, the Court GRANT UBH's motion to dismiss Count X, with prejudice.

//

//

---

[7] The essential elements of this claim are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003).

### E.     The Court Dismisses the Fraud Based Claims.

Plaintiffs also reassert their three fraud based claims: intentional misrepresentation (Count VII), negligent misrepresentation (Count VIII), and concealment (Count IX).[8] Plaintiffs allege that UBH represented to them that it "intended to indemnify or otherwise pay for medically necessary healthcare services that Plaintiff provided for the benefit of UBH" but "did not intend to pay Plaintiffs based on a true and fair determination of medical necessity." That was because it "actively concealed the true, profit driven nature of its" Guidelines instead of making a medical necessity determination based on generally accepted standards of medical care. (SACC ¶¶ 634-636, 641; *see also id.* ¶¶ 645-652 (similar allegations for negligent misrepresentation claim).) Plaintiffs' concealment claim also is premised on the theory that UBH "concealed that its determination of medical necessity would be made through the application of illegal, profit driven guidelines." (*Id.* ¶ 659.)

The Court previously dismissed this claim on the basis that Plaintiffs failed to comply with Rule 9(b). Although Plaintiffs added more detail about communications relating to specific patients, the only patient who was not covered by an ERISA plan is M.D. Accordingly, the Court concludes that Meridian and Harmony still fail to allege these claims with particularity. The Court previously found Plaintiffs' allegations sufficient to show reliance. However, Desert Cove's more detailed allegations with respect to M.D. demonstrate that its communications with UBH took place after it began to treat M.D. Desert Cove also does not allege that it would have stopped treating M.D. if it had known UBH would not pay for what Desert Cove asserts was medically necessary treatment. For that reason, the Court concludes Desert Cove fails to sufficiently allege facts to show reliance.

Accordingly, the Court GRANTS UBH's motion to dismiss the fraud-based claims. If Plaintiffs wish to amend these claims, they must seek leave to do so and must submit a proposed

---

[8] The Court will not repeat the essential elements of this claims, which are set forth in its previous order. *See Meridian,* 2020 WL 7000073, at *6 (citing *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004); *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162 (2015); and *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007).)

12

amended complaint.

### F. The Court Dismisses the UCL Claim.

Plaintiffs also re-allege their UCL claim, which depends heavily on the findings in *Wit*. In light of the Court's ruling on the RICO claim and the fraud based claims, as well as the Ninth Circuit's recent opinion in *Wit*, the Court GRANTS UBH's motion to dismiss this claim as well.[9] If Plaintiffs seek leave to amend this claim, they must seek leave to do so and shall submit a proposed amended complaint with their motion.[10]

## CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, UBH's motion to dismiss. The parties shall appear on May 20, 2022, at 11:00 a.m. for an initial case management conference, and they shall file a joint case management conference statement on or before May 13, 2022.

**IT IS SO ORDERED.**

Dated: April 13, 2022

_____
JEFFREY S. WHITE
United States District Judge

---

[9] To the extent Plaintiffs argue UBH violated federal or state parity acts, the Court concludes they have not alleged sufficient facts to show UBH applied different Guidelines to physical claims.

[10] Plaintiffs also should be prepared to include facts that make it clear that the Court could apply the UCL extraterritorially.