MATTHEW M. LAVIN (*pro hac vice*)
matt.lavin@agg.com
AARON R. MODIANO (*pro hac vice*)
aaron.modiano@agg.com
**ARNALL GOLDEN GREGORY LLP**
2100 Pennsylvania Ave. NW
Suite 350S
Washington, DC 20037
Telephone:    202.677.4030
Facsimile:    202.677.4031

David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
**DL LAW GROUP**
345 Franklin St.
San Francisco, CA 94102
Telephone: (415) 678-5050
Facsimile: (415) 358-8484

Attorneys for Plaintiffs Meridian Treatment Center, et al.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Meridian Treatment Center, et al. | Case No. 4:19-cv-05721-JSW-JCS |
| Plaintiffs, | Hon. Jeffrey S. White |
| v. | **PLAINTIFFS' NOTICE OF MOTION, MOTION, AND SUPPORTING MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION** |
| United Behavioral Health. | |
| Defendants. | |

# Table of Contents

NOTICE OF MOTION AND MOTION ...............................................................................................1

STATEMENT OF ISSUES TO BE DECIDED .................................................................................1

I. INTRODUCTION ..........................................................................................................................1

II. ARGUMENT ................................................................................................................................1

    A.    Legal Standard .........................................................................................................................1

    B.    Introduction & Factual Background ........................................................................................2

    1.    Medical Necessity Criteria .....................................................................................................2

    2.    UBH Utilized Illegal Guidelines ............................................................................................3

III. PLAINTIFFS' PROPOSED CLASS SATISFIES THE RULE 23 REQUIREMENTS .................5

    A.    The Facts in this Case Satisfy the Requirements of Rule 23(a) .............................................5

    1.    The Classes Are Sufficiently Numerous .................................................................................5

    2.    Rule 23(a)'s Commonality Requirement is Met ....................................................................5

    3.    Typicality            11

    4.    Adequacy            12

    5.    The Proposed Class Is Ascertainable ...................................................................................12

    B.    The Requirements of Rule 23(b) Are Satisfied ....................................................................12

    2.    Damages            14

IV. CONCLUSION ...........................................................................................................................15

Plaintiffs' Notice of Motion and Motion for Class
Certification

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Anesthesia Med. Grp., Inc. v. Inland Empire Health Plan*,
    80 Cal. App. 5th 794 (2022) *review denied* (Sept. 28, 2022) ....................................................10

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997).........................................................................................................1, 14

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)..............................................................................................................2

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ................................................................................................6

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ............................................................................................13

*Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*,
    2022 WL 137547 (9th Cir. Jan. 14, 2022) ...........................................................................7

*Buus v. WAMU Pension Plan*,
    251 F.R.D. 578 (W.D. Wash. 2008) ...................................................................................12

*Cali. Spine and Neurosurgery Institute v. Oxford Health Ins.*,
    2019 WL 6171040 (N.D. Cal 2019) ....................................................................................11

*Castillo v. Bank of Am., NA*,
    980 F.3d 723 (9th Cir. 2020) ................................................................................................6

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)..............................................................................................................14

*Congdon v. Uber Techs., Inc.*,
    291 F. Supp. 3d 1012 (N.D. Cal. 2018) ..............................................................................12

*Dukes v. Wal–Mart Stores, Inc.*,
    603 F.3d 571 (9th Cir.2010) (*en banc*) ..........................................................................5, 13

*In re First All. Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) ................................................................................................5

*In re First All. Mortg. Co.*
    (9th Cir. 2006)......................................................................................................................6

Plaintiffs' Memorandum of Points and Authorities in Support of
Class Certification

*In re Heritage Bond Litig.*,
2004 WL 1638201 (C.D. Cal. July 12, 2004) ............................................................... 1

*Hughes v. Blue Cross of N. Cali.*,
215 Cal. App. 3d 832 (Ct. App. 1989) ........................................................................ 2

*Jones v. Wachovia Bank*,
230 Cal. App. 4th 935 (2014) ................................................................................... 11

*Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001) ................................................................................. 12

*Lynch v. Rank*,
604 F. Supp. 30 (N.D. Cal.), *aff'd*, 747 F.2d 528 (9th Cir. 1984), *opinion
amended on reh'g*, 763 F.2d 1098 (9th Cir. 1985) ................................................... 13

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
238 F.R.D. 482 (C.D. Cal. 2006) ............................................................................. 13

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ............................................................................... 2, 14

*Orantes-Hernandez v. Smith*,
541 F. Supp. 351 (C.D. Cal. 1982) ............................................................................ 5

*Peters v. Aetna Inc.*,
2 F.4th 199 (4th Cir. 2021), *cert. denied sub nom. OptumHealth Care Sols. v.
Peters*, 142 S. Ct. 1227 (2022) ................................................................................. 9

*Regents of Univ. of California v. Principal Fin. Grp.*,
412 F. Supp. 2d 1037 (N.D. Cal. 2006) ..................................................................... 6

*Rodarte v. Presbyterian Ins. Co.*,
2016-NMCA-051, 371 P.3d 1067 (N.M. Ct. App. 2016), *cert. denied* (May 19,
2016) ........................................................................................................................ 2

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) ................................................................................... 5

*Roley v. Google LLC*,
40 F.4th 903 (9th Cir. 2022) ..................................................................................... 8

*Senne v. Kansas City Royals Baseball Corp.*,
934 F.3d 918 (9th Cir. 2019) ................................................................................... 14

*Simpson v. Fireman's Fund Ins. Co.*,
231 F.R.D. 391 (N.D. Cal. 2005), *modified*, 2007 WL 46785 (N.D. Cal. Jan. 5,
2007) ...................................................................................................................... 12

*Stockton Mortg., Inc. v. Tope*,
  233 Cal. App. 4th 437, 183 Cal. Rptr. 3d 186 (2014)........................................6

*In re Syncor*,
  227 F.R.D...........................................................................................................5

*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998) ........................................................................12

*Wang v. Chinese Daily News, Inc.*,
  737 F.3d 538 (9th Cir. 2013) ............................................................................5

*Wickline v. State of California*,
  192 Cal. App. 3d 1630 (Ct. App. 1986)............................................................2

*Wit v. United Behav. Health*,
  58 F.4th 1080 (9th Cir. 2023) .........................................................................15

*Wit v. United Behav. Health*,
  No. 14-CV-02346-JCS, 2019 WL 1033730 (N.D. Cal. Mar. 5, 2019) (Trial
  Transcript attached as Ex. "22") ..............................................................4, 6, 15

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ........................................................................13

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) *opinion amended on denial of reh'g*, 273 F.3d
  1266 (9th Cir. 2001).........................................................................................14

**Statutes**

Civ. Code, § 1620.....................................................................................................9

Civ. Code, § 1621.....................................................................................................9

*ERISA* ..............................................................................................................1, 15

**Other Authorities**

Fed. R. Civ. P. 23(a)(l) .............................................................................................5

Fed. R. Civ. P. 23(b)(1)(A), 23(b)(2) ......................................................................1

Federal Rule of Civil Procedure 23 ................................................................ *passim*

Rule 23(a) ............................................................................................................5, 12

Rule 23(a)(2) .............................................................................................................5

Rule 23(a) and Rule 23(b).........................................................................................1

Rule 23(a)'s ...................................................................................................................5

Rule 23(b) ...............................................................................................................13, 14

Rule 23(b)(3) ..........................................................................................................13, 14

Rule 23(b)(3)(A)-(D) ....................................................................................................13

Rule 23's .....................................................................................................................12

Plaintiffs' Memorandum of Points and Authorities in Support of
Class Certification

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at such other time as the Court may determine, before the Honorable Jeffrey S. White, Plaintiffs, Meridian Treatment Center *et al.* ("Plaintiffs") in the above-captioned actions will and hereby do move for class certification pursuant to Federal Rule of Civil Procedure 23.

The relief Plaintiffs request in this motion is an order: (1) certifying the proposed Class defined below; (2) appointing Plaintiffs as representatives of the Class; and (3) appointing Plaintiffs' counsel, Arnall Golden Gregory, LLP, as class counsel for the Class, as well as any other relief that this Court deems appropriate and proper. This motion is brought pursuant to Federal Rule of Civil Procedure 23, and is supported by this Notice of Motion, Motion, and accompanying Memorandum of Points and Authorities, the Declaration of Aaron R. Modiano, and all exhibits thereto, all pleadings on file in this lawsuit, and such other support as Plaintiffs may present to this Court.

**STATEMENT OF ISSUES TO BE DECIDED**

The issues for this Court to decide are: (1) whether the Court should certify the proposed Class under Fed. R. Civ. P. 23(b)(1)(A), 23(b)(2), and/or 23(b)(3), for class action of the proposed Class; (2) whether the Court should appoint the Plaintiffs as Class representatives for the Class; and (3) whether the Court should appoint Arnall Golden Gregory, LLP as Class Counsel for the Class.

# I. INTRODUCTION

This litigation encompasses a putative class with more than ▮▮▮▮ claims representing more than ▮▮▮▮ days of mental health and substance use disorder treatment ("MH/SUD") for more than ▮▮▮▮ individual patients at more than ▮▮▮▮ facilities. *See* Ex. 16; Ex. 12. Plaintiffs are three of these facilities. Plaintiffs and the thousands of putative class members were directly injured by Defendant, United Behavioral Health's ("UBH") unlawful denials of valid, medically necessary claims through the fraudulent and deceptive use of UBH's Level of Care Guidelines ("LOCGs") and Coverage Decision Guidelines ("CDG's," collectively, the "Guidelines"). Within this overall group, Plaintiffs have asserted claims for breach of oral contract, breach of implied contract, and promissory estoppel that are appropriate for class certification. Plaintiffs propose the following class definition:

*Any provider with an unreimbursed or under-reimbursed mental health / substance use disorder claim denied by United Behavioral Health using the Guidelines for dates of treatment between May 22, 2011 and January 31, 2019 for those individuals with healthcare insurance plans not subject to ERISA.*

The claims at issue in this litigation are those claims for MH/SUB treatment provided by Plaintiffs and the putative class that were denied by UBH using the Guidelines between May 22, 2011 and January 31, 2019. *See* Ex. 16; Ex. 12. UBH applied its faulty Guidelines to services for all levels of MH/SUD treatment, including in making determinations about the medical necessity of out-patient levels of care. Plaintiffs and the putative class are MH/SUD providers who rendered, among other services, sub-acute detoxification services ("DTX"), residential treatment center services ("RTC" or "RES"), partial hospitalization program Services ("PHP"), intensive outpatient program services ("IOP"), and outpatient services ("OP"). These services are the subject of this action.

# II. ARGUMENT

## A.       Legal Standard

Federal Rule of Civil Procedure 23 sets forth the standards for class certification. To qualify for class certification, a class must meet all requirements of Rule 23(a) and Rule 23(b). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). At this stage of litigation, extensive evidence is not required. *See In re Heritage Bond Litig.*, 2004 WL 1638201, at *2 (C.D. Cal. July 12, 2004). "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule

23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022).

**B.       Introduction & Factual Background**

At issue here is the MH/SUD treatment that Plaintiffs and the putative class provided to UBH's insureds and/or beneficiaries from May 22, 2011 through January 31, 2019. Each of these insureds received care that clinicians determined was medically necessary, but whose claims were later denied based on level of care determinations by UBH's illegal, defective Guidelines. 30(b)(6) Deposition of Desert Cove attached as Ex. 1, at 146:18 – 148:7; Ex. 5; Ex. 14; Ex. 24 (Meridian-UBH-00000486 ); Ex. 7.

**1.       Medical Necessity Criteria**

Medical necessity is a well understood term throughout the medical profession. An insured will accept the advice of their treating physician, and if a health insurer employs a standard of medical necessity that is significantly at variance with the medical standards of the community, this violates their duties towards their insured, and the insurer may be held legally accountable. *See Wickline v. State of California*, 192 Cal. App. 3d 1630, 1645 (Ct. App. 1986). A restricted definition of medical necessity at odds with the medical standard of the community is inconsistent with an insurer's duty of good faith. *See Hughes v. Blue Cross of N. Cali.*, 215 Cal. App. 3d 832, 845 (Ct. App. 1989); *Rodarte v. Presbyterian Ins. Co.*, 2016-NMCA-051, 371 P.3d 1067 (N.M. Ct. App. 2016), *cert. denied*, (May 19, 2016). Here, UBH's deceptive medical necessity denials left providers bearing the cost of treatment for all of the claims at issue. Medical necessity is a well understood term throughout the medical profession and "it is essential that cost limitation programs not be permitted to corrupt medical judgment." *Wickline v. State of California*, 192 Cal. App. 3d 1630, 1647 (Ct. App. 1986).

As the largest provider of healthcare insurance in the nation, UBH is aware of the meaning of medical necessity. *See* 30(b)(6) Depo. of Desert Cove, at 146:18 – 148:7, 154:15 – 154:19; 30(b)(6) Depo. of Dr. Martorana, at 68:5 – 68:15, 155:5 – 155:12, 158:4 – 159:1. However, UBH's internal Guidelines were not developed based on generally accepted standards of care in the medical community nor with an understanding of medical necessity; instead, they were developed to minimize benefit expense ("BenEx"), not patient care, as is evidenced by UBH disregarding the opinions and advice of its own clinicians in favor

Plaintiffs' Memorandum of Points and Authorities in Support of
Class Certification

of its financial and underwriting departments and committees. *See* 30(b)(6) Deposition of Dr. Martorana, attached as Ex. 2, at 69:18 – 70:5, 71:13 – 72:4, 155:5 – 155:12, 176:7 – 179:7, 188:19 – 189:17; Ex. 3. By disregarding their own clinicians' interpretation of medical necessity, UBH's Guidelines no longer reflected medical necessity as it is understood in the healthcare industry. *See* Ex. 2, at 69:18 – 70:5, 71:13 – 72:4, 155:5 – 155:12; Ex. 1, at 146:18 – 147:11. UBH never told Plaintiffs or anyone outside of UBH that its medical necessity determinations were based on increasing UBH's profits; instead, UBH falsely asserted that it only made treatment authorization decisions based on a holistic view of a patient's treatment. *See* Ex. 2, at 90:10 – 92:9, 66:16 – 67:18, 179:14 – 180:2. This was not true.

The touchstone as to what is "medically necessary" for any given condition must be that of the treating physician. See Ex. 1, at 113:17 – 114:23. The treating physician is best able to fully assess medical symptoms of a patient in a way an insurer cannot. *See* Ex. 1, at 192:10 – 193:3. It follows that a treating physician—and physicians as a whole—are in a superior position to assess medical necessity of treatment than an insurer. Accordingly, applying overly restricted requirements for medical necessity, as UBH did, which differ from the industry standards of those applied by treating physicians, leads to denial of medically necessary treatment. Ex. 1, at 146:18 – 147:11, 158:4 – 159:1, 107:20 – 116:17, 179:14 – 180:2. Medical necessity criteria at odds with the industry-wide standards, as in UBH's Guidelines, placed UBH's interests above the interests of patients, contrary to public policy and widespread medical standards. The Plaintiffs employed objective professionals who, in accord with the generally accepted standards of care, made decisions as to the appropriate, medically necessary treatment of their patients. Ex. 1, at 22:1 - 22:25, 38:25 - 39:6, 113:17 - 114:23; 30(b)(6) Deposition of Harmony Hollywood, attached as Ex. 4, at 292:12-1. Plaintiffs and the putative class paid the price for the medically necessary claims that UBH denied. Ex. 5; Ex. 6; Ex. 7.

## 2.   UBH Utilized Illegal Guidelines

During the entire class period, UBH denied claims via a rubric based on profit and cost saving rather than the actual clinical needs of its members who suffered from mental health and/or substance use disorders. *See* Ex. 2, at 90:10 – 92:9. In the specialty of addiction medicine and substance use treatment, the professional standards developed by the American Society of Addiction Medicine ("ASAM"), are nationally recognized and generally accepted standards for determining appropriate treatment settings and

levels of care for the treatment of substance use disorders. *See* Ex. 1, at 146:18 – 147:11; Ex. 4, at 289:23-25; Ex. 8. When Plaintiffs provided treatment to UBH's insureds, they provided treatment to their patients based on their determination of medical necessity — a determination based on the industry-standard of ASAM. See Ex. 1, at 146:18 – 147:11[1]; , at 88:13-89:17; 30(b)(6) Deposition of Meridian, attached as Ex. 9, at 173:21-174:17. Plaintiffs expected and understood that any review of their decisions regarding medical necessity would be in accord with generally accepted standards in the medical community, ASAM or its functional equivalent.

Plaintiffs asked repeatedly about the criteria for claim payment, during verification of benefits calls. *See* Verification of Benefits Compendium, Ex. 10. UBH repeatedly represented it would reimburse medically necessary services, without providing a definition for medical necessity during those calls. *See* 30(b)(6) Deposition of L. Schmidt, attached as Ex. 11, at 59:24 – 60:6. Every such representation was a misrepresentation. UBH knew that its "medical necessity" determinations were based on a hidden, illegal, profit-driven scheme and not actual medical necessity. *See* Exhibit 2, at 90:10 – 92:9. The Guidelines were proprietary to UBH and kept hidden from the patients and providers, and anyone outside of UBH or its affiliates. *See* Exhibit 2, at 54:12 – 55:24. By obscuring their Guidelines, UBH deceived all of the parties to its services, including Plaintiffs and the class they seek to represent, into wrongly thinking claims were evaluated based on medical necessity. *See* Exhibit 1, at 38:25 – 39:6, 115:25 – 116:4, 225:14 – 225:21.

The guidelines UBH used were found by this Court to be unlawful, after a lengthy trial, in detailed findings of fact set forth *Wit v. United Behav. Health*, No. 14-CV-02346-JCS, 2019 WL 1033730 (N.D. Cal. Mar. 5, 2019) (Trial Transcript attached as Ex. "22"). The *Wit* Court found that UBH's Guidelines did not reflect actual medical necessity and were developed subject to approval of UBH's financial decision makers. *Id.* at 47, 53 Instead, UBH based its coverage and level of care decisions on the benefit expense ("BenEx") UBH would incur rather than on generally accepted, clinical standards of medical necessity. *Id.* at 8, 48, 49. UBH's guidelines were created to discourage rather than encourage medically necessary MH/SUD treatment. Plaintiffs and the putative class are the ones who ultimately footed the bill for providing life-saving, medically necessary care. See Ex. 5; Ex. 6.

---

[1] "I know per, you know, clinical and state licensing, *et cetera*, we set the bar with ASAM. And that's – that's the industry standard. That's how we determine levels of care."

1

**III.  PLAINTIFFS' PROPOSED CLASS SATISFIES THE RULE 23 REQUIREMENTS**

2

**A.      The Facts in this Case Satisfy the Requirements of Rule 23(a)**

3

Rule 23(a) "requires a party seeking class certification to satisfy four requirements: numerosity,

4

commonality, typicality, and adequacy of representation." *Wang v. Chinese Daily News, Inc.*, 737 F.3d

5

538, 542 (9th Cir. 2013). Each of these requirements is satisfied.

6

**1.      The Classes Are Sufficiently Numerous**

7

Numerosity is met if the Court finds the proposed Class "is so numerous that joinder of all members

8

is impracticable." Fed. R. Civ. P. 23(a)(l). Numerosity may be satisfied in classes "with fewer than 100

9

members, and as few as 39." *In re Syncor*, 227 F.R.D. at 343. Even when "the exact size of the class is

10

unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is

11

satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982). Here, the partial claims

12

report produced by UBH shows at least 1,078 state law plan covered MH/SUD claims being denied due to

13

medical necessity under the Guidelines between 2017 and 2019, and at least 431 state law plan covered

14

MH/SUD claims going through appeals following medical necessity denials. Ex. 12. Accordingly, with

15

this large number of claims at issue, the numerosity requirement is easily met in this case.

16

**2.      Rule 23(a)'s Commonality Requirement is Met**

17

Under Rule 23(a)'s commonality requirement, there must be "common *questions* of law and fact".

18

*Dukes v. Wal–Mart Stores, Inc.*, 603 F.3d 571, 594 (9th Cir.2010) (*en banc*) (emphasis in original).

19

However, "answering those questions…is the purpose of the merits inquiry." *Id.* The Ninth Circuit

20

construes the commonality requirement of Rule 23(a)(2) permissively. *See Rodriguez v. Hayes*, 591 F.3d

21

1105, 1122 (9th Cir. 2010). A single common question may satisfy the commonality requirement of Rule

22

23(a)(2). *See Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013); *In re First All. Mortg.*

23

*Co.*, 471 F.3d 977, 990 (9th Cir. 2006). Rule 23(a)'s "commonality inquiry does not require plaintiffs to

24

demonstrate the 'predominance' of common issues over individualized ones, nor the 'cohesion' of the

25

class." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020). Commonality is satisfied "where

26

the lawsuit challenges a system-wide practice or policy that affects all of the putative class members".

27

*Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). The Ninth Circuit has "rejected a "talismanic rule

28

that a class action may not be maintained where a fraud is consummated principally through oral

misrepresentations, unless those representations are all but identical," observing that such a strict standard overlooks the design and intent of Rule 23." *In re First All. Mortg. Co.* at 990 (9th Cir. 2006). Plaintiffs have provided substantial record evidence, including the findings of fact in *Wit* incorporated herein by reference, showing a 'common course of conduct' that meets this requirement. The application of UBH's Guidelines (replaced by UBH in 2019 with the adoption of ASAM guidelines) caused nationwide damages to Plaintiffs and putative class members. No claims depended upon individual plan language and all claims were processed and denied the same way by UBH. The record evidence as to the system-wide practices and policies in the application of UBH's Guidelines supports all of Plaintiffs' causes of action. *See* Ex. 2, at 69:18 – 70:5, 71:13 – 72:4, 88:13 – 89:23[2], 107:20 – 116:17, 126:13 – 127:9, 188:19 – 189:17.

The elements of a breach of oral contract claim are the same as those for a breach of written contract: a contract; its performance or excuse for nonperformance; breach; and damages. *Stockton Mortg., Inc. v. Tope*, 233 Cal. App. 4th 437, 453, 183 Cal. Rptr. 3d 186, 200 (2014). For Plaintiffs' breach of oral contract claim, each of the elements for breach of contract are subject to common proof. The elements to form a valid contract are 1) parties capable of contracting; 2) their mutual consent; 3) a lawful object; and 4) sufficient consideration. *See Regents of Univ. of California v. Principal Fin. Grp.*, 412 F. Supp. 2d 1037, 1042 (N.D. Cal. 2006). It is undisputed that the Plaintiffs, putative class, and UBH are parties capable of contracting. The element of mutual consent is also subject to common proof. Mutual consent and the formation of a contract may be conditional on the occurrence of future events. *See Regents of Univ. of California v. Principal Fin. Grp.*, 412 F. Supp. 2d 1037, 1042 (N.D. Cal. 2006); *Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*, 2022 WL 137547, at *1 (9th Cir. Jan. 14, 2022). Such is the case here as set forth below.

The verification of benefits (VOB) calls, showing mutual consent, a common course of dealing, and promises upon which Plaintiffs relied, are subject to common proof. The VOB calls, authorization calls, utilization review calls, and course of conduct all provide common proof of mutual consent and the parties' intent to be bound, and accordingly, provides common proof for all Plaintiffs' causes of action. The Plaintiffs and the putative class received UBH's promise to pay for medically necessary MH/SUB

2 ██████████████████████████████████████████████████████████████████

treatment provided to UBH's members. First, the VOB calls are consistent and standard across the healthcare industry. Plaintiffs and the putative class members all requested essentially the same information from UBH on these calls. Ex. 10 More importantly, UBH's agents provided that same information from the same script on all of these calls. As testified to by UBH's corporate representative Lisa Schmidt, during a VOB call, UBH's agents read the information from the IBAAG screen to the caller, do not have the ability to edit or alter any information contained therein, and read it as written to the caller. Ex. 11, at 17:24 – 18:22. It must be determined Class-wide whether verification of benefit calls to determine patients' benefit coverages established oral contracts to pay claims for medically necessary MH/SUD treatment. *See* Ex. 1, at 181:19 – 182:8[3]. Verification of benefit calls are practiced industry-wide to confirm and verify a patients' benefits. *See* Ex. 10; Ex. 1, at 77:13 – 77:24; 30(b)(6) Depo. of L. Schmidt, at 15:12 – 15:19.

Importantly, UBH's corporate representative testified that its representatives utilize common software, IBAAG, to read off a common script of benefit information during verification of benefits calls. Ex. 11, at 16:11 – 16:19, 17:24 – 18:22. This is done universally, and there is no other source of information, such as plan documents, used when handling verification of benefit calls. *Id.*, at 17:24 – 18:22. On every verification of benefits call with the Class members, UBH informed them of the method for how their medically necessary MH/SUD claims would be paid. *Id.*, at 55:15 – 56:6; Ex. 1, at 181:19 – 182:8. UBH also testified that IBAAG does not contain any information on medical necessity or the Guidelines, so no Class member could have been instructed on UBH's standard for medical necessity during the formation of an oral contract through a verification of benefits call. Ex. 11, at 23:21 – 24:7, 59:24 – 60:6; *see* Ex. 1, at 113:17 – 114:23. Instead, UBH intended that Plaintiffs and putative class members believe the terms had their generally accepted meaning.

All of the MH/SUD claims at issue were denied by Plaintiff. *See* Ex. 12. Following denial of those medically necessary claims, they were either exhaustively appealed, the appeals were ignored, or further appeals would have been futile. *See id.* For instance, Plaintiff Desert Cove faced denial of a patient's medically necessary MH/SUD claims in 2016. *See* Ex. 6; Ex. 1, at 157:17 – 159:14, 238:15 – 239:9; Ex. 4,

---

[3] "Q. And is it Desert Cove's position that a contract is being formed on this verification of benefits call on June 1st, a contract by which United Behavioral Health will pay for services? . . .The Witness: . . . We see this as a promise, an agreement to pay, if we obtain the authorization, provide the medically necessary services, and we bill the claims clean and timely. We act in good faith that, if those things are done, that claims will be reimbursed."

at 219:20-220:3; Ex. 9, at 300:21-301. For all claims at issue, the patients' providers verified insurance benefits, as the patients' authorized representatives, prior to providing treatment during a verification of benefits call with UBH's agents. UBH's agents verified benefits only after receiving authorization from the plan member their providers were authorized to do so. During the VOB calls, UBH's agents followed the same procedures and script, IBAAG. UBH's agents relied upon the system's information that was pulled up for each claim when they stated during the VOB process that claims for mental health / substance use disorder (MH/SUD) treatment would be reimbursed for medically necessary treatment. In determining whether an offer was made, "the pertinent inquiry is whether the individual to whom the communication was made had reason to believe that it was intended as an offer." *Roley v. Google LLC*, 40 F.4th 903, 909 (9th Cir. 2022). Plaintiffs and the putative class members had ample reason to believe that the communications constituted offers. During the VOB calls, UBH provided the payment term in the form of the member's out-of-network benefits methodology. It is not necessary that UBH provide a specific dollar amount or that Plaintiffs understood a specific dollar amount for the formation of a contract; instead, it is sufficient for the formation of a contract that the Plaintiffs were entitled to a payment amount that would be calculated using the methodology provided on the VOB call. *Cf. Id* at 910.

The VOB forms submitted as exhibits are accurate representations that Verification of Benefit calls occurred. Ex. 1, at 117:5 - 117:12, 183:7 - 183:13 (noting that the verification of benefit forms are the best record of the VOB calls). Plaintiffs conducted verification of benefits calls and authorization calls. Ex. 1, at 100:13 - 101:1; Ex. 9, at 309:14-310:1; Ex. 10. The VOB calls were understood as a promise to pay if certain conditions were met; *i.e.* confirming eligibility, obtaining authorization when needed, rendering services, and billing timely. Ex. 1, at 77:13 - 77:24. 30(b)(6), 181:19 - 182:8[4]. The IVR recordings played prior to VOB calls, when played, do not change that the VOB calls were promises to pay and understood as offer, or otherwise affect the oral contract entered into. Ex. 1, at 234:20 - 235:7[5], 77:13 - 77:24, 101:18

---

[4] "Q. And is it Desert Cove's position that a contract is being formed on this verification of benefits call on June 1st, a contract by which United Behavioral Health will pay for services? . . . The Witness: We see this – I don't know about the word "contract." We see this as a promise, an agreement to pay, if we obtain the authorization, provide the medically necessary services, and we bill the claims clean and timely. We act in good faith that, if those things are done, that claims will be reimbursed."

[5] "I couldn't speak to which ones may have had the IVR system versus which calls may not have. I know with the – how complex many of the questions are, we may utilize the IVR for the simple items, as I would refer to them, demographics, those sort of things, the things that it will provide. But we always end up speaking with a representative to get into the more specific details, such as restrictions and usually

- 102:3. Further, United reaffirmed its promise to pay in authorization calls. *Id.*, at 78:22 - 79:7. It is undisputed that providing MH/SUD treatment is a lawful object of a contract. Plaintiffs and the putative class received UBH's promise to pay for medically necessary MH/SUB treatment provided to UBH's members. Plaintiffs and the putative class members provided that treatment to UBH's members. Plaintiffs have common proof that UBH applied the same Guidelines to all of the MH/SUD claims at issue during the class period.

It is not the case that each Plaintiff needs to show that *their* claim denial was unreasonable under the terms of *their* plan based on the information available to Defendants at the time they denied the claim. *See* Ex. 1, at 38:25 - 39:6. Plaintiffs have demonstrated that the individual patient plans were not assessed by UBH when UBH formed its agreements with the Class. In situations such as this, variations may affect the dollar amount or scope of the available remedies but do not reflexively defeat class certification. *Peters v. Aetna Inc.*, 2 F.4th 199, 243 (4th Cir. 2021), *cert. denied sub nom. OptumHealth Care Sols. v. Peters*, 142 S. Ct. 1227 (2022). The core common contention here is that UBH utilized the Guidelines to systematically deny claims for medically necessary treatment after promising that it pay for those claims during verification of benefits and other calls and through its course of conduct.

As to the basic elements, there is no difference between an express and implied contract. While an express contract is defined as one, the terms of which are stated in words (Civ. Code, § 1620), an implied contract is an agreement, the existence and terms of which are manifested by conduct (Civ. Code, § 1621). The main difference between express and implied contracts is the mode of proof by which they are established. *Allied Anesthesia Med. Grp., Inc. v. Inland Empire Health Plan*, 80 Cal. App. 5th 794, 808 (2022) *review denied* (Sept. 28, 2022). The entire Class shares common facts and legal questions as to a claim for breach of implied contract.

As described supra, Plaintiffs and the putative Class all provided MH/SUD treatment to patients covered under state governed UBH insurance plans. The Plaintiffs, along with the Putative Class, conducted verification of benefits calls for those patients prior to admission, according to the industry standard practice for out of network MH/SUD treatment. They also conducted authorization calls, to

_____

authorization requirement, so we know – so we have a really good overall coverage that we can rely on when we go to bill claims."

authorize payment for treatment as they performed services. Because of these promises offered by UBH, the Class expected to be paid for the medically necessary services provided, based on their prior experiences with UBH and other insurers. Ex. 1 , at 181:19 – 182:8. Ex. 4, at: 57:23-58;1; 58:6-12; 237:9-15; 263:8:18; 287:6-12; 367:19-368:14; Ex. 9, at 149:11-17; 309:14-310:1. Relying on UBH's promises and prior conduct, the Class provided medically necessary MH/SUD treatment to UBH insured patients. UBH's denials were outside its prior, usual course of conduct and outside the Class's reasonable understanding of medical necessity, and denied payment of medically necessary MH/SUD claims in order to maximize its profits, leaving the Class to face financial responsibility for the treatment. *See* Ex. 1, at 78:22 – 79:7, 173:6 – 173:15, 179:16 – 180:2, 181:19 – 182:8; Ex. 4, at: 57:23-58;1; 58:6-12; 237:9-15; 263:8:18; 287:6-12; 367:19-368:14; Ex. 5; Ex. 6. The course of conduct between the Plaintiffs and UBH over numerous years for tens of thousands of patients, with Defendant paying the Plaintiffs for medically necessary claims that they promised to directly reimburse. It was reasonable for the Plaintiffs to rely upon UBH's promises. *See Ex. 4, at 88:16-246, 290:15-257;* Ex. 1, at 78:22 – 79:7, 173:6 – 173:15, 179:16 – 180:2, 181:19 – 182:8; Ex. 4, at: 57:23-58;1; 58:6-12; 237:9-15; 263:8:18; 287:6-12; 367:19-368:14; Ex. 5; Ex. 6. United knew providers used ASAM guidelines.; Ex. 1, at 146:18 - 147:11[8], 147:12 - 148:7, 154:15 - 154:19; Exhibit 9 at 173:21-172: 5[9], 172:6-172:17. Accordingly, the entire class is owed damages for UBH's breach of implied contract.

Finally, the entire Class shares common facts and legal questions as to a claim for promissory

---

[6] "A. Again, we staffed according to how we were licensed to staff. We -- there are strict guidelines to maintain a detox and residential license. We followed those guidelines, the best I can say. Q. Do you know the name of those guidelines? A. ASAM."

[7] "Q. What evidence was there that Harmony Hollywood used ASAM? A. Well our license was a license using ASAM levels of care so we had to follow the ASAM guidelines to receive that license and we had to prove to the licensing body that we were taking steps to follow the ASAM guidelines. So the State of California said you guys are performing this, performing this service using the ASAM standards. You have proved it to us, here's your license using ASAM level of care."

[8] "I can't speak to exactly what these clinicians may have or may not have, you know, looked into as far a the guidelines. I know per, you know, clinical and state licensing, et cetera, we set the bar with ASAM. And that's – that's the industry standard. That's how we determine levels of care. That's – it's never been a secret, you know. And United knew that we were using ASAM to make these determinations. Q. What's the basis for your statement that United knew in 2016 that Desert Cove were using ASAM to make its determinations? A. Based on knowing that that has always been the foundation in which all of our clinicians operate."

[9] "Q. Do you know whether or not Meridian communicated on these referenced calls to UBH that Meridian was using ASAM in the diagnosis and treatment of its patients? A. Absolutely. I'm sure that United was aware of that. I mean, our client -- our clinicians are all trained in ASAM. And that's -- you know, it was -- I'm quite sure that you knew about it. And, I mean, that's common knowledge."

estoppel. The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Jones v. Wachovia Bank*, 230 Cal. App. 4th 935, 945 (2014).  As discussed above, during verification of benefits calls the entire Class received an overview of patients' benefits from UBH representatives and received a promise to pay for medically necessary MH/SUD treatment for those patients from UBH. Those promises to pay for MH/SUD treatment were then affirmed later, during treatment, on authorization calls where UBH authorized the patients' treatment. Ex. 1, at 78:22 – 79:7, 181:19 – 182:8, 234:20 – 235:7; Ex. 4, at: 57:23-58;1; 58:6-12; 237:9-15; 263:8:18; 287:6-12; 367:19-368:14; Ex. 13 (Concurrent Review Compendium). The Class and the Plaintiffs then relied on UBH's promises in providing medically necessary treatment to UBH insured patients, continuing with a good faith expectation of receiving payment in return. *See* Ex. 14; Ex. 15; Ex. 17; Ex. 18; Ex. 19; Ex. 20; Ex. 21; Ex. 1, at 181:19 – 182:8; Ex. 4, at 58:6-12. This reliance was reasonable, given the Class's understanding of medical necessity, practiced industry-wide and given United's continued promises. Plaintiffs relied on these promises to their detriment as they were not reimbursed by UBH for medically necessary services that they provided to UBH's insureds. Plaintiffs and the putative class reasonably relied on UBH's promises and provided treatment because of them. *See Cali. Spine and Neurosurgery Institute v. Oxford Health Ins.,* 2019 WL 6171040 (N.D. Cal 2019).

### 3.    Typicality

Rule 23(a) typicality focuses on the connections between the facts and issues among the class and its representatives. *See Buus v. WAMU Pension Plan*, 251 F.R.D. 578, 585 (W.D. Wash. 2008). "[F]or purposes of typicality, it is enough to find that plaintiffs' theory of their injury is the same theory of injury for the entire class" *Congdon v. Uber Techs., Inc.*, 291 F. Supp. 3d 1012, 1027 (N.D. Cal. 2018); *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005), *modified*, 2007 WL 46785 (N.D. Cal. Jan. 5, 2007). Plaintiffs have asserted the same legal theory of injury for the entire class. The named Plaintiffs and putative Class members have all suffered an injury, financial damages, that resulted from UBH's refusal to pay the medically necessary claims for MH/SUD treatment that it promised to pay. See Ex. 1, at 101:18 – 102:3. Plaintiffs and the putative Class members all received promises from UBH that they would be paid for their services and relied on those promises in good faith to their detriment. Ex. 1, at

Plaintiffs' Memorandum of Points and Authorities in Support of Class Certification

181:19 – 182:8; Ex. 4, at 57: 17 -58:1; Ex. 9, at 149:11-17; Ex. 6. Accordingly, the typicality requirement is met.

### 4.    Adequacy

#### a)    Plaintiffs Are Adequate Class Representatives

Class members are adequate class representatives when (1) they have a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (2) there is no reason to believe that a conflict exists between the class representatives and the other putative class members. The underlying merits of any particular class representative's claim have no bearing on their ability to act as a class representative. *See Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998). In the Ninth Circuit, "the adequacy-of-representation requirement is satisfied as long as one of the class representatives is an adequate class representative." *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, fn.2 1162 (9th Cir. 2001). Plaintiffs have actively participated in the prosecution of this matter so far and will continue to do so and meet Rule 23's adequacy requirements.

#### b)    Plaintiffs' Attorneys Are Experienced and Qualified Class Counsel

Plaintiffs' attorneys have successfully prosecuted nationwide class and mass actions against insurance companies. Accordingly, Plaintiffs' attorneys are experienced and qualified to serve as class counsel.

### 5.    The Proposed Class Is Ascertainable

The proposed Class is ascertainable and defined by objective criteria. The exact number of persons in the proposed Class does not need to be determined for a class to be certified. *See Lynch v. Rank*, 604 F. Supp. 30, 36 (N.D. Cal.), *aff'd*, 747 F.2d 528 (9th Cir. 1984), *opinion amended on reh'g*, 763 F.2d 1098 (9th Cir. 1985) (collecting cases). This Class can proceed with certification even if the exact number of providers within it has not yet been determined. Moreover, the Ninth Circuit held, "the language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017).

### B.    The Requirements of Rule 23(b) Are Satisfied

"Rule 23(b)(3) states that a class may be maintained where 'questions of law or fact common to class

Plaintiffs' Memorandum of Points and Authorities in Support of
Class Certification

members predominate over any questions affecting only individual members,' and a class action would be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Wal-Mart Stores, Inc.* 564 U.S. at 346 n. 2. As shown below, the entire Class shares questions of law and fact as to every element of the Plaintiffs' claims for breach of oral contract, breach of implied contract, and promissory estoppel and satisfies the requirements of Rule 23(b)(3)(A)-(D).

The putative Class satisfies the Rule 23(b)(3) superiority requirement because a "class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010) (quotations omitted). Here, "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *Id*. at 1175. "Rule 23(b)(3) states that a class may be maintained where 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and a class action would be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Wal-Mart Stores, Inc.* 564 U.S. at 346 n. 2. Under Rule 23(b)(3), the superiority requirement for class action is met where class-wide litigation of common issues will reduce litigation costs and promote greater efficiency. *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 493 (C.D. Cal. 2006). The superiority requirements are clearly met here. The putative class members are small facilities unlikely to independently bring suit for their claims. For many, the recovery would be too small relative to the resources required to independently pursue. Further, if every class member brought a claim, courts nationwide could be congested and overburdened with individual claims, The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem* 521 U.S. at 591. When common questions present a significant aspect of the case and can be resolved for all members of the class in a single adjudication, there is justification for handling the dispute on a representative rather than on an individual basis. *Hanlon,* 150 F.3d at 1022. All class members seek the same relief, and their entitlement to such relief does not depend on individualized issues as set out *supra*. Therefore, the proposed Class therefore satisfies the predominance requirement of Rule 23(b)(3).

### a)      Choice of Law Analysis

Concerns over which state's laws apply to a proposed class "do not necessarily preclude a 23(b)(3) action." *Hanlon*, 150 F.3d at 1022. But "[u]nderstanding which law will apply before making a

predominance determination is important when there are variations in applicable state law," and potentially varying state laws may defeat predominance in certain circumstances. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). Plaintiffs' causes of action are all common law claims that are essentially the same for all states. A compendium of state laws for breach of oral contract, implied contract, and promissory estoppel demonstrating the commonality is attached as Ex. "23."

### 2.    Damages

The need for individual damages calculations does not defeat class certification. *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 943 (9th Cir. 2019), *disapproved of on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). Under a damages model for class certification pursuant to Rule 23(b), "[c]alculations need not be exact, but at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (internal citations omitted). The model proposed by Plaintiffs meets this standard and is consistent with their liability case. Damages are readily calculated as: 1) if the amount paid by the member is less than the difference between the allowed amount and the providers billed charges, the damages are the allowed amount; 2) if the amount paid by the member is greater than the allowed amount, the damages are equal to the billed charges less the member paid amount. For example:

|                      | Member 1 | Member 2 |
| -------------------- | -------- | -------- |
| Billed Charges       | $1,000   | $1,000   |
| Allowed Amount       | $500     | $500     |
| Member Paid Amount   | $200     | $800     |
| Calculated Damages   | $500     | $200     |

Moreover, the damages can be easily calculated by the Class since the treatment has already been provided and the claims at issue have already been submitted and denied. *See* Ex. 1, at 174:21 – 175:8[10]. Since the Plaintiffs and the Class seek reimbursement of denied claims through damages, that are easily

---

[10] "We do have an estimated revenue calculator that we, you know, use in trying to guess ballparks of what pricing will come at. But I don't – I certainly don't have that memorized. Q. Have you calculated using that estimator what, your view, should have been paid on the PHP claims at issue? A. I personally have not. Q. But that could be done, correct? . . . The Witness: Yeah."

ascertainable, this Class faces none of the damages problems seen in *Wit.*

The damages to Plaintiffs and the putative class are subject to common proof. As Plaintiffs claims are all common law, contract or quasi-contract claims, the beneficiaries' Plans themselves are irrelevant beyond what was stated by UBH's agents during those calls where the IBAAG scripts was read to Plaintiffs and putative class members and allow for common proof for damages calculations. The IBAAG information that was read, not a plan, plan document, summary plan description, *etc.*, supply terms of the contracts that were formed. This distinguishes the present case from the recent decision in *Wit v. United Behav. Health*, 58 F.4th 1080 (9th Cir. 2023) where the Court only addressed claims brough by individual beneficiaries with healthcare benefit plans governed by ERISA. That is not the situation in the present case and Plaintiffs' causes of action rely on the contract terms formed between the parties through VOB calls, authorization calls, utilization calls, and courses of conduct. Likewise, Plaintiffs are seeking damages consistent with the damages model described above.

## IV. CONCLUSION

For all of the reasons stated above, Plaintiffs respectfully ask the Court to certify the proposed Class, as well as any other such relief that the Court deems just and proper.

Dated March 6, 2023                              Arnall Golden Gregory LLP


                                                 */s/ Matthew M. Lavin*
                                                 MATTHEW M. LAVIN
                                                 AARON R. MODIANO


                                                 DL LAW GROUP

                                                 */s/ David M. Lilienstein*
                                                 DAVID M. LILIENSTEIN
                                                 KATIE J. SPIELMAN

Plaintiffs' Memorandum of Points and Authorities in Support of Class Certification