UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESERT COVE RECOVERY, LLC, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>　　　　Defendant. | Case No. 19-cv-05721-JSW<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 109 |

Now before the Court for consideration is the motion for class certification filed by Plaintiffs Desert Cove Recovery, LLC ("Desert Cove"), Meridian Treatment Center, Inc. ("Meridian"), and Hollywood Harmony, LLC ("Hollywood Harmony") (collectively "Plaintiffs"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it DENIES Plaintiffs' motion.

**BACKGROUND**

Plaintiffs are behavioral healthcare providers that provide substance abuse and mental health treatment. They allege they formed contracts, either oral or implied, with Defendant United Behavioral Health ("UBH") when UBH employees verified benefits for or obtained pre-authorization for Plaintiffs to treat UBH's insureds. *See Meridian Treatment Solutions, Inc. v. United Behavioral Health*, 2022 WL 1105071, at *1-*2 (N.D. Cal. Apr. 13, 2022) ("*Meridian II*"); *Meridian Treatment Solutions, Inc. v. United Behavioral Health*, 2020 WL 7000073, at *1-*2 (N.D. Cal. July 20, 2020) ("*Meridian I*").

Plaintiffs allege that during these calls UBH agreed to reimburse them for medically necessary services, based on generally accepted standards of medical care, but then denied coverage based on UBH's Level of Care and Coverage Decision Guidelines ("UBH Guidelines").

*Meridian II*, 2022 WL 1105071, at *6-7. In addition to their contract claims, Plaintiffs also bring a claim for promissory estoppel and seek to recover "the value of each covered claim for services that was wrongfully denied, as determined using the methodology for payment quoted by UBH on the VOB call for that claim (such as [usual and customary rate] or a Medicare-based rate)." (Mot. at 14:28-15:2.)

Plaintiffs have moved to certify the following class:

> Any provider with an unreimbursed or under-reimbursed mental health/substance use disorder claim denied by United Behavioral Health using the [UBH] Guidelines for dates of treatment between May 22, 2011 and January 31, 2019 for those individuals with healthcare insurance plans not subject to ERISA.[1]

The Court will address additional facts as necessary in the analysis.

## ANALYSIS

Class certification is governed by Federal Rule of Civil Procedure 23 ("Rule 23"), and the decision to grant or deny class certification is within the Court's discretion. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). Plaintiffs bear the burden to show that they can satisfy each factor set forth in Rule 23(a) and at least one of the factors set forth in Rule 23(b).[2] "Rule 23 does not set forth a mere pleading standard. Plaintiffs also must affirmatively demonstrate … compliance with the Rule – that is, [they] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).

The Court must conduct a "rigorous analysis" of the Rule 23 factors, which "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351. The Court has "no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may

---

[1] Plaintiffs originally defined the class as "All behavioral healthcare providers who, between May 22, 2011 and January 31, 2019 were denied pre-service authorizations or where submitted claims were denied on the basis of 'medical necessity' such that the determination of 'medical necessity' was made through the application of [UBH Guidelines] and where such claims remain unpaid." (Second Amended Class Action Complaint ¶ 514.) In light of the Court's ruling, it does not address whether Plaintiffs should have sought leave to amend before they proposed a modified class definition.

[2] Plaintiffs rely on Rule 23(b)(3).

2

1  be considered to the extent – but only to the extent – that they are relevant to determining whether
2  the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans &*
3  *Trust Funds*, 568 U.S. 455, 466 (2013).
4        Rule 23(a) requires Plaintiffs to demonstrate (1) the class is so numerous that joinder of all
5  members is impracticable, (2) there are questions of law or fact common to the class, (3) their
6  claims or defenses are typical of the claims or defenses of the class, and (4) they will fairly and
7  adequately protect the interests of the class. *Id.* at 724. Under Rule 23(b)(3), Plaintiffs must
8  demonstrate "that the questions of law or fact common to class members predominate over any
9  questions affecting only individual members, and that a class action is superior to other available
10 methods for fairly and efficiently adjudicating the controversy."
11       UBH argues Plaintiffs cannot meet their burden to show there are common questions of
12 law or fact or that any such common questions predominate over individual issues. In order to
13 satisfy the commonality requirement, Plaintiffs must show their claims rest upon a common
14 contention of such a nature that "determination of its truth or falsity will resolve an issue that is
15 central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "What
16 matters to class certification ... is not the raising of common 'questions' – even in droves – but
17 rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the
18 resolution of the litigation." *Id.* (internal quotations and citation omitted; emphasis in *Wal-Mart*).
19 The Ninth Circuit construes Rule 23(a)'s commonality factor permissively. *See, e.g., Hanlon v.*
20 *Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*,
21 564 U.S. 338. "[E]ven a single common question" can satisfy this factor. *Wal-Mart,* 564 U.S. at
22 359 (internal citations omitted).
23       The predominance inquiry focuses on "the legal or factual questions that qualify each class
24 member's case as a genuine controversy" to determine "whether proposed classes are sufficiently
25 cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S.
26 591, 623 (1997); *see also Hanlon*, 150 F.3d at 1022 (focus is "on the relationship between the
27 common and individual issues" and when "common questions present a significant aspect of the
28 case and they can be resolved for all members of the class in a single adjudication, there is clear

3

justification for handling the dispute on a representative rather than on an individual basis").

To prevail on their first two claims, Plaintiffs must show they entered into contracts with UBH. To establish the existence of a contract – whether oral or implied – Plaintiffs will be required to show "mutual assent." *AToN Ctr., Inc. v. United Healthcare Ins. Co.*, 93 Cal. App. 5th 1214, 1231 (2023). "Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Id.* (citations and quotations omitted). To prevail on their claim for promissory estoppel, Plaintiffs will be required to establish that UBH made a "clear and unambiguous" promise to them. *Jones v. Wachovia Bank*, 230 Cal. App. 4th 935, 945 (2014).

Plaintiffs allege that contracts were formed during VOB and pre-authorization calls, but "VOB and authorization phone calls alone are generally insufficient to form the basis for an oral or implied contract because they lack a of manifestation of intent to enter into a contract." *AToN Ctr., Inc. v. BlueCross and Blue Shield of S. Car.*, No. 3:20-cv-000496-WQH-BGS, 2020 WL 4747752, at *3 (S.D. Cal. Aug. 17, 2020); *see also Pac. Bay Recovery, Inc. v. Cal. Physician Servs., Inc.*, 12 Cal. App. 5th 200, 215-17 (2017). The determination of whether "a particular communication reasonably constitutes an express offer requires an examination of the *words used by the purported offeror* as well as the circumstances surrounding the offer." *AToN Ctr.*, 93 Cal. App. 5th at 1235 (emphasis added).

For example, *In re First Alliance Mortgage Company*, the court allowed "class treatment of fraud claims stemming from a 'common course of conduct.'" 471 F.3d 977, 990 (9th Cir. 2006) (quoting *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975)). It reasoned that where a "centrally organized strategy" is involved, such as when a standard sales pitch is used, the "center of gravity of the fraud transcends the specific details of oral communications." *Id.* at 991 (internal quotations and citations omitted). Plaintiffs argue that this case is analogous to cases like *First Alliance*. The flaw in Plaintiffs' argument is that the record does not support it.

Lisa Schmidt, UBH's Director of Member and Provider Services, testified that UBH does not have specific scripts for VOB calls. She also testified that the information it provides during

those calls is based on each member's policy. (Dkt. No. 109-6, Plaintiffs' Ex. 11 (Deposition of Lisa Schmidt ("Schmidt Depo.") at 15:24-16:10, 17:24-18:15) *see also* Dkt. No. 109-3, Plaintiffs' Ex. 2 (Deposition of Andrew Martorana, M.D. at 88:11-89:23).) Plaintiffs' representatives also acknowledged that the substance of VOB calls could vary, and Meridian's representative acknowledged that information given during a VOP "was not necessarily a guarantee that those services would always be approved." (*See* Dkt. No. 109-2, Plaintiffs Ex. 1 (Deposition of Desert Cove through Joseph Ivie ("Ivie Depo.") at 83:13-21); Dkt. No. 102-10, Plaintiffs' Ex. 9 (Deposition of Meridian through Hotse Langeraar ("Langeraar Depo.") at 143:1-25, 170:21-23).)

Ms. Schmidt also testified that the term "medical necessity" does not appear in the program UBH uses to review subscriber benefits. (Schmidt Depo. at 59:24-60:5, 60:24-61:1.) Ms. Schmidt's testimony is corroborated by the sample of VOB calls UBH submitted. Indeed, only a few transcripts make reference to the term "medical necessity." (Dkt. Nos. 118-1 through 118-10, UBH Exs. 71-74, 85-86, 89-92.) Similarly, although Mr. Ivie testified that Desert Cove created a list of questions to pose to UBH on VOB calls, he acknowledged that other facilities may pose different questions and gather different information. (Ivie Depo. at 77:11-78:13); *see also* Dkt. No. 102-21, Plaintiffs' Ex. 10 (sample VOB forms).) In light of those differences, a fact finder would need to examine individual calls to determine whether UBH's representatives went beyond a standard VOB and "reasonably signal[led] an intent to transact." *AToN Ctr.*, 93 Cal. App. 5th at 1236. Therefore, Plaintiffs have not put forth evidence that shows a common course of conduct that would permit the Court to determine "in one stroke" either that they formed contracts with UBH or that UBH made a clear an unambiguous promise to them.

The Court also concludes that whether UBH Guidelines do or do not comport with generally accepted standards of medical care will not generate common answers to drive resolution of this litigation without individualized inquiries into the basis for denials. Plaintiffs rely heavily on the district court's decision in *Wit v. United Behavioral Health* in which the plaintiffs also argued that the UBH Guidelines did not comply with generally accepted standards of medical care. *See, e.g., Wit v. United Behavioral Health,* 79 F.4th 1068, 1076-78 (9th Cir. 2023) ("*Wit II*"). In *Wit II,* UBH appealed the district court's decision to grant class certification.

5

The Ninth Circuit noted there were "many provisions of the [LOCG] Guidelines that" the *Wit* plaintiffs "did not challenge and that the district court did not find to be overly restrictive." *Id.* at 1085. The Ninth Circuit noted the same was true for the CDG Guidelines. *Id.* On that record, the court reversed the district court's order granting class certification and held the plaintiffs "fell short of demonstrating that all class members were denied a full and fair review of their claims *or that a common showing is possible.*" *Id.* at 1086 (emphasis added).

Here, Plaintiffs have not shown that their claims are based on the same UBH Guidelines let alone shown that they are based on Guidelines that have been conclusively determined to be more restrictive than generally accepted standards of medical care. Plaintiffs also have not shown that their patients' plans have a standard definition of medical necessity. *Compare Des Roches v. Cal. Phys. Serv.*, 320 F.R.D. 486, 498 (N.D. Cal. 2017) (finding commonality satisfied in putative ERISA class action where plaintiffs presented significant evidence that plans contained a standard definition of medical necessity that would permit court to evaluate "in one stroke whether the Guidelines comport with generally accepted standards for medical necessity").

Finally, the remedy Plaintiffs seek supports the Court's conclusion that individualized issues of liability would predominate any common questions that might exist. In *Wit,* the trial court reasoned that the plaintiffs satisfied Rule 23(a)'s commonality requirement, in part, because they did not "ask the Court to make determinations as to whether class members were actually entitled to benefits." *Wit v. United Behavioral Health*, 317 F.R.D. 106, 127 (N.D. Cal. 2016). Plaintiffs here *are* asking for that determination and resolution of that question "would require the Court to consider a multitude of individualized circumstances relating to the medical necessity for coverage and the specific terms of the member's plan." *Id.*[3]

## CONCLUSION

Accordingly, the Court DENIES Plaintiffs' motion for class certification. The Court ORDERS the parties to appear for a further case management conference on March 22, 2024 at

---

[3] Because the Court concludes Plaintiffs have not satisfied the commonality and predominance factors, it does not address whether Plaintiffs have satisfied the other Rule 23 factors.

6

11:00 a.m. The parties shall file an updated joint case management conference statement by no later than March 15, 2024.

**IT IS SO ORDERED**.

Dated: February 12, 2024

_____
JEFFREY S. WHITE
United States District Judge